# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | |
|---|---|
| JESSICA HINTON A/K/A JESSA HINTON, CORA SKINNER, DESSIE MITCHESON, SARA UNDERWOOD, EVA PEPAJ, JESSE GOLDEN, LINA POSADA, TIFFANY TOTH GRAY, JACLYN SWEDBERG, and SARAH STAGE <br><br> Plaintiffs, <br><br> vs. <br><br> VONCH, LLC d/b/a POLEKATZ CHICAGO GENTLEMEN'S CLUB; and POLEKATZ GENTLEMEN'S CLUB, LLC d/b/a POLEKATZ CHICAGO GENTLEMEN'S CLUB <br><br> Defendants. | Case No._____ <br><br><br> **COMPLAINT** <br><br> **(Jury Trial Demanded)** |

COME NOW Plaintiffs JESSICA HINTON A/K/A JESSA HINTON, CORA SKINNER, DESSIE MITCHESON, SARA UNDERWOOD, EVA PEPAJ, JESSE GOLDEN, LINA POSADA, TIFFANY TOTH GRAY, JACLYN SWEDBERG, and SARAH STAGE (collectively, "Plaintiffs" or "Models"), by and through undersigned counsel, and for Complaint against Defendants VONCH, LLC doing business as Polekatz Chicago Gentlemen's Club; and POLEKATZ GENTLEMEN'S CLUB, LLC doing business as Polekatz Chicago Gentlemen's Club, ("Defendants" or "Polekatz") respectfully allege as follows:

## BACKGROUND

1.      The following is an action for damages and injunctive relief relating to Defendants' misappropriation and unauthorized publication of the image and likeness of Plaintiff Models, who are professional models, in order to promote its strip club, Polekatz Chicago

1

Gentlemen's Club ("Polekatz" or, the "Defendants").

2.     As detailed below, Defendants unauthorized use of Plaintiff Models' images, photos, and likenesses (collectively, "Image") constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1)(A) and (B), which prohibits false or misleading use of a person's image for purposes of advertising; b) violation of the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity* and False Light, which protects a person's right to privacy and publicity; c) defamation, and; d) supplants various common law torts.

3.     Defendants has pirated the images, likeness, and/or identity of each Plaintiff Model for purely self-serving commercial purposes – to advertise, promote, and market Defendants' own business interests on websites and social media accounts owned, operated, hosted, or controlled by Defendants.

4.     Defendants is an unapologetic, chronic, and habitual infringer.

5.     Defendants never sought consent or authority to use any of the Plaintiffs' images for any purpose.

6.     No Plaintiff ever agreed, nor would any Plaintiff have agreed, to Defendants' use of her image, likeness, and/or identity.

7.     Had each Plaintiff been afforded the opportunity to consider whether to consent and release rights as to the use of any image, each Plaintiff would have promptly and unequivocally declined.

8.     Defendants' conduct is therefore misleading and deceptive by falsely and fraudulently representing that each Plaintiff Model depicted in the misappropriated images is somehow affiliated with Defendants; has contracted to perform at and/or participate in events at Polekatz; has been hired to promote, advertise, market or endorse its events and other activities

offered at Polekatz; and/or that each Plaintiff depicted in the promotional materials and social media and/or Internet posts has attended or will attend each event and has participated in or intends to participate in the activities advertised.

9.     Defendants' conduct is also injurious to each Plaintiff Model.

10.     Defendants circumvented the typical arms-length negotiation process entirely and intentionally pirated the images. In doing so, Defendants has utterly deprived each Plaintiff the right and ability to say "no."

11.     Defendants has prevented each Plaintiff from engaging in arms-length negotiations regarding the terms and conditions of use of their images, including the term of any release, remuneration per image or use, or the ability to decline the business opportunity entirely. In short, Defendants deprived each Plaintiff the ability to protect her image, brand, and reputation.

12.     In the end, Defendants gained an economic windfall by using the images of professional and successful models for Defendants' own commercial purposes, luring and enticing patrons worldwide to view the images and visit Polekatz, without having to compensate the models for such usage. Plaintiffs, however, sustained injury to their images, brands, and marketability by shear affiliation with Polekatz, a strip Polekatzperated by Defendants.

13.     Having operated a business in the strip club industry, Defendants is well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendants' commercial benefit.

14.     Much more than merely a misuse in connection with an innocuous brand or event, Defendants embarrassed Plaintiffs by associating their images with Polekatz.

15.     In addition to the actual, punitive, and exemplary damages set forth below, Plaintiff

Models likewise seek an Order from this Court permanently enjoining Defendants from using the images, likeness, and/or identity of each Plaintiff Model to promote Polekatz, via any medium.

## JURISDICTION AND VENUE

16.     This Court has original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiffs have each individually stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1)(A)(B).  This Court has supplemental jurisdiction over the Illinois state law claims alleged herein pursuant to 28 U.S.C. § 1367.

17.     The Court has personal jurisdiction over Defendants based on its contact with the State of Illinois, including but not limited to Defendants registration to conduct business in Illinois, its physical location and principal place of business in Illinois, and upon information and belief, committed, facilitated, assisted, encouraged or conspired to commit the actions giving rise to the harm and damages alleged herein in the State of Illinois.

18.     According to publicly available records, Defendants VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC are both Limited Liability Companies organized and existing pursuant to the laws of the State of Illinois doing business as a strip club under the name "Polekatz Chicago Gentlemen's Club" in Bridgeview, Illinois.

19.     Venue is proper in the United States District Court for the Northern District of Illinois because Cook County is the principal place of business for Defendants. Venue is also proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims occurred in the Northern District of Illinois.

20.     All parties have minimum contacts with Cook County, a significant portion of the alleged causes of action arose and accrued in Cook County, Illinois, and the center of gravity for a significant portion of all relevant events alleged in this Complaint is predominately located in

Cook County.

## PARTIES

A. **Plaintiffs**

21.     Given the multitude of violations harming the Plaintiff models, in the interest of judicial economy, Plaintiffs, through counsel, respectfully consolidate all actionable violations presently known into this single collective action (with distinct claims per each model) on behalf of the following models.

22.     Plaintiff JESSICA HINTON a/k/a JESSA HINTON ("Hinton") is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, California.

23.     Plaintiff CORA SKINNER ("Skinner") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles County, California.

24.     Plaintiff DESSIE MITCHESON ("Mitcheson") is, and at all times relevant to this action was, a professional model and a resident of Orange County, California.

25.     Plaintiff SARA UNDERWOOD ("Underwood") is, and at all times relevant to this action was, a professional model and a resident of Multnomah County, Oregon.

26.     Plaintiff EVA PEPAJ ("Pepaj") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles County, California.

27.     Plaintiff JESSE GOLDEN ("Golden") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles County, California.

28.     Plaintiff LINA POSADA ("Posada") is, and at all times relevant to this action was, a professional model and a resident of San Bernardino County, California.

29.     Plaintiff TIFFANY TOTH GRAY ("Gray") is, and at all times relevant to this action was, a professional model and a resident of Orange County, California.

30. Plaintiff JACLYN SWEDBERG ("Swedberg") is, and at all times relevant to this action was, a professional model and a resident of San Bernardino County, California.

31. Plaintiff SARAH STAGE ("Stage") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles County, California.

**B.** **Defendants**

32. According to publicly available records, Defendants VONCH, LLC d/b/a Polekatz Chicago Gentlemen's Club; and POLEKATZ GENTLEMEN'S CLUB, LLC d/b/a Polekatz Chicago Gentlemen's Club, are both Limited Liability Companies organized under the laws of the State of Illinois, and owns and operates a strip club under the name Polekatz located at 7337 W. 100th Pl, Bridgeview, Illinois 60455.

33. Polekatz holds, and at all times relevant has held, itself out as an operator of a strip club that engages in the business of entertaining its patrons with alcohol, fully nude dancing, and full friction.

34. Polekatz jointly owns and/or operates http://www.polekatzchicago.net, as well as other social media accounts and websites, such as https://www.facebook.com/polekatzchicago/, Instagram with username "@polekatzchicago", and Twitter with username "@Polekatz" through which they advertise their business, events, and parties. For many of these events, images of one or more of the models were used to market and promote the events.

35. Upon information and belief, Polekatz coordinated their promotional, Internet, and social media activities through active and dynamic use of their Facebook and Instagram accounts and website.

6

## FACTUAL ALLEGATIONS

**A.** **Standard and Customary Business Practices in the Modeling Industry Require Arms-Length Negotiations over the Terms and Conditions of Usage and Remuneration for any Modeling Images**

36. As set forth immediately below, Plaintiff Models were extremely well-known professional models who earned a livelihood modeling and selling images to companies, magazines, and individuals for the purpose of advertising, endorsing, or promoting products and services.

37. Plaintiff Models' careers in the modeling industry placed a high degree of value on good will and reputation, which was critical in order to maximize earning potential, book modeling contracts, and establish individual brands. In furtherance of establishing, and maintaining their brands, Plaintiff Models were necessarily selective concerning the companies, and brands, for which they chose to model.

38. Being vigilant and proactive about protecting one's reputation is therefore of paramount importance.

39. Plaintiff Models are professional models who earn a living by promoting their image and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on reputation and brand for modeling, acting, hosting, and other opportunities.

40. Plaintiff Models careers in the modeling, acting, and/or private enterprise has value stemming from the goodwill and reputation each has built, all of which is critical to establishing an individual brand, being selected for modeling contracts, and maximizing earnings.

41. Each Plaintiff Model has worked to establish herself as reliable, reputable, and professional.

42.     Each Plaintiff Model must necessarily be vigilant in protecting her "brand" from harm, taint, or other diminution.  In furtherance of establishing, and maintaining her brands, each Plaintiff Model was necessarily selective concerning the companies and brands for which she chose to model.

43.     Any improper or unauthorized use of an image, likeness, or identity could substantially injure the career and career opportunities of each Plaintiff Model.

44.     In the modeling industry, models such as the Plaintiffs typically do not have a single employer, but rather work on an independent contractor basis for different agents or entities.  Each Plaintiff Model is a responsible professional in the ordinary course.  Each Plaintiff Model seeks to control the use and dissemination of her image and, thus, actively participates in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

45.     A model's vetting and selection of a professional engagement involves a multi-tiered assessment, requiring the model to:

a.     determine whether the individual or entity seeking a license and release of a model's image, likeness, or identity is reputable, has reputable products or services, and, through affiliation, would enhance or harm a model's stature or reputation;

b.     use this reputational information in negotiating compensation which typically turns on the work a model is hired to do, the time involved, travel, and how her image is going to be used (among other variables);

c.     protect her reputation and livelihood by carefully and expressly defining the terms and conditions of use; and

d.     reduce and memorialize the negotiated deal into an integrated, written agreement which defines the parties' relationship.   Endorsing, promoting, advertising, or

marketing the "wrong" product, service, or corporate venture, or working in or being affiliated with a disreputable industry can severely impact a model's career by limiting or foreclosing future modeling or brand endorsement opportunities. Conversely, association with high-end companies, products, or magazines can enhance and amplify a model's earning potential and career opportunities by making a model more sought after and desirable.

46. For these reasons, *even if* a model chose to jeopardize her career for a compromising engagement – such as appearing in an advertisement for a strip club – the fee she would charge would necessarily far exceed the fee typically charged for more mainstream and reputable work.

**B.** **Defendants Has Misappropriated Each Plaintiff's Image, Likeness and/or Identity Without Authority, for Self-Serving Commercial Gain and Without Offering or Paying Compensation to any Plaintiff**

47. Both VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC operate a Chicago-based strip Club under the name Polekatz where it engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

48. Polekatz does this for its own commercial and financial benefit.

49. As set forth below, each Plaintiff Model's image, likeness, and/or identity has been misappropriated by or at the direction of Defendants. Defendants' conduct creates the false and misleading appearance and impression that each Plaintiff either works for Defendants, has appeared and participated, or will appear and participate in activities or events at Polekatz, and/or has agreed and consented to advertise, promote, market, or endorse Polekatz or Polekatz's events or activities.

50. Plaintiff Models have personal and proprietary interest in their right to privacy and publicity arising out of their persona and likeness contained within their images. Plaintiff Models'

9

interest is separate and apart from any copyright claim that may or may not exist to the photographs that encompass Plaintiff Models' images. Plaintiff Models' persona, in the form of their likeness, is not copyrightable and their rights of publicity are independent of any copyright. *See e.g. Downing v. Abercrombie Fitch*, 265 F. 3d 994, 1005 (9th Cir. 2001).

51.     To the extent any copyright (or some other "right" for that matter) may exist for photograph depicting Plaintiff Models' images, Plaintiff Models allege that Defendants has totally and completely destroyed any such copyright by morphing, editing, or otherwise altering the original photographs.

52.     The manner in which Defendants used Plaintiff Models' images suggests to the public that Plaintiff Models are promoting or otherwise endorsing Defendants' establishment with the goal of increasing Polekatz's visibility, driving clientele to attend the advertised events, and to otherwise increase revenue and drive profits.

53.     Polekatz has used, advertised, created, printed, and distributed the image of Plaintiff, as further described and identified above, to create the false impression with potential clientele that Plaintiff Models either worked at or endorsed Polekatz.

54.     Polekatz used Plaintiff Models' image, and created the false impression that they worked at or endorsed Polekatz in order to receive certain benefits, including but not limited to: monetary payments; increased promotional opportunities, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

55.     As Polekatz was at all times aware, at no point have Plaintiff Models ever been affiliated with or employed by Polekatz, and at no point have Plaintiff Models ever endorsed Polekatz.

56.     All of Polekatz's activities, including its misappropriation of Plaintiff Models' images, and publication of them, were done without the knowledge or consent of Plaintiff Models, and Polekatz did not compensate Plaintiff Models for its use of their images. As such, Plaintiff Models have never received any benefit for Polekatz's use of their images.  Defendants used Plaintiff Models' images without their consent, and without providing remuneration, in order to permanently deprive the Plaintiff Models of their right to determine the use their images.

57.     Upon information and belief, Defendants has taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiff Models.

### *Plaintiff Jessica Hinton a/k/a Jessa Hinton*

58.     Hinton is, and at all times relevant to this action was, a model, actress, and host. Hinton was first introduced to the entertainment industry at age 14 when she was discovered by a talent manager at a wedding. She immediately booked three national TV commercials and guest appeared on *Baywatch* and *7th Heaven* by the age of 16. At the age of 18, Hinton began working runway shows and doing print campaigns. In 2010, she became the face of the Palm's Hotel and Casino's 2010 ad campaign. Hinton then expanded to TV personality roles having hosted for *Victory Poker*, and as an interview personality for the *Top Ranking Boxing* interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, Hinton was selected as the *Playboy* Playmate of the Month for July 2011, becoming one of the most popular Playmates of that year. Hinton then became the centerpiece of an advertisement campaign for Milwaukee's Best Beer in conjunction with *Playboy* Enterprises.

59.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Hinton negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

60. Hinton's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit A** to the Complaint, which was posted on social media on at least two occasions (and has remained publically posted since those initial posting, constituting a continuous and ongoing harm) to the create the false perception that Hinton has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about November 20, 2016, Hinton's image (posed far left with a red and black lingerie piece) was uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club. The Image of Hinton was used to advertise Polekatz's "WINTER WONDERLAND VIP EVENT". On or about December 2, 2016, the same image of Hinton was uploaded to Polekatz's Facebook page again. The use of the image falsely implied that Hinton represents Polekatz's strip club and that she authorized Polekatz to use her image for promotional and marketing purposes. The image was used without the consent of Hinton and was manipulated to intentionally give the impression that Hinton is a spokesperson for Polekatz, working at Polekatz, and/or that she endores Polekatz.

61. Hinton's image, likeness, and/or identity in **Exhibit A** is being used as advertising, and on social media.

62. Defendants' unauthorized use of Hinton's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present. During the entire timeframe that Defendants' used Hinton's image and likeness, they did so unlawfully, without authorization, and consent, and Hinton suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

63. Hinton has never been hired by Defendants or contracted with Defendants to

advertise, promote, market, or endorse Defendants' businesses, Polekatz or any Polekatz event.

64.     Defendants never sought permission or authority to use Hinton's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

65.     Hinton never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

66.     Defendants neither offered nor paid any remuneration to Hinton for the unauthorized use of her image, likeness, or identity.

67.     Defendants' use of Hinton's image, likeness, and/or identity in connection with Polekatz impugns Hinton's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

68.     Defendants' improper use of Hinton's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Hinton's image in their market activities and business. In doing so, Defendants have further damaged Hinton.

### *Plaintiff Cora Skinner*

69.     Skinner is, and at all times relevant to this action was, a model, and actress. Her TV show appearances include "The Tonight Show with Jay Leno", "Rules of Engagement", "QVC", "Shark", "Las Vegas 'White Christmas'", and "CSI: Miami". Skinner has modeled for name brands such as, Skechers, Norstrom, Fredricks of Hollywood, Tecate, Skky Vodka, and Muscle & Fitness to name a few. She has even appeared on music videos such as Def Leppard's "Nine Lives".

70.     In all instances of commercial marketing and promotion of her image, likeness, or

identity by third parties, Skinner negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

71.     Skinner's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit B** to the Complaint, which was posted on social media on at least two occasions (and has remained publically posted since those initial posting, constituting a continuous and ongoing harm) to the create the false perception that Skinner has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about November 20, 2016, Skinner's image (posed far right with a red lingerie piece) was uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club. The Image of Skinner was used to advertise Polekatz's "WINTER WONDERLAND VIP EVENT". On or about December 2, 2016, the same image of Skinner was uploaded to Polekatz's Facebook page again. The use of the image falsely implied that Skinner represents Polekatz's strip club and that she authorized Polekatz to use her image for promotional and marketing purposes. The image was used without the consent of Skinner and was manipulated to intentionally give the impression that Skinner is a spokesperson for Polekatz, working at Polekatz, and/or that she endores Polekatz.

72.     Skinner's image, likeness, and/or identity in **Exhibit B** is being used as advertising, and on social media.

73.     Defendants' unauthorized use of Skinner's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.  During the entire timeframe that Defendants' used Skinner's image and likeness, they did so unlawfully, without authorization, and consent, and

Skinner suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

74.     Skinner has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz or any Polekatz event.

75.     Defendants never sought permission or authority to use Skinner's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

76.     Skinner never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

77.     Defendants neither offered nor paid any remuneration to Skinner for the unauthorized use of her image, likeness, or identity.

78.     Defendants' use of Skinner's image, likeness, and/or identity in connection with Polekatz impugns Skinner's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

79.     Defendants' improper use of Skinner's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Skinner's image in their market activities and business. In doing so, Defendants have further damaged Skinner.

### Plaintiff Dessie Mitcheson

80.     Mitcheson is, and at all times relevant to this action was, a professional model, and actress. Mitcheson competed in Miss Pennsylvania USA at age 18 and placed in the Top 10. Mitcheson soon became the face of Playboy Intimates, and then became the face of MGM Grand Las Vegas and Miss Pennsylvania Intercontinental. Mitcheson was also named *Maxim* magazine's "Hometown Hottie". That same year, Mitcheson was #100 on *Maxim's* Hot 100 List. Mitcheson

has graced the pages of multiple issues of *Maxim*, including a three page spread, two center folds, and landed the cover for the May 2014 *Navy* issue. Mitcheson was featured as the main Tecate Beer ring girl in the biggest Pay-Per-View event in history, the Mayweather v. Pacquiao fight, which gave her the worldwide visibility with over 100 million viewers. This triggered a huge demand for her services and increased her daily quote substantially. Mitcheson has also been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes, and J. Valentine. Mitcheson was also the face of an International video game.

81.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Mitcheson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

82.     Mitcheson's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit C** to the Complaint, which was posted on social media on at least one occasion (and has remained publically posted since those initial posting, constituting a continuous and ongoing harm) to the create the false perception that Mitcheson has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about October 29, 2015, Mitcheson's image (posed center in a sexy, devil's costume) was uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club. The Image of Mitcheson was used to advertise Polekatz's "HALLOWEEN PARTY". The use of the image falsely implied that Mitcheson represents Polekatz's strip club and that she authorized Polekatz to use her image for promotional and marketing purposes. The image was used without the consent of Mitcheson and was manipulated to intentionally give the impression that Mitcheson is a spokesperson for Polekatz, working at Polekatz, and/or that she endores Polekatz.

83.     Mitcheson's image, likeness, and/or identity in **Exhibit C** is being used as

advertising, and on social media.

84.     Defendants' unauthorized use of Mitcheson's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.  During the entire timeframe that Defendants' used Mitcheson's image and likeness, they did so unlawfully, without authorization, and consent, and Mitcheson suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

85.     Mitcheson has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz or any Polekatz event.

86.     Defendants never sought permission or authority to use Mitcheson's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

87.     Mitcheson never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

88.     Defendants neither offered nor paid any remuneration to Mitcheson for the unauthorized use of her image, likeness, or identity.

89.     Defendants' use of Mitcheson's image, likeness, and/or identity in connection with Polekatz impugns Mitcheson's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

90.     Defendants' improper use of Mitcheson's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Mitcheson's

image in their market activities and business. In doing so, Defendants have further damaged Mitcheson.

### *Plaintiff Sara Underwood*

91.     Underwood is, and at all times relevant to this action was, a professional model, and actress. Underwood first appeared in *Playboy* in the pictorial "The Girls of the Pac 10" in the October 2005 issue (she also graced the cover). Underwood was the Playmate of the Month in the July, 2006 issue of the famous men's magazine. She was named Playmate of the Year in 2007. She has been featured in many *Playboy* videos, and not only has appeared as herself in the films *The House Bunny* (2008) and *Miss March* (2009), but also on episodes of such reality TV series as Kendra (2009), *The Girls Next Door* (2005) and *Bridget's Sexiest Beaches* (2009). Ms. Underwood has also worked on television as a continuity announcer for the Blackbelt TV cable network and co-hosted hundreds of episodes of G4's "Attack of the Show" for a couple of years. She has over 5 million social media followers.[1]

92.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Underwood negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

93.     Underwood's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit D** to the Complaint, which was posted on social media on at least one occasion (and has remained publically posted since those initial posting, constituting a continuous and ongoing harm) to the create the false perception that Underwood has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about October

---

[1]     In the world of modeling, the number of online "followers" or "likes" is a strong factor in determining the earning capacity of a model.

29, 2015, Underwood's image (posed far right in a sexy, camoflauge costume) was uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club. The Image of Underwood was used to advertise Polekatz's "HALLOWEEN PARTY". The use of the image falsely implied that Underwood represents Polekatz's strip club and that she authorized Polekatz to use her image for promotional and marketing purposes. The image was used without the consent of Underwood and was manipulated to intentionally give the impression that Underwood is a spokesperson for Polekatz, working at Polekatz, and/or that she endores Polekatz.

94.     Underwood's image, likeness, and/or identity in **Exhibit D** is being used as advertising, and on social media.

95.     Defendants' unauthorized use of Underwood's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present. During the entire timeframe that Defendants' used Underwood's image and likeness, they did so unlawfully, without authorization, and consent, and Underwood suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

96.     Underwood has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz or any Polekatz event.

97.     Defendants never sought permission or authority to use Underwood's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

98.     Underwood never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse

Defendants' businesses, Polekatz, or any Polekatz event.

99. Defendants neither offered nor paid any remuneration to Underwood for the unauthorized use of her image, likeness, or identity.

100. Defendants' use of Underwood's image, likeness, and/or identity in connection with Polekatz impugns Underwood's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

101. Defendants' improper use of Underwood's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Underwood's image in their market activities and business. In doing so, Defendants have further damaged Underwood.

### Plaintiff Eva Pepaj

102. Pepaj is, and at all times relevant to this action was, a professional model, and actress. Pepaj moved to Hollywood in 2004 to pursue her acting and modeling career. She is known for her roles in the movies: The Hand Off (2009), Interior, Leather Bar, (2013) and The Romp (2011). Pepaj was a feature in a national Diet Coke TV commercial. Pepaj is a professional model working model and actress and her work includes from runways to high fashion, to print and film. Pepaj has over 50,500 followers on Instagram.

103. In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Pepaj negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

104. Pepaj's image, likeness, and/or identity are depicted in at least two photographs, enclosed as **Exhibit E** to the Complaint, which were posted on social media on at least one occasion (and have remained publically posted since those initial posting, constituting a continuous

and ongoing harm) to the create the false perception that Pepaj has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about March 16, 2017, Pepaj's image was uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club. The Facebook caption on the image of Posada mentioned "Already 25 Sexy kittens in the house ! $10 dances $5 Jameson Irish Whiskey shots $5 Guinness until 3 am". Additionally, on or about October 18, 2016, another Image of Pepaj (posed center wearing a sexy, devil's costume) was also uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club. The second Image of Pepaj was used to advertise Polekatz's "Monsters Ball VIP Party". The same Image of Ms. Pepaj was used on Polekatz's Instagram page on or about October 24, 2016. The use of the images falsely implied that Pepaj represents Polekatz's strip club and that she authorized Polekatz to use her images for promotional and marketing purposes. The images were used without the consent of Pepaj and were manipulated to intentionally give the impression that Pepaj is a spokesperson for Polekatz, working at Polekatz, and/or that she endores Polekatz.

105.    Pepaj's image, likeness, and/or identity in **Exhibit E** is being used as advertising, and on social media.

106.    Defendants' unauthorized use of Pepaj's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.  During the entire timeframe that Defendants' used Pepaj's image and likeness, they did so unlawfully, without authorization, and consent, and Pepaj suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

107.    Pepaj has never been hired by Defendants or contracted with Defendants to

advertise, promote, market, or endorse Defendants' businesses, Polekatz or any Polekatz event.

108. Defendants never sought permission or authority to use Pepaj's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

109. Pepaj never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

110. Defendants neither offered nor paid any remuneration to Pepaj for the unauthorized use of her image, likeness, or identity.

111. Defendants' use of Pepaj's image, likeness, and/or identity in connection with Polekatz impugns Pepaj's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

112. Defendants' improper use of Pepaj's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Pepaj's image in their market activities and business. In doing so, Defendants have further damaged Pepaj.

### *Plaintiff Jesse Golden*

113. Golden is, and at all times relevant to this action was, a model, and business woman. She became a supermodel with high profile clients that included Abercrombie & Fitch, Victoria Secret, Lucy Sport, Coca-Cola, GAP, and Nike. She has graced the covers of magazines like *New York Times, Fitness, New Port Beach, Yoga International*, and many others. Golden shares her secrets on her own blog and also writes for many other magazines and sites. She's currently becoming a Holistic Health Practitioner and is a certified Hatha yoga teacher. She has her own fitness and yoga brand and products. Working for many notable fashion brands, dozens of

commercials, television and film; Golden continues to expand her career through life experiences.

114.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Golden negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

115.    Golden's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit F** to the Complaint, which was posted on social media on at least one occasion (and has remained publically posted since those initial posting, constituting a continuous and ongoing harm) to the create the false perception that Golden has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about October 18, 2016, Golden's image (posed far left in a sexy, witch's costume) was uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club. The Image of Golden was used to advertise Polekatz's "Monsters Ball VIP Party". The same Image of Ms. Golden was used on Polekatz's Instagram page on or about October 24, 2016. The use of the image falsely implied that Golden represents Polekatz's strip club and that she authorized Polekatz to use her image for promotional and marketing purposes. The image was used without the consent of Golden and was manipulated to intentionally give the impression that Golden is a spokesperson for Polekatz, working at Polekatz, and/or that she endores Polekatz.

116.    Golden's image, likeness, and/or identity in **Exhibit F** is being used as advertising, and on social media.

117.    Defendants' unauthorized use of Golden's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image

23

from the date it was first posted until present. During the entire timeframe that Defendants' used Golden's image and likeness, they did so unlawfully, without authorization, and consent, and Golden suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

118. Golden has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz or any Polekatz event.

119. Defendants never sought permission or authority to use Golden's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

120. Golden never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

121. Defendants neither offered nor paid any remuneration to Golden for the unauthorized use of her image, likeness, or identity.

122. Defendants' use of Golden's image, likeness, and/or identity in connection with Polekatz impugns Golden's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

123. Defendants' improper use of Golden's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Golden's image in their market activities and business. In doing so, Defendants have further damaged Golden.

### *Plaintiff Lina Posada*

124. Posada is, and at all times relevant to this action was, a fashion model and designer. A native of Barranquilla, Colombia, Posada best known as a model for the *Besame* and *Espiral* lingerie collections. Posada has also modeled *for* Paradizia *Swimwear, Babalú Swimwear, Irgus*

24

*Swimwear, Ujeans*, as well as many others. She has over 500,000 YouTube views, over 5,700 Twitter followers, over 8,100 Facebook followers, and over 94,400 Instagram followers.

125.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Posada negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

126.    Posada's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit G** to the Complaint, which has been used at least one time (and has remained publically posted since the initial posting, constituting a continuous and ongoing harm) to create the false perception that Posada has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about March 8, 2016, Posada's image was uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club.  The Image of Posada was used to advertise Polekatz's "St. Patty's Day".  The use of this image falsely implied that Posada represents Polekatz strip club and that she authorized Polekatz to use her image for promotional and marketing purposes. The image was used without the consent of Posada and was manipulated to intentionally give the impression that Posada is a spokesperson for Polekatz, working at Polekatz, and/or that she endorses Polekatz.

127.    Posada's image, likeness, and/or identity in **Exhibit G** are being used as advertising and on social media.

128.    Defendants' unauthorized use of Posada's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.  During the entire timeframe that Defendants' used

Posada's image and likeness, they did so unlawfully, without authorization, and consent, and Posada suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

129.    Posada has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

130.    Defendants never sought permission or authority to use Posada's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

131.    Posada never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz event.

132.    Defendants neither offered nor paid any remuneration to Posada for the unauthorized use of her image, likeness, or identity.

133.    Defendants' use of Posada's image, likeness, and/or identity in connection with Polekatz's impugns Posada' character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

134.    Defendants' improper use of Posada's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Posada' image in their market activities and business. In doing so, Defendants has further damaged Posada.

### Plaintiff Tiffany Toth Gray

135.    Gray is, and at all times relevant to this action was, a model. Gray takes great pride in holding the prestigious title of a *Playboy* Playmate. Gray was the *Playboy* "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under *Playboy's* Fresh Faces. Moreover, she has not only been featured in such magazines as *Super Street Bike*, *Import Tuner,*

*Sport Truck, Iron Man, Seventeen*, and *Maxim*, but has also posed for various catalogs. Gray has over 3.8 million Facebook followers, over 1.2 million Instagram followers, and over 223,300 Twitter followers.

136. In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Gray negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

137. Gray's image, likeness, and/or identity are depicted in at least two photographs, enclosed as **Exhibit H** to the Complaint, which were posted on social media on at least four occasions (and have remained publically posted since those initial posting, constituting a continuous and ongoing harm) to the create the false perception that Gray has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about October 29, 2015, Gray's image (posed far left in a sexy, cat costume) was uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club. The Image of Gray was used to advertise Polekatz's "HALLOWEEN PARTY". Additionally, on or about December 17, 2015, another Image of Gray (posed center wearing red lingerie) was also uploaded to Polekatz's Facebook page with intent to advertise Polekatz's "Winter Wonderland VIP Event".  That same Image of Gray was also used on Polekatz' website, and again on their Facebook page as Polekatz' Facebook profile picture. The use of the images falsely implied that Gray represents Polekatz's strip club and that she authorized Polekatz to use her images for promotional and marketing purposes. The image was used without the consent of Gray and was manipulated to intentionally give the impression that Gray is a spokesperson for Polekatz, working at Polekatz, and/or that she endores Polekatz.

138. Gray's image, likeness, and/or identity in **Exhibit H** is being used as advertising,

and on social media.

139.    Defendants' unauthorized use of Gray's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account or website could view, access, and even download the image from the date it was first posted until present.   During the entire timeframe that Defendants' used Gray's image and likeness, they did so unlawfully, without authorization, and consent, and Gray suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

140.    Gray has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz or any Polekatz event.

141.    Defendants never sought permission or authority to use Gray's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

142.    Gray never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

143.    Defendants neither offered nor paid any remuneration to Gray for the unauthorized use of her image, likeness, or identity.

144.    Defendants' use of Gray's image, likeness, and/or identity in connection with Polekatz impugns Gray's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

145.    Defendants' improper use of Gray's image permitted, encouraged, or facilitated

other persons, firms, and entities to further utilize and misappropriate Gray's image in their market activities and business. In doing so, Defendants have further damaged Gray.

### *Plaintiff Jaclyn Swedberg*

146.    Swedberg is, and at all times relevant to this action was, a model, and actress. Swedberg has appeared in a number of TV series including, Badass, Playboy's Beach House, Pauly Shore's Paulytic's, Snake and Mongoose and a series called Muck, in which she has a starring recurring role. Swedberg was *Playboy's* Playmate of the month April 2011 and went on to win Playmate of the Year 2012/ 2013. Swedberg has over 1 million Instagram followers, and over 210,100 Twitter followers.

147.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Swedberg negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

148.    Swedberg's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit I** to the Complaint, which was posted on social media on at least one occasion (and has remained publically posted since those initial posting, constituting a continuous and ongoing harm) to the create the false perception that Swedberg has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about June 2, 2016, Swedberg's image (posed center laying down) was uploaded to Polekatz's Instagram page with intent to promote and market Polekatz strip club. The Image of Swedberg was used to advertise Polekatz's "CIRQUE DU NOIR VIP EVENT". The use of the image falsely implied that Swedberg represents Polekatz's strip club and that she authorized Polekatz to use her image for promotional and marketing purposes. The image was used without the consent of Swedberg and was manipulated to intentionally give the impression that Swedberg is a spokesperson for Polekatz, working at

Polekatz, and/or that she endores Polekatz.

149.   Swedberg's image, likeness, and/or identity in **Exhibit I** is being used as advertising, and on social media.

150.   Defendants' unauthorized use of Swedberg's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Instagram account could view, access, and even download the image from the date it was first posted until present.  During the entire timeframe that Defendants' used Swedberg's image and likeness, they did so unlawfully, without authorization, and consent, and Swedberg suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

151.   Swedberg has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz or any Polekatz event.

152.   Defendants never sought permission or authority to use Swedberg's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

153.   Swedberg never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

154.   Defendants neither offered nor paid any remuneration to Underwood for the unauthorized use of her image, likeness, or identity.

155.   Defendants' use of Swedberg's image, likeness, and/or identity in connection with Polekatz impugns Swedberg's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

156.     Defendants' improper use of Swedberg's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Swedberg's image in their market activities and business. In doing so, Defendants have further damaged Swedberg.

### Plaintiff Sarah Stage

157.     Stage is, and at all times relevant to this action was, a glamour model, and actress. Stage has worked for brands such as Fredericks of Hollywood, Jafra Cosmetics, Buffalo Jeans, Sky Clothing, and Beach Bunny Swimwear. Ms. Stage has also done commercials for Kia, Budweiser, Samsung and she has appeared in magazines such as *Maxim*, *Shape*, and *Allure*. Stage is a social media influencer with 2.2 million followers on Instagram, 23,000 followers on Twitter, more than 50,000 views on Snapchat, and more than 114,780 likes on Facebook.

158.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Stage negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

159.     Stage's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit J** to the Complaint, which has been used at least one time (and has remained publically posted since the initial posting, constituting a continuous and ongoing harm) to create the false perception that Stage has consented or agreed to promote, advertise, market and/or endorse Polekatz. Specifically, on October 2, 2017, Stage's image (posed far left with a black costume) was uploaded to Polekatz's Instagram page with intent to promote and market Polekatz strip club. The Image of Stage was used to advertise Polekatz's "MONSTERS BALL A VIP EVENT". The same Image of Ms. Stage was used on Polekatz's Instagram page on or about October 11, 2017. The use of this image falsely implied that Stage represents Polekatz strip club and that she authorized Polekatz to use her image for promotional and marketing purposes. The

image was used without the consent of Stage and was manipulated to intentionally give the impression that Stage is a spokesperson for Polekatz, working at Polekatz, and/or that she endorses Polekatz.

160.     Stage's image, likeness, and/or identity in **Exhibit J** are being used as advertising, on social media, and for branding purposes.

161.     Defendants' unauthorized use of Stage's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants Instagram account could view, access, and even download the image from the date it was first posted until present.  During the entire timeframe that Defendants' used Stage's image and likeness, they did so unlawfully, without authorization, and consent, and Stage suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

162.     Stage has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

163.     Defendants never sought permission or authority to use Stage's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

164.     Stage never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

165.     Defendants neither offered nor paid any remuneration to Stage for the unauthorized use of her image, likeness or identity.

166.   Defendants' use of Stage's image, likeness, and/or identity in connection with Polekatz impugns Stage's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

167.   Defendants' improper use of Stage's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Stage's image in their market activities and business. In doing so, Defendants has further damaged Stage.

## CAUSES OF ACTION

*Plaintiff Jessica Hinton a/k/a Jessa Hinton's Causes of Action*
*against Defendants VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC  both d/b/a*
*Polekatz*

## HINTON COUNT I
## Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

168.   Hinton re-alleges paragraphs 1 – 21, 22, 32 - 57, and 58 – 68 above, and incorporates the same by reference as though fully set forth herein.

169.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Hinton from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

170.   Defendants used Hinton's image, likeness and/or identity as described herein without authority in order to create the perception that Hinton worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

171.   Defendants' use of Hinton's image, likeness and/or identity to advertise, promote

and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

172.    Defendants' unauthorized use of Hinton's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Hinton worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities and/or that Hinton would participate in or appear at the specific events promoted in the advertisements.

173.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Hinton worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

174.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Hinton worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and

participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

175. Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

176. Defendants' unauthorized use of Hinton's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

177. Defendants knew or should have known that their unauthorized use of Hinton's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

178. Defendants' unauthorized use of Hinton's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

179. Defendants' wrongful conduct as described herein was willful.

180. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

181. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Hinton of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Hinton.

182. The method and manner in which Defendants used the image of Hinton further evinces that Defendants were aware of or consciously disregarded the fact that Hinton did not consent to Defendants' use of the image to advertise Defendants' businesses.

183.   Defendants had caused irreparable harm to Hinton, her reputation and brand by attributing to Hinton the strip club lifestyle and activities at Polekatz.

184.   Defendants' unauthorized use of Hinton's image, likeness and/or identity directly and proximately caused and continue to cause damage to Hinton in an amount to be determined at trial.

WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### HINTON COUNT II
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement**)

185.   Hinton re-alleges paragraphs 1 – 21, 22, 32 - 57, and 58 – 68 above, and incorporates the same by reference as though fully set forth herein.

186.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Hinton from the conduct described herein

187.   Defendants used Hinton's image in order to create the false impression with the public that Hinton either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

188.   Thus, this was done in furtherance of Defendants' commercial benefit.

189.   Hinton is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Hinton's images in magazines and online. By virtue of Hinton's use of her image and

identify to build her brand, she has acquired a distinctiveness through secondary meaning. Hinton's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

190.   Both Hinton and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

191.   As such, an unauthorized use of Hinton's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Hinton. There is no doubt that Defendants' used Hinton' image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Hinton's image and likeness was an existing intent to commercialize an interest in Hinton's image and likeness

192.   Defendants' use of Hinton's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Hinton's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Hinton, or sponsored, approved or associated with Hinton.

193.   Despite the fact that Defendants were at all times aware that Hinton neither worked at, nor endorsed their strip club, nevertheless, they used Hinton's image in order to mislead potential customers as to Hinton's employment at and/or affiliation with Polekatz.

194.   Defendants knew that their use of Hinton's image would cause consumer confusion

as to Hinton's sponsorship and/or employment at Polekatz.

195.   Upon information and belief, Defendants' use of Hinton's image did in fact cause consumer confusion as to Hinton's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

196.   As a direct and proximate result of Defendants' actions, Hinton has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Hinton's image, likeness and/or identity, or how Hinton's image, likeness and/or identity is being depicted by Defendants.

197.   Further, any failure, neglect or default by Defendants will reflect adversely on Hinton as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Hinton to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Hinton.

198.   Due to Polekatz's unauthorized use of Hinton's image, Hinton has been damaged in an amount to be determined at trial.

**WHEREFORE**, Hinton respectfully requests that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**HINTON COUNT III**
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

199.   Hinton re-alleges paragraphs 1 – 21, 22, 32 - 57, and 58 – 68 above, and incorporates the same by reference as though fully set forth herein.

200.   Hinton has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity.*

201.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Hinton without express written or oral consent to such use.

202.   As set forth herein, Defendants has violated Hinton's right to publicity by invading Hinton's privacy, misappropriating her likeness, and publishing on Polekatz social media outlets, the altered image as it appears in Exhibit A, likeness and/or identity of Hinton which made it appear as though Hinton was employed at Polekatz, or endorsed Polekatz strip club, or any Polekatz events or activities.

203.   Defendants' unauthorized use of Hinton's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

204.   Despite the clear language of IRPA and at all relevant times, Defendants published, printed, displayed and/or publicly used Hinton's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but

not limited to, promoting, advertising and marketing Polekatz and/or Polekatz's events and activities

205.   The respective social media outlets were designed to attract business and generate revenue for Polekatz.

206.   Upon information and belief, Defendants' use of Hinton's image, likeness and/or identity did in fact attract clientele and generate business for Polekatz.

207.   At all relevant times and at no point, did Defendants ever receive permission or consent, be it written or otherwise, to use Hinton's image, likeness and/or identity on the Polekatz social media outlets or for any other use or matter associated with Polekatz.

208.   Defendants took these actions without Hinton's permission, consent or authority, be it written or otherwise. In fact, Defendants never sought permission nor authority to use Hinton's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activities or for any other use.

209.   Hinton never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activity.

210.   Defendants was at all relevant times aware that they never received Hinton's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Polekatz.

211.   At no point did Defendants ever compensate Hinton for its use of her image, likeness, and/or identity.

212.   No applicable privilege or authorization exists for Defendants' use of Hinton's Image.

213.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Hinton's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

214.   Defendants caused irreparable harm to Hinton, her reputation and brand by attributing to Hinton the strip club lifestyle and activities at Polekatz.

215.   Defendants has also damaged Hinton as a direct and proximate result of their unauthorized use of Hinton's image, likeness and/or identity without compensating Hinton.

216.   Due to Defendants' violation of Hinton's rights of privacy and publicity under IRPA, Hinton has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

217.   In addition, Hinton hereby requests an Order permanently enjoining Defendants from violating Hinton's right to privacy and publicity.

218.   In addition, Hinton hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Hinton respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

**HINTON COUNT IV**
**(Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)**

219.   Hinton re-alleges paragraphs 1 – 21, 22, 32 - 57, and 58 – 68 above, and incorporates the same by reference as though fully set forth herein.

220.   Defendants published Hinton's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Polekatz and Polekatz's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Polekatz, or endorsed Polekatz strip club before the public as a result of that publication.

221.   Defendants' unauthorized use of Hinton's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

222.   Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Hinton in a false light Defendants did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

223.   Defendants published Hinton's image, likeness and/or identity on Polekatz social media outlets in order to create the false impression that Hinton was either a stripper working at Polekatz, or endorsed Polekatz strip club.

224.   As such, Defendants' intent in publishing Hinton's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Polekatz.

225.   Defendants was at all times aware, Hinton never worked at any Polekatz strip club, never endorsed Polekatz, and never had any affiliation with Polekatz or any Polekatz events or

activities.

226.   Defendants never sought permission or authority to use Hinton image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz events or activities.

227.   Hinton never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz event or activity.

228.   As a result of Defendants' unauthorized and misleading publication of Hinton's Image, Defendants has caused irreparable harm to Hinton, her reputation and brand by attributing to Hinton the strip club lifestyle and activities at Polekatz.

229.   Defendants has also damaged Hinton as result of their unauthorized use of Hinton's image, likeness or identity without compensating Hinton.   Defendants' conduct has been despicable and taken in conscious disregard of Hinton's rights.

230.   As a result of Defendants' unauthorized and misleading use of Hinton's image, likeness or identity, Hinton has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Hinton respectfully requests that the Court issue a judgment against Defendants for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## HINTON COUNT V
### (Negligence and *Respondeat Superior*)

231.   Hinton re-alleges paragraphs 1 – 21, 22, 32 - 57, and 58 – 68 above, and incorporates the same by reference as though fully set forth herein.

232.   Upon information and belief, Defendants was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Polekatz Website and social media accounts

233.   Said failure was the proximate cause of the harm Hinton suffered when her Image was published without her authorization.

234.   In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

235.   In addition, Defendants had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

236.   Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

237.   As a result of Defendants' negligence, Hinton has suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Cora Skinner's Causes of Action against Defendants*
*VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz*

### SKINNER COUNT I
**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

238.   Skinner re-alleges paragraphs 1 – 21, 23, 32 - 57, and 69 – 79 above, and incorporates the same by reference as though fully set forth herein.

239.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Skinner from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

240.   Defendants used Skinner's image, likeness and/or identity as described herein without authority in order to create the perception that Skinner worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

241.   Defendants' use of Skinner's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

242.   Defendants' unauthorized use of Skinner's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Skinner worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's

events and activities and/or that Skinner would participate in or appear at the specific events promoted in the advertisements.

243. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Skinner worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

244. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Skinner worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

245. Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

246.    Defendants' unauthorized use of Skinner's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

247.    Defendants knew or should have known that their unauthorized use of Skinner's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

248.    Defendants' unauthorized use of Skinner's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

249.    Defendants' wrongful conduct as described herein was willful.

250.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

251.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Skinner of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Skinner.

252.    The method and manner in which Defendants used the image of Skinner further evinces that Defendants were aware of or consciously disregarded the fact that Skinner did not consent to Defendants' use of the image to advertise Defendants' businesses.

253.    Defendants had caused irreparable harm to Skinner, her reputation and brand by attributing to Skinner the strip club lifestyle and activities at Polekatz.

254.    Defendants' unauthorized use of Skinner's image, likeness and/or identity directly and proximately caused and continue to cause damage to Skinner in an amount to be determined at trial.

**WHEREFORE**, Skinner respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits,

disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**SKINNER COUNT II**
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement**)

255.    Skinner re-alleges paragraphs 1 – 21, 23, 32 - 57, and 69 – 79 above, and incorporates the same by reference as though fully set forth herein.

256.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Skinner from the conduct described herein

257.    Defendants used Skinner's image in order to create the false impression with the public that Skinner either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

258.    Thus, this was done in furtherance of Defendants' commercial benefit.

259.    Skinner is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Skinner's images in magazines and online. By virtue of Skinner's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Skinner's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

260.    Both Skinner and Defendants compete in the entertainment industry, use similar

marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

261.    As such, an unauthorized use of Skinner's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Skinner. There is no doubt that Defendants' used Skinner's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Skinner's image and likeness was an existing intent to commercialize an interest in Skinner's image and likeness

262.    Defendants' use of Skinner's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Skinner's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Skinner, or sponsored, approved or associated with Skinner.

263.    Despite the fact that Defendants were at all times aware that Skinner neither worked at, nor endorsed their strip club, nevertheless, they used Skinner's image in order to mislead potential customers as to Skinner's employment at and/or affiliation with Polekatz.

264.    Defendants knew that their use of Skinner's image would cause consumer confusion as to Skinner's sponsorship and/or employment at Polekatz.

265.    Upon information and belief, Defendants' use of Skinner's image did in fact cause consumer confusion as to Skinner's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

266.    As a direct and proximate result of Defendants' actions, Skinner has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the

advertisements depicting Skinner's image, likeness and/or identity, or how Skinner's image, likeness and/or identity is being depicted by Defendants.

267.   Further, any failure, neglect or default by Defendants will reflect adversely on Skinner as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Skinner to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Skinner.

268.   Due to Polekatz's unauthorized use of Skinner's image, Skinner has been damaged in an amount to be determined at trial.

**WHEREFORE**, Skinner respectfully requests that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SKINNER COUNT III
### (**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

269.   Skinner re-alleges paragraphs 1 – 21, 23, 32 - 57, and 69 – 79 above, and incorporates the same by reference as though fully set forth herein.

270.   Skinner has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

271.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Skinner without express written or oral consent to such use.

272.    As set forth herein, Defendants has violated Skinner's right to publicity by invading Skinner's privacy, misappropriating her likeness, and publishing on Polekatz social media outlets, the altered image as it appears in Exhibit B, likeness and/or identity of Skinner which made it appear as though Skinner was employed at Polekatz, or endorsed Polekatz strip club, or any Polekatz events or activities.

273.    Defendants' unauthorized use of Skinner's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

274.    Despite the clear language of IRPA and at all relevant times, Defendants published, printed, displayed and/or publicly used Skinner's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Polekatz and/or Polekatz's events and activities

275.    The respective social media outlets were designed to attract business and generate revenue for Polekatz.

276.    Upon information and belief, Defendants' use of Skinner's image, likeness and/or identity did in fact attract clientele and generate business for Polekatz.

277.    At all relevant times and at no point, did Defendants ever receive permission or consent, be it written or otherwise, to use Skinner's image, likeness and/or identity on the Polekatz social media outlets or for any other use or matter associated with Polekatz.

278. Defendants took these actions without Skinner's permission, consent or authority, be it written or otherwise. In fact, Defendants never sought permission nor authority to use Skinner's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activities or for any other use.

279. Skinner never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activity.

280. Defendants was at all relevant times aware that they never received Skinner's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Polekatz.

281. At no point did Defendants ever compensate Skinner for its use of her image, likeness, and/or identity.

282. No applicable privilege or authorization exists for Defendants' use of Skinner's Image.

283. Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Skinner's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

284. Defendants caused irreparable harm to Skinner, her reputation and brand by attributing to Skinner the strip club lifestyle and activities at Polekatz.

285. Defendants has also damaged Skinner as a direct and proximate result of their unauthorized use of Skinner's image, likeness and/or identity without compensating Skinner.

286. Due to Defendants' violation of Skinner's rights of privacy and publicity under IRPA, Skinner has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

287. In addition, Skinner hereby requests an Order permanently enjoining Defendants from violating Skinner's right to privacy and publicity.

288. In addition, Skinner hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Skinner respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## SKINNER COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

289. Skinner re-alleges paragraphs 1 – 21, 23, 32 - 57, and 69 – 79 above, and incorporates the same by reference as though fully set forth herein.

290. Defendants published Skinner's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Polekatz and Polekatz's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Polekatz, or endorsed Polekatz strip club before the public as a result of that publication.

291. Defendants' unauthorized use of Skinner's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any

person visting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

292.  Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Skinner in a false light Defendants did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

293.  Defendants published Skinner's image, likeness and/or identity on Polekatz social media outlets in order to create the false impression that Skinner was either a stripper working at Polekatz, or endorsed Polekatz strip club.

294.  As such, Defendants' intent in publishing Skinner's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Polekatz.

295.  Defendants was at all times aware, Skinner never worked at any Polekatz strip club, never endorsed Polekatz, and never had any affiliation with Polekatz or any Polekatz events or activities.

296.  Defendants never sought permission or authority to use Skinner image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz events or activities.

297.  Skinner never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz event or activity.

298.  As a result of Defendants' unauthorized and misleading publication of Skinner's Image, Defendants has caused irreparable harm to Skinner, her reputation and brand by attributing to Skinner the strip club lifestyle and activities at Polekatz.

299.   Defendants has also damaged Skinner as result of their unauthorized use of Skinner's image, likeness or identity without compensating Skinner.  Defendants' conduct has been despicable and taken in conscious disregard of Skinner's rights.

300.   As a result of Defendants' unauthorized and misleading use of Skinner's image, likeness or identity, Skinner has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Skinner respectfully requests that the Court issue a judgment against Defendants for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court

## SKINNER COUNT V
### (Negligence and *Respondeat Superior*)

301.   Skinner re-alleges paragraphs 1 – 21, 23, 32 - 57, and 69 – 79 above, and incorporates the same by reference as though fully set forth herein.

302.   Upon information and belief, Defendants was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Polekatz Website and social media accounts

303.   Said failure was the proximate cause of the harm Skinner suffered when her Image was published without her authorization.

304.   In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law,

were not violated.

305. In addition, Defendants had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

306. Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

307. As a result of Defendants' negligence, Skinner has suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

***Plaintiff Dessie Mitcheson's Causes of Action against Defendants
VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz***

**<u>MITCHESON COUNT I</u>
Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

308. Mitcheson re-alleges paragraphs 1 – 21, 24, 32 - 57, and 80 – 90 above, and incorporates the same by reference as though fully set forth herein.

309. Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Mitcheson from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

310. Defendants used Mitcheson's image, likeness and/or identity as described herein without authority in order to create the perception that Mitcheson worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

311.    Defendants' use of Mitcheson's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

312.    Defendants' unauthorized use of Mitcheson's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Mitcheson worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities and/or that Mitcheson would participate in or appear at the specific events promoted in the advertisements.

313.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Mitcheson worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

314.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Mitcheson worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers

and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

315.    Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

316.    Defendants' unauthorized use of Mitcheson's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

317.    Defendants knew or should have known that their unauthorized use of Mitcheson's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

318.    Defendants' unauthorized use of Mitcheson's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

319.    Defendants' wrongful conduct as described herein was willful.

320.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

321.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Mitcheson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Mitcheson.

322.    The method and manner in which Defendants used the image of Mitcheson further

evinces that Defendants were aware of or consciously disregarded the fact that Mitcheson did not consent to Defendants' use of the image to advertise Defendants' businesses.

323.   Defendants had caused irreparable harm to Mitcheson, her reputation and brand by attributing to Mitcheson the strip club lifestyle and activities at Polekatz.

324.   Defendants' unauthorized use of Mitcheson's image, likeness and/or identity directly and proximately caused and continue to cause damage to Mitcheson in an amount to be determined at trial.

**WHEREFORE**, Mitcheson respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## MITCHESON COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

325.   Mitcheson re-alleges paragraphs 1 – 21, 24, 32 - 57, and 80 – 90 above, and incorporates the same by reference as though fully set forth herein.

326.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Mitcheson from the conduct described herein

327.   Defendants used Mitcheson's image in order to create the false impression with the public that Mitcheson either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

328.   Thus, this was done in furtherance of Defendants' commercial benefit.

329.   Mitcheson is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Mitcheson's images in magazines and online. By virtue of Mitcheson's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Mitcheson's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

330.   Both Mitcheson and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

331.   As such, an unauthorized use of Mitcheson's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Mitcheson. There is no doubt that Defendants' used Mitcheson's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Mitcheson's image and likeness was an existing intent to commercialize an interest in Mitcheson's  image and likeness

332.   Defendants' use of Mitcheson's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Mitcheson's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Mitcheson, or sponsored, approved or associated with Mitcheson.

333.   Despite the fact that Defendants were at all times aware that Mitcheson neither

worked at, nor endorsed their strip club, nevertheless, they used Mitcheson's image in order to mislead potential customers as to Mitcheson's employment at and/or affiliation with Polekatz.

334.   Defendants knew that their use of Mitcheson's image would cause consumer confusion as to Mitcheson's sponsorship and/or employment at Polekatz.

335.   Upon information and belief, Defendants' use of Mitcheson's image did in fact cause consumer confusion as to Mitcheson's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

336.   As a direct and proximate result of Defendants' actions, Mitcheson has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Mitcheson's image, likeness and/or identity, or how Mitcheson's image, likeness and/or identity is being depicted by Defendants.

337.   Further, any failure, neglect or default by Defendants will reflect adversely on Mitcheson as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Mitcheson to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Mitcheson.

338.   Due to Polekatz's unauthorized use of Mitcheson's image, Mitcheson has been damaged in an amount to be determined at trial.

**WHEREFORE**, Mitcheson respectfully requests that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that

is just and proper.

## MITCHESON COUNT III
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

339.   Mitcheson re-alleges paragraphs 1 – 21, 24, 32 - 57, and 80 – 90 above, and incorporates the same by reference as though fully set forth herein.

340.   Mitcheson has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

341.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Mitcheson without express written or oral consent to such use.

342.   As set forth herein, Defendants has violated Mitcheson's right to publicity by invading Mitcheson's privacy, misappropriating her likeness, and publishing on Polekatz social media outlets, the altered image as it appears in Exhibit C, likeness and/or identity of Mitcheson which made it appear as though Mitcheson was employed at Polekatz, or endorsed Polekatz strip club, or any Polekatz events or activities.

343.   Defendants' unauthorized use of Mitcheson's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

344.   Despite the clear language of IRPA and at all relevant times, Defendants published, printed, displayed and/or publicly used Mitcheson's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but

not limited to, promoting, advertising and marketing Polekatz and/or Polekatz's events and activities

345.    The respective social media outlets were designed to attract business and generate revenue for Polekatz.

346.    Upon information and belief, Defendants' use of Mitcheson's image, likeness and/or identity did in fact attract clientele and generate business for Polekatz.

347.    At all relevant times and at no point, did Defendants ever receive permission or consent, be it written or otherwise, to use Mitcheson's image, likeness and/or identity on the Polekatz social media outlets or for any other use or matter associated with Polekatz.

348.    Defendants took these actions without Mitcheson's permission, consent or authority, be it written or otherwise. In fact, Defendants never sought permission nor authority to use Mitcheson's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activities or for any other use.

349.    Mitcheson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activity.

350.    Defendants was at all relevant times aware that they never received Mitcheson's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Polekatz.

351.    At no point did Defendants ever compensate Mitcheson for its use of her image, likeness, and/or identity.

352.    No applicable privilege or authorization exists for Defendants' use of Mitcheson's Image.

353.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Mitcheson's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

354.    Defendants caused irreparable harm to Mitcheson, her reputation and brand by attributing to Mitcheson the strip club lifestyle and activities at Polekatz.

355.    Defendants has also damaged Mitcheson as a direct and proximate result of their unauthorized use of Mitcheson's image, likeness and/or identity without compensating Mitcheson.

356.    Due to Defendants' violation of Mitcheson's rights of privacy and publicity under IRPA, Mitcheson has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

357.    In addition, Mitcheson hereby requests an Order permanently enjoining Defendants from violating Mitcheson's right to privacy and publicity.

358.    In addition, Mitcheson hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Mitcheson respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## MITCHESON COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

359.   Mitcheson re-alleges paragraphs 1 – 21, 24, 32 - 57, and 80 – 90 above, and incorporates the same by reference as though fully set forth herein.

360.   Defendants published Mitcheson's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Polekatz and Polekatz's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Polekatz, or endorsed Polekatz strip club before the public as a result of that publication.

361.   Defendants' unauthorized use of Mitcheson's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

362.   Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Mitcheson in a false light Defendants did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

363.   Defendants published Mitcheson's image, likeness and/or identity on Polekatz social media outlets in order to create the false impression that Mitcheson was either a stripper working at Polekatz, or endorsed Polekatz strip club.

364.   As such, Defendants' intent in publishing Mitcheson's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Polekatz.

365.   Defendants was at all times aware, Mitcheson never worked at any Polekatz strip

club, never endorsed Polekatz, and never had any affiliation with Polekatz or any Polekatz events or activities.

366. Defendants never sought permission or authority to use Mitcheson image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz events or activities.

367. Mitcheson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz event or activity.

368. As a result of Defendants' unauthorized and misleading publication of Mitcheson's Image, Defendants has caused irreparable harm to Mitcheson, her reputation and brand by attributing to Mitcheson the strip club lifestyle and activities at Polekatz.

369. Defendants has also damaged Mitcheson as result of their unauthorized use of Mitcheson's image, likeness or identity without compensating Mitcheson. Defendants' conduct has been despicable and taken in conscious disregard of Mitcheson's rights.

370. As a result of Defendants' unauthorized and misleading use of Mitcheson's image, likeness or identity, Mitcheson has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Mitcheson respectfully requests that the Court issue a judgment against Defendants for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## MITCHESON COUNT V
### (Negligence and *Respondeat Superior*)

371.   Mitcheson re-alleges paragraphs 1 – 21, 24, 32 - 57, and 80 – 90 above, and incorporates the same by reference as though fully set forth herein.

372.   Upon information and belief, Defendants was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Polekatz Website and social media accounts

373.   Said failure was the proximate cause of the harm Mitcheson suffered when her Image was published without her authorization.

374.   In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

375.   In addition, Defendants had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

376.   Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

377.   As a result of Defendants' negligence, Mitcheson has suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Sara Underwood's Causes of Action against Defendants*
*VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz*

## UNDERWOOD COUNT I
### Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

378.   Underwood re-alleges paragraphs 1 – 21, 25, 32 - 57, and 91 – 101 above, and incorporates the same by reference as though fully set forth herein.

379.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Underwood from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

380.   Defendants used Underwood's image, likeness and/or identity as described herein without authority in order to create the perception that Underwood worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

381.   Defendants' use of Underwood's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

382.   Defendants' unauthorized use of Underwood's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Underwood worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's

events and activities and/or that Underwood would participate in or appear at the specific events promoted in the advertisements.

383. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Underwood worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

384. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Underwood worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

385. Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice

or lure membership and attendance at Polekatz events.

386. Defendants' unauthorized use of Underwood's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

387. Defendants knew or should have known that their unauthorized use of Underwood's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

388. Defendants' unauthorized use of Underwood's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

389. Defendants' wrongful conduct as described herein was willful.

390. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

391. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Underwood of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Underwood.

392. The method and manner in which Defendants used the image of Underwood further evinces that Defendants were aware of or consciously disregarded the fact that Underwood did not consent to Defendants' use of the image to advertise Defendants' businesses.

393. Defendants had caused irreparable harm to Underwood, her reputation and brand by attributing to Underwood the strip club lifestyle and activities at Polekatz.

394. Defendants' unauthorized use of Underwood's image, likeness and/or identity directly and proximately caused and continue to cause damage to Underwood in an amount to be determined at trial.

WHEREFORE, Underwood respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## UNDERWOOD COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

395. Underwood re-alleges paragraphs 1 – 21, 25, 32 - 57, and 91 – 101 above, and incorporates the same by reference as though fully set forth herein.

396. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Underwood from the conduct described herein

397. Defendants used Underwood's image in order to create the false impression with the public that Underwood either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

398. Thus, this was done in furtherance of Defendants' commercial benefit.

399. Underwood is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Underwood's images in magazines and online. By virtue of Underwood's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Underwood's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product

or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

400.    Both Underwood and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

401.    As such, an unauthorized use of Underwood's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Underwood. There is no doubt that Defendants' used Underwood's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Underwood's image and likeness was an existing intent to commercialize an interest in Underwood's image and likeness

402.    Defendants' use of Underwood's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Underwood's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Underwood, or sponsored, approved or associated with Underwood.

403.    Despite the fact that Defendants were at all times aware that Underwood neither worked at, nor endorsed their strip club, nevertheless, they used Underwood's image in order to mislead potential customers as to Underwood's employment at and/or affiliation with Polekatz.

404.    Defendants knew that their use of Underwood's image would cause consumer confusion as to Underwood's sponsorship and/or employment at Polekatz.

405.    Upon information and belief, Defendants' use of Underwood's image did in fact

cause consumer confusion as to Underwood's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

406.   As a direct and proximate result of Defendants' actions, Underwood has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Underwood's image, likeness and/or identity, or how Underwood's image, likeness and/or identity is being depicted by Defendants.

407.   Further, any failure, neglect or default by Defendants will reflect adversely on Underwood as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Underwood to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Underwood.

408.   Due to Polekatz's unauthorized use of Underwood's image, Underwood has been damaged in an amount to be determined at trial.

**WHEREFORE**, Underwood respectfully requests that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## <u>UNDERWOOD COUNT III</u>
### (**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity*)

409.   Underwood re-alleges paragraphs 1 – 21, 25, 32 - 57, and 91 – 101 above, and incorporates the same by reference as though fully set forth herein.

410.    Underwood has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

411.    Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Underwood without express written or oral consent to such use.

412.    As set forth herein, Defendants has violated Underwood's right to publicity by invading Underwood's privacy, misappropriating her likeness, and publishing on Polekatz social media outlets, the altered image as it appears in Exhibit D, likeness and/or identity of Underwood which made it appear as though Underwood was employed at Polekatz, or endorsed Polekatz strip club, or any Polekatz events or activities.

413.    Defendants' unauthorized use of Underwood's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

414.    Despite the clear language of IRPA and at all relevant times, Defendants published, printed, displayed and/or publicly used Underwood's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Polekatz and/or Polekatz's events and activities

415.    The respective social media outlets were designed to attract business and generate revenue for Polekatz.

416.   Upon information and belief, Defendants' use of Underwood's image, likeness and/or identity did in fact attract clientele and generate business for Polekatz.

417.   At all relevant times and at no point, did Defendants ever receive permission or consent, be it written or otherwise, to use Underwood's image, likeness and/or identity on the Polekatz social media outlets or for any other use or matter associated with Polekatz.

418.   Defendants took these actions without Underwood's permission, consent or authority, be it written or otherwise. In fact, Defendants never sought permission nor authority to use Underwood's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activities or for any other use.

419.   Underwood never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activity.

420.   Defendants was at all relevant times aware that they never received Underwood's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Polekatz.

421.   At no point did Defendants ever compensate Underwood for its use of her image, likeness, and/or identity.

422.   No applicable privilege or authorization exists for Defendants' use of Underwood's Image.

423.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Underwood's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

424.   Defendants caused irreparable harm to Underwood, her reputation and brand by attributing to Underwood the strip club lifestyle and activities at Polekatz.

425.   Defendants has also damaged Underwood as a direct and proximate result of their unauthorized use of Underwood's image, likeness and/or identity without compensating Underwood.

426.   Due to Defendants' violation of Underwood's rights of privacy and publicity under IRPA, Underwood has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

427.   In addition, Underwood hereby requests an Order permanently enjoining Defendants from violating Underwood's right to privacy and publicity.

428.   In addition, Underwood hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Underwood respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## UNDERWOOD COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq.* *False Light*)

429.   Underwood re-alleges paragraphs 1 – 21, 25, 32 - 57, and 91 – 101 above, and incorporates the same by reference as though fully set forth herein.

430.   Defendants published Underwood's image, likeness and/or identity on social media

outlets, among others, in order to promote, advertise and market Polekatz and Polekatz's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Polekatz, or endorsed Polekatz strip club before the public as a result of that publication.

431.   Defendants' unauthorized use of Underwood's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

432.   Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Underwood in a false light Defendants did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

433.   Defendants published Underwood's image, likeness and/or identity on Polekatz social media outlets in order to create the false impression that Underwood was either a stripper working at Polekatz, or endorsed Polekatz strip club.

434.   As such, Defendants' intent in publishing Underwood's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Polekatz.

435.   Defendants was at all times aware, Underwood never worked at any Polekatz strip club, never endorsed Polekatz, and never had any affiliation with Polekatz or any Polekatz events or activities.

436.   Defendants never sought permission or authority to use Underwood image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz events or activities.

437. Underwood never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz event or activity.

438. As a result of Defendants' unauthorized and misleading publication of Underwood's Image, Defendants has caused irreparable harm to Underwood, her reputation and brand by attributing to Underwood the strip club lifestyle and activities at Polekatz.

439. Defendants has also damaged Underwood as result of their unauthorized use of Underwood's image, likeness or identity without compensating Underwood. Defendants' conduct has been despicable and taken in conscious disregard of Underwood's rights.

440. As a result of Defendants' unauthorized and misleading use of Underwood's image, likeness or identity, Underwood has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Underwood respectfully requests that the Court issue a judgment against Defendants for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court

<u>**UNDERWOOD COUNT V**</u>
**(Negligence and *Respondeat Superior*)**

441. Underwood re-alleges paragraphs 1 – 21, 25, 32 - 57, and 91 – 101 above, and incorporates the same by reference as though fully set forth herein.

442. Upon information and belief, Defendants was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Polekatz Website and social media accounts.

443.   Said failure was the proximate cause of the harm Underwood suffered when her Image was published without her authorization.

444.   In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

445.   In addition, Defendants had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

446.   Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

447.   As a result of Defendants' negligence, Underwood has suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### *Plaintiff Eva Pepaj's Causes of Action against Defendants*
### *VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz*

### PEPAJ COUNT I
### Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

448.   Pepaj re-alleges paragraphs 1 – 21, 26, 32 - 57, and 102 – 112 above, and incorporates the same by reference as though fully set forth herein.

449.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Pepaj from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial

activities . . .".  15 U.S.C. §1125(a)(1)(B).

450.  Defendants used Pepaj's image, likeness and/or identity as described herein without authority in order to create the perception that Pepaj worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

451.  Defendants' use of Pepaj's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

452.  Defendants' unauthorized use of Pepaj's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Pepaj worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities and/or that Pepaj would participate in or appear at the specific events promoted in the advertisements.

453.  Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Pepaj worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

454.  Upon information and belief, Defendants' false advertising described above did, in

fact, deceive and/or cause consumer confusion as to whether Pepaj worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

455. Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

456. Defendants' unauthorized use of Pepaj's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

457. Defendants knew or should have known that their unauthorized use of Pepaj's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

458. Defendants' unauthorized use of Pepaj's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

459. Defendants' wrongful conduct as described herein was willful.

460. As such, the present case is an exceptional case warranting an award of reasonable

attorneys' fees pursuant to 15 U.S.C. § 1117.

461. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Pepaj of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pepaj.

462. The method and manner in which Defendants used the image of Pepaj further evinces that Defendants were aware of or consciously disregarded the fact that Pepaj did not consent to Defendants' use of the image to advertise Defendants' businesses.

463. Defendants had caused irreparable harm to Pepaj, her reputation and brand by attributing to Pepaj the strip club lifestyle and activities at Polekatz.

464. Defendants' unauthorized use of Pepaj's image, likeness and/or identity directly and proximately caused and continue to cause damage to Pepaj in an amount to be determined at trial.

**WHEREFORE**, Pepaj respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## PEPAJ COUNT II
### (**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement**)

465. Pepaj re-alleges paragraphs 1 – 21, 26, 32 - 57, and 102 – 112 above, and incorporates the same by reference as though fully set forth herein.

466. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Pepaj from the conduct described herein

467.   Defendants used Pepaj's image in order to create the false impression with the public that Pepaj either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

468.   Thus, this was done in furtherance of Defendants' commercial benefit.

469.   Pepaj is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Pepaj's images in magazines and online. By virtue of Pepaj's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Pepaj's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

470.   Both Pepaj and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

471.   As such, an unauthorized use of Pepaj's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Pepaj. There is no doubt that Defendants' used Pepaj's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Pepaj's image and likeness was an existing intent to commercialize an interest in Pepaj's  image and likeness

472.   Defendants' use of Pepaj's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived

Pepaj's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Pepaj, or sponsored, approved or associated with Pepaj.

473.   Despite the fact that Defendants were at all times aware that Pepaj neither worked at, nor endorsed their strip club, nevertheless, they used Pepaj's image in order to mislead potential customers as to Pepaj's employment at and/or affiliation with Polekatz.

474.   Defendants knew that their use of Pepaj's image would cause consumer confusion as to Pepaj's sponsorship and/or employment at Polekatz.

475.   Upon information and belief, Defendants' use of Pepaj's image did in fact cause consumer confusion as to Pepaj's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

476.   As a direct and proximate result of Defendants' actions, Pepaj has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Pepaj's image, likeness and/or identity, or how Pepaj's image, likeness and/or identity is being depicted by Defendants.

477.   Further, any failure, neglect or default by Defendants will reflect adversely on Pepaj as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Pepaj to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Pepaj.

478.   Due to Polekatz's unauthorized use of Pepaj's image, Pepaj has been damaged in an amount to be determined at trial.

   **WHEREFORE**, Pepaj respectfully requests that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost

profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**PEPAJ COUNT III**
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

479.   Pepaj re-alleges paragraphs 1 – 21, 26, 32 - 57, and 102 – 112 above, and incorporates the same by reference as though fully set forth herein.

480.   Pepaj has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

481.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Pepaj without express written or oral consent to such use.

482.   As set forth herein, Defendants has violated Pepaj's right to publicity by invading Pepaj's privacy, misappropriating her likeness, and publishing on Polekatz social media outlets, the altered image as it appears in Exhibit E, likeness and/or identity of Pepaj which made it appear as though Pepaj was employed at Polekatz, or endorsed Polekatz strip club, or any Polekatz events or activities.

483.   Defendants' unauthorized use of Pepaj's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook and Instagram account could view, access, and even download the image from the date it was first posted until present.

484.    Despite the clear language of IRPA and at all relevant times, Defendants published, printed, displayed and/or publicly used Pepaj's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Polekatz and/or Polekatz's events and activities

485.    The respective social media outlets were designed to attract business and generate revenue for Polekatz.

486.    Upon information and belief, Defendants' use of Pepaj's image, likeness and/or identity did in fact attract clientele and generate business for Polekatz.

487.    At all relevant times and at no point, did Defendants ever receive permission or consent, be it written or otherwise, to use Pepaj's image, likeness and/or identity on the Polekatz social media outlets or for any other use or matter associated with Polekatz.

488.    Defendants took these actions without Pepaj's permission, consent or authority, be it written or otherwise. In fact, Defendants never sought permission nor authority to use Pepaj's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activities or for any other use.

489.    Pepaj never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activity.

490.     Defendants was at all relevant times aware that they never received Pepaj's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Polekatz.

491.    At no point did Defendants ever compensate Pepaj for its use of her image, likeness, and/or identity.

492.    No applicable privilege or authorization exists for Defendants' use of Pepaj's Image.

493.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Pepaj's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

494.    Defendants caused irreparable harm to Pepaj, her reputation and brand by attributing to Pepaj the strip club lifestyle and activities at Polekatz.

495.    Defendants has also damaged Pepaj as a direct and proximate result of their unauthorized use of Pepaj's image, likeness and/or identity without compensating Pepaj.

496.    Due to Defendants' violation of Pepaj's rights of privacy and publicity under IRPA, Pepaj has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

497.    In addition, Pepaj hereby requests an Order permanently enjoining Defendants from violating Pepaj's right to privacy and publicity.

498.    In addition, Pepaj hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Pepaj respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited

to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

### PEPAJ COUNT IV
**(Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)**

499.   Pepaj re-alleges paragraphs 1 – 21, 26, 32 - 57, and 102 – 112 above, and incorporates the same by reference as though fully set forth herein.

500.   Defendants published Pepaj's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Polekatz and Polekatz's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Polekatz, or endorsed Polekatz strip club before the public as a result of that publication.

501.   Defendants' unauthorized use of Pepaj's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

502.   Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Pepaj in a false light Defendants did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

503.   Defendants published Pepaj's image, likeness and/or identity on Polekatz social media outlets in order to create the false impression that Pepaj was either a stripper working at Polekatz, or endorsed Polekatz strip club.

504.   As such, Defendants' intent in publishing Pepaj's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Polekatz.

505.   Defendants was at all times aware, Pepaj never worked at any Polekatz strip club, never endorsed Polekatz, and never had any affiliation with Polekatz or any Polekatz events or activities.

506.   Defendants never sought permission or authority to use Pepaj image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz events or activities.

507.   Pepaj never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz event or activity.

508.   As a result of Defendants' unauthorized and misleading publication of Pepaj's Image, Defendants has caused irreparable harm to Pepaj, her reputation and brand by attributing to Pepaj the strip club lifestyle and activities at Polekatz.

509.   Defendants has also damaged Pepaj as result of their unauthorized use of Pepaj's image, likeness or identity without compensating Pepaj.  Defendants' conduct has been despicable and taken in conscious disregard of Pepaj's rights.

510.   As a result of Defendants' unauthorized and misleading use of Pepaj's image, likeness or identity, Pepaj has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Pepaj respectfully requests that the Court issue a judgment against Defendants for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

**PEPAJ COUNT V**
**(Negligence and *Respondeat Superior*)**

511. Pepaj re-alleges paragraphs 1 – 21, 26, 32 - 57, and 102 – 112 above, and incorporates the same by reference as though fully set forth herein.

512. Upon information and belief, Defendants was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Polekatz Website and social media accounts

513. Said failure was the proximate cause of the harm Pepaj suffered when her Image was published without her authorization.

514. In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

515. In addition, Defendants had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

516. Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

517. As a result of Defendants' negligence, Pepaj has suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

*Plaintiff Jesse Golden's Causes of Action against Defendants*
*VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz*

### GOLDEN COUNT I
### Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

518.   Golden re-alleges paragraphs 1 – 21, 27, 32 - 57, and 113 – 123 above, and incorporates the same by reference as though fully set forth herein.

519.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Golden from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

520.   Defendants used Golden's image, likeness and/or identity as described herein without authority in order to create the perception that Golden worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

521.   Defendants' use of Golden's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

522.   Defendants' unauthorized use of Golden's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Golden worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's

events and activities and/or that Golden would participate in or appear at the specific events promoted in the advertisements.

523.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Golden worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

524.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Golden worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

525.    Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

526.   Defendants' unauthorized use of Golden's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

527.   Defendants knew or should have known that their unauthorized use of Golden's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

528.   Defendants' unauthorized use of Golden's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

529.   Defendants' wrongful conduct as described herein was willful.

530.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

531.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Golden of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Golden.

532.   The method and manner in which Defendants used the image of Golden further evinces that Defendants were aware of or consciously disregarded the fact that Golden did not consent to Defendants' use of the image to advertise Defendants' businesses.

533.   Defendants had caused irreparable harm to Golden, her reputation and brand by attributing to Golden the strip club lifestyle and activities at Polekatz.

534.   Defendants' unauthorized use of Golden's image, likeness and/or identity directly and proximately caused and continue to cause damage to Golden in an amount to be determined at trial.

   **WHEREFORE**, Golden respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits,

disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## GOLDEN COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

535.   Golden re-alleges paragraphs 1 – 21, 27, 32 - 57, and 113 – 123 above, and incorporates the same by reference as though fully set forth herein.

536.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Golden from the conduct described herein

537.   Defendants used Golden's image in order to create the false impression with the public that Golden either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

538.   Thus, this was done in furtherance of Defendants' commercial benefit.

539.   Golden is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Golden's images in magazines and online. By virtue of Golden's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Golden's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

540.   Both Golden and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the

same demographic consumer group.

541.    As such, an unauthorized use of Golden's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Golden. There is no doubt that Defendants' used Golden's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Golden's image and likeness was an existing intent to commercialize an interest in Golden's image and likeness

542.    Defendants' use of Golden's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Golden's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Golden, or sponsored, approved or associated with Golden.

543.    Despite the fact that Defendants were at all times aware that Golden neither worked at, nor endorsed their strip club, nevertheless, they used Golden's image in order to mislead potential customers as to Golden's employment at and/or affiliation with Polekatz.

544.    Defendants knew that their use of Golden's image would cause consumer confusion as to Golden's sponsorship and/or employment at Polekatz.

545.    Upon information and belief, Defendants' use of Golden's image did in fact cause consumer confusion as to Golden's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

546.    As a direct and proximate result of Defendants' actions, Golden has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Golden's image, likeness and/or identity, or how Golden's image, likeness and/or identity is being depicted by Defendants.

547.   Further, any failure, neglect or default by Defendants will reflect adversely on Golden as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Golden to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Golden.

548.   Due to Polekatz's unauthorized use of Golden's image, Golden has been damaged in an amount to be determined at trial.

**WHEREFORE**, Golden respectfully requests that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## GOLDEN COUNT III
### (**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity*)

549.   Golden re-alleges paragraphs 1 – 21, 27, 32 - 57, and 113 – 123 above, and incorporates the same by reference as though fully set forth herein.

550.   Golden has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

551.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Golden without express written or oral consent to such use.

552.   As set forth herein, Defendants has violated Golden's right to publicity by invading Golden's privacy, misappropriating her likeness, and publishing on Polekatz social media outlets,

the altered image as it appears in Exhibit F, likeness and/or identity of Golden which made it appear as though Golden was employed at Polekatz, or endorsed Polekatz strip club, or any Polekatz events or activities.

553.   Defendants' unauthorized use of Golden's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook and Instagram account could view, access, and even download the image from the date it was first posted until present.

554.   Despite the clear language of IRPA and at all relevant times, Defendants published, printed, displayed and/or publicly used Golden's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Polekatz and/or Polekatz's events and activities

555.   The respective social media outlets were designed to attract business and generate revenue for Polekatz.

556.   Upon information and belief, Defendants' use of Golden's image, likeness and/or identity did in fact attract clientele and generate business for Polekatz.

557.   At all relevant times and at no point, did Defendants ever receive permission or consent, be it written or otherwise, to use Golden's image, likeness and/or identity on the Polekatz social media outlets or for any other use or matter associated with Polekatz.

558.   Defendants took these actions without Golden's permission, consent or authority, be it written or otherwise. In fact, Defendants never sought permission nor authority to use

Golden's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activities or for any other use.

559.   Golden never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activity.

560.   Defendants was at all relevant times aware that they never received Golden's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Polekatz.

561.   At no point did Defendants ever compensate Golden for its use of her image, likeness, and/or identity.

562.   No applicable privilege or authorization exists for Defendants' use of Golden's Image.

563.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Golden's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

564.   Defendants caused irreparable harm to Golden, her reputation and brand by attributing to Golden the strip club lifestyle and activities at Polekatz.

565.   Defendants has also damaged Golden as a direct and proximate result of their unauthorized use of Golden's image, likeness and/or identity without compensating Golden.

566.   Due to Defendants' violation of Golden's rights of privacy and publicity under IRPA, Golden has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

567.   In addition, Golden hereby requests an Order permanently enjoining Defendants from violating Golden's right to privacy and publicity.

568.   In addition, Golden hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Golden respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## GOLDEN COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

569.   Golden re-alleges paragraphs 1 – 21, 27, 32 - 57, and 113 – 123 above, and incorporates the same by reference as though fully set forth herein.

570.   Defendants published Golden's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Polekatz and Polekatz's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Polekatz, or endorsed Polekatz strip club before the public as a result of that publication.

571.   Defendants' unauthorized use of Golden's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

572.   Without question, this "false light would be highly offensive to a reasonable

person" and, by portraying **Golden** in a false light Defendants did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

573. Defendants published Golden's image, likeness and/or identity on Polekatz social media outlets in order to create the false impression that Golden was either a stripper working at Polekatz, or endorsed Polekatz strip club.

574. As such, Defendants' intent in publishing Golden's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Polekatz.

575. Defendants was at all times aware, Golden never worked at any Polekatz strip club, never endorsed Polekatz, and never had any affiliation with Polekatz or any Polekatz events or activities.

576. Defendants never sought permission or authority to use Golden image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz events or activities.

577. Golden never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz event or activity.

578. As a result of Defendants' unauthorized and misleading publication of Golden's Image, Defendants has caused irreparable harm to Golden, her reputation and brand by attributing to Golden the strip club lifestyle and activities at Polekatz.

579. Defendants has also damaged Golden as result of their unauthorized use of Golden's image, likeness or identity without compensating Golden. Defendants' conduct has been despicable and taken in conscious disregard of Golden's rights.

580. As a result of Defendants' unauthorized and misleading use of Golden's image,

likeness or identity, Golden has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Golden respectfully requests that the Court issue a judgment against Defendants for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court

<u>**GOLDEN COUNT V**</u>
**(Negligence and *Respondeat Superior*)**

581.   Golden re-alleges paragraphs 1 – 21, 27, 32 - 57, and 113 – 123 above, and incorporates the same by reference as though fully set forth herein.

582.   Upon information and belief, Defendants was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Polekatz Website and social media accounts

583.   Said failure was the proximate cause of the harm Golden suffered when her Image was published without her authorization.

584.   In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

585.   In addition, Defendants had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

586.   Defendants violated said duty by its negligent hiring, screening, retaining,

supervising, and/or training of its employees and agents.

587.   As a result of Defendants' negligence, Golden has suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### *Plaintiff Lina Posada's Causes of Action against Defendants*
### *VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz*

### POSADA COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

588.   Posada re-alleges paragraphs 1 – 21, 28, 25 - 50, and 124 – 134 above, and incorporates the same by reference as though fully set forth herein.

589.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Posada from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

590.   Defendants used Posada's image, likeness and/or identity as described herein without authority in order to create the perception that Posada worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

591.   Defendants'  use of Posada's image, likeness and/or identity to advertise, promote and market Defendants'  businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

592.   Defendants' unauthorized use of Posada's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Posada worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities and/or that Posada would participate in or appear at the specific events promoted in the advertisements.

593.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Posada worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

594.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Posada worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

595.    Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

596.    Defendants' unauthorized use of Posada's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

597.    Defendants knew or should have known that their unauthorized use of Posada's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

598.    Defendants' unauthorized use of Posada's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

599.    Defendants' wrongful conduct as described herein was willful.

600.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

601.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Posada of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada.

602.    The method and manner in which Defendants used the image of Posada further evinces that Defendants were aware of or consciously disregarded the fact that Posada did not consent to Defendants' use of the image to advertise Defendants' businesses.

603.    Defendants had caused irreparable harm to Posada, her reputation and brand by attributing to Posada the strip club lifestyle and activities at Polekatz.

604.    Defendants' unauthorized use of Posada's image, likeness and/or identity directly and proximately caused and continue to cause damage to Posada in an amount to be determined at trial.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## POSADA COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

605.    Posada re-alleges paragraphs 1 – 21, 28, 25 – 50, and 124 – 134 above, and incorporates the same by reference as though fully set forth herein.

606.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Posada from the conduct described herein.

607.    Defendants used Posada's image in order to create the false impression with the public that Posada either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

608.    Thus, this was done in furtherance of Defendants' commercial benefit.

609.    Posada is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Posada's images in magazines and online. By virtue of Posada's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning.

Posada's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

610.    Both Posada and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

611.    As such, an unauthorized use of Posada's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Posada. There is no doubt that Defendants' used Posada's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Posada's image and likeness was an existing intent to commercialize an interest in Posada's image and likeness

612.    Defendants' use of Posada's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Posada's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Posada, or sponsored, approved or associated with Posada.

613.    Despite the fact that Defendants were at all times aware that Posada neither worked at, nor endorsed their strip club, nevertheless, they used Posada's image in order to mislead potential customers as to Posada's employment at and/or affiliation with Polekatz.

614.    Defendants knew that their use of Posada's image would cause consumer confusion as to Posada's sponsorship and/or employment at Polekatz.

615.   Upon information and belief, Defendants' use of Posada's image did in fact cause consumer confusion as to Posada's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

616.   As a direct and proximate result of Defendants' actions, Posada has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Posada's image, likeness and/or identity, or how Posada's image, likeness and/or identity is being depicted by Defendants.

617.   Further, any failure, neglect or default by Defendants will reflect adversely on Posada as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Posada to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Posada.

618.   Due to Polekatz's unauthorized use of Posada's image, Posada has been damaged in an amount to be determined at trial.

**WHEREFORE**, Posada respectfully requests that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## <u>POSADA COUNT III</u>
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

619.   Posada re-alleges paragraphs 1 – 21, 28, 25 - 50, and 124 – 134 above, and incorporates the same by reference as though fully set forth herein.

620.  Posada has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

621.  Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Posada without express written or oral consent to such use.

622.  As set forth herein, Defendants has violated Posada's right to publicity by invading Posada's privacy, misappropriating her likeness, and publishing on Polekatz social media outlets, the altered image as it appears in Exhibit G, likeness and/or identity of Posada which made it appear as though Posada was employed at Polekatz, or endorsed Polekatz strip club, or any Polekatz events or activities.

623.  Defendants' unauthorized use of Posada's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

624.  Despite the clear language of IRPA and at all relevant times, Defendants published, printed, displayed and/or publicly used Posada's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Polekatz and/or Polekatz's events and activities.

625.  The respective social media outlets were designed to attract business and generate revenue for Polekatz.

626. Upon information and belief, Defendants' use of Posada's image, likeness and/or identity did in fact attract clientele and generate business for Polekatz.

627. At all relevant times and at no point, did Defendants ever receive permission or consent, be it written or otherwise, to use Posada's image, likeness and/or identity on the Polekatz social media outlets or for any other use or matter associated with Polekatz.

628. Defendants took these actions without Posada's permission, consent or authority, be it written or otherwise. In fact, Defendants never sought permission nor authority to use Posada's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activities or for any other use.

629. Posada never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activity.

630. Defendants was at all relevant times aware that they never received Posada's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Polekatz.

631. At no point did Defendants ever compensate Posada for its use of her image, likeness, and/or identity.

632. No applicable privilege or authorization exists for Defendants' use of Posada's Image.

633. Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Posada's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

634. Defendants caused irreparable harm to Posada, her reputation and brand by attributing to Posada the strip club lifestyle and activities at Polekatz.

635. Defendants has also damaged Posada as a direct and proximate result of their unauthorized use of Posada's image, likeness and/or identity without compensating Posada.

636. Due to Defendants' violation of Posada's rights of privacy and publicity under IRPA, Posada has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

637. In addition, Posada hereby requests an Order permanently enjoining Defendants from violating Posada's right to privacy and publicity.

638. In addition, Posada hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## POSADA COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

639. Posada re-alleges paragraphs 1 – 21, 28, 25 - 50, and 124 – 134 above, and incorporates the same by reference as though fully set forth herein.

640. Defendants published Posada's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Polekatz and Polekatz's events

and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Polekatz, or endorsed Polekatz strip club before the public as a result of that publication.

641.   Defendants' unauthorized use of Posada's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

642.   Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Posada in a false light Defendants did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

643.   Defendants published Posada's image, likeness and/or identity on Polekatz social media outlets in order to create the false impression that Posada was either a stripper working at Polekatz, or endorsed Polekatz strip club.

644.   As such, Defendants' intent in publishing Posada's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Polekatz.

645.   Defendants was at all times aware, Posada never worked at any Polekatz strip club, never endorsed Polekatz, and never had any affiliation with Polekatz or any Polekatz events or activities.

646.   Defendants never sought permission or authority to use Posada's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz events or activities.

647. Posada never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz event or activity.

648. As a result of Defendants' unauthorized and misleading publication of Posada's Image, Defendants has caused irreparable harm to Posada, her reputation and brand by attributing to Posada the strip club lifestyle and activities at Polekatz.

649. Defendants has also damaged Posada as result of their unauthorized use of Posada's image, likeness or identity without compensating Posada. Defendants' conduct has been despicable and taken in conscious disregard of Posada's rights.

650. As a result of Defendants' unauthorized and misleading use of Posada's image, likeness or identity, Posada has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment against Defendants for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## POSADA COUNT V
### (Negligence and *Respondeat Superior*)

651. Posada re-alleges paragraphs 1 – 21, 28, 25 - 50, and 124 – 134 above, and incorporates the same by reference as though fully set forth herein.

652. Upon information and belief, Defendants was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Polekatz Website and social media accounts.

653.   Said failure was the proximate cause of the harm Posada suffered when her Image was published without her authorization.

654.   In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

655.   In addition, Defendants had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

656.   Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

657.   As a result of Defendants' negligence, Posada has suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### *Plaintiff Tiffany Toth Gray's Causes of Action against Defendants*
### *VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz*

### GRAY COUNT I
### Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

658.   Gray re-alleges paragraphs 1 – 21, 29, 32 - 57, and 135 – 145 above, and incorporates the same by reference as though fully set forth herein.

659.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Gray from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial

activities . . .".  15 U.S.C. §1125(a)(1)(B).

660.  Defendants used Gray's image, likeness and/or identity as described herein without authority in order to create the perception that Gray worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

661.  Defendants' use of Gray's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

662.  Defendants' unauthorized use of Gray's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Gray worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities and/or that Gray would participate in or appear at the specific events promoted in the advertisements.

663.  Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Gray worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

664.  Upon information and belief, Defendants' false advertising described above did, in

fact, deceive and/or cause consumer confusion as to whether Gray worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

665. Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

666. Defendants' unauthorized use of Gray's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

667. Defendants knew or should have known that their unauthorized use of Gray's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

668. Defendants' unauthorized use of Gray's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

669. Defendants' wrongful conduct as described herein was willful.

670. As such, the present case is an exceptional case warranting an award of reasonable

attorneys' fees pursuant to 15 U.S.C. § 1117.

671.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Gray of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gray.

672.   The method and manner in which Defendants used the image of Gray further evinces that Defendants were aware of or consciously disregarded the fact that Gray did not consent to Defendants' use of the image to advertise Defendants' businesses.

673.   Defendants had caused irreparable harm to Gray, her reputation and brand by attributing to Gray the strip club lifestyle and activities at Polekatz.

674.   Defendants' unauthorized use of Gray's image, likeness and/or identity directly and proximately caused and continue to cause damage to Gray in an amount to be determined at trial.

       **WHEREFORE**, Gray respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## <u>GRAY COUNT II</u>
### (**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement**)

675.   Gray re-alleges paragraphs 1 – 21, 29, 32 - 57, and 135 – 145 above, and incorporates the same by reference as though fully set forth herein.

676.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Gray from the conduct described herein

677.   Defendants used Gray's image in order to create the false impression with the public that Gray either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

678.  Thus, this was done in furtherance of Defendants' commercial benefit.

679.  Gray is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Gray's images in magazines and online. By virtue of Gray's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Gray's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

680.  Both Gray and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

681.  As such, an unauthorized use of Gray's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Gray. There is no doubt that Defendants' used Gray's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Gray's image and likeness was an existing intent to commercialize an interest in Gray's image and likeness

682.  Defendants' use of Gray's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Gray's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Gray, or sponsored, approved or associated with Gray.

683.  Despite the fact that Defendants were at all times aware that Gray neither worked

at, nor endorsed their strip club, nevertheless, they used Gray's image in order to mislead potential customers as to Gray's employment at and/or affiliation with Polekatz.

684. Defendants knew that their use of Gray's image would cause consumer confusion as to Gray's sponsorship and/or employment at Polekatz.

685. Upon information and belief, Defendants' use of Gray's image did in fact cause consumer confusion as to Gray's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

686. As a direct and proximate result of Defendants' actions, Gray has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Gray's image, likeness and/or identity, or how Gray's image, likeness and/or identity is being depicted by Defendants.

687. Further, any failure, neglect or default by Defendants will reflect adversely on Gray as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Gray to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Gray.

688. Due to Polekatz's unauthorized use of Gray's image, Gray has been damaged in an amount to be determined at trial.

**WHEREFORE**, Gray respectfully requests that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**GRAY COUNT III**
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity*)**

689.   Gray re-alleges paragraphs 1 – 21, 29, 32 - 57, and 135 – 145 above, and incorporates the same by reference as though fully set forth herein.

690.   Gray has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity.*

691.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Gray without express written or oral consent to such use.

692.   As set forth herein, Defendants has violated Gray's right to publicity by invading Gray's privacy, misappropriating her likeness, and publishing on Polekatz social media outlets, the altered image as it appears in Exhibit H, likeness and/or identity of Gray which made it appear as though Gray was employed at Polekatz, or endorsed Polekatz strip club, or any Polekatz events or activities.

693.   Defendants' unauthorized use of Gray's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

694.   Despite the clear language of IRPA and at all relevant times, Defendants published, printed, displayed and/or publicly used Gray's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Polekatz and/or Polekatz's events and activities

695.   The respective social media outlets were designed to attract business and generate revenue for Polekatz.

696.   Upon information and belief, Defendants' use of Gray's image, likeness and/or identity did in fact attract clientele and generate business for Polekatz.

697.   At all relevant times and at no point, did Defendants ever receive permission or consent, be it written or otherwise, to use Gray's image, likeness and/or identity on the Polekatz social media outlets or for any other use or matter associated with Polekatz.

698.   Defendants took these actions without Gray's permission, consent or authority, be it written or otherwise. In fact, Defendants never sought permission nor authority to use Gray's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activities or for any other use.

699.   Gray never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activity.

700.    Defendants was at all relevant times aware that they never received Gray's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Polekatz.

701.   At no point did Defendants ever compensate Gray for its use of her image, likeness, and/or identity.

702.   No applicable privilege or authorization exists for Defendants' use of Gray's Image.

703.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Gray's image, likeness or identity without

her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

704.    Defendants caused irreparable harm to Gray, her reputation and brand by attributing to Gray the strip club lifestyle and activities at Polekatz.

705.    Defendants has also damaged Gray as a direct and proximate result of their unauthorized use of Gray's image, likeness and/or identity without compensating Gray.

706.    Due to Defendants' violation of Gray's rights of privacy and publicity under IRPA, Gray has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

707.    In addition, Gray hereby requests an Order permanently enjoining Defendants from violating Gray's right to privacy and publicity.

708.    In addition, Gray hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Gray respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

### GRAY COUNT IV
**(Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)**

709.    Gray re-alleges paragraphs 1 – 21, 29, 32 - 57, and 135 – 145 above, and incorporates the same by reference as though fully set forth herein.

710.    Defendants published Gray's image, likeness and/or identity on social media

outlets, among others, in order to promote, advertise and market Polekatz and Polekatz's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Polekatz, or endorsed Polekatz strip club before the public as a result of that publication.

711.   Defendants' unauthorized use of Gray's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

712.   Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Gray in a false light Defendants did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

713.   Defendants published Gray's image, likeness and/or identity on Polekatz social media outlets in order to create the false impression that Gray was either a stripper working at Polekatz, or endorsed Polekatz strip club.

714.   As such, Defendants' intent in publishing Gray's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Polekatz.

715.   Defendants was at all times aware, Gray never worked at any Polekatz strip club, never endorsed Polekatz, and never had any affiliation with Polekatz or any Polekatz events or activities.

716.   Defendants never sought permission or authority to use Gray image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz events or activities.

717.   Gray never consented to, permitted, assigned, licensed, or otherwise agreed to

Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz event or activity.

718.   As a result of Defendants' unauthorized and misleading publication of Gray's Image, Defendants has caused irreparable harm to Gray, her reputation and brand by attributing to Gray the strip club lifestyle and activities at Polekatz.

719.   Defendants has also damaged Gray as result of their unauthorized use of Gray's image, likeness or identity without compensating Gray.  Defendants' conduct has been despicable and taken in conscious disregard of Gray's rights.

720.   As a result of Defendants' unauthorized and misleading use of Gray's image, likeness or identity, Gray has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Gray respectfully requests that the Court issue a judgment against Defendants for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court

### GRAY COUNT V
### (Negligence and *Respondeat Superior*)

721.   Gray re-alleges paragraphs 1 – 21, 29, 32 - 57, and 135 – 145 above, and incorporates the same by reference as though fully set forth herein.

722.   Upon information and belief, Defendants was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Polekatz Website and social media accounts

723.   Said failure was the proximate cause of the harm Gray suffered when her Image

was published without her authorization.

724. In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

725. In addition, Defendants had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

726. Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

727. As a result of Defendants' negligence, Gray has suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### *Plaintiff Jaclyn Swedberg's Causes of Action against Defendants VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz*

### SWEDBERG COUNT I
### Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

728. Swedberg re-alleges paragraphs 1 – 21, 30, 32 - 57, and 146 – 156 above, and incorporates the same by reference as though fully set forth herein.

729. Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Swedberg from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

730.   Defendants used Swedberg's image, likeness and/or identity as described herein without authority in order to create the perception that Swedberg worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

731.   Defendants' use of Swedberg's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

732.   Defendants' unauthorized use of Swedberg's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Swedberg worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities and/or that Swedberg would participate in or appear at the specific events promoted in the advertisements.

733.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Swedberg worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

734.   Upon information and belief, Defendants' false advertising described above did, in

fact, deceive and/or cause consumer confusion as to whether Swedberg worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

735.    Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

736.    Defendants' unauthorized use of Swedberg's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

737.    Defendants knew or should have known that their unauthorized use of Swedberg's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

738.    Defendants' unauthorized use of Swedberg's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

739.    Defendants' wrongful conduct as described herein was willful.

740.    As such, the present case is an exceptional case warranting an award of reasonable

attorneys' fees pursuant to 15 U.S.C. § 1117.

741.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Swedberg of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Swedberg.

742.    The method and manner in which Defendants used the image of Swedberg further evinces that Defendants were aware of or consciously disregarded the fact that Swedberg did not consent to Defendants' use of the image to advertise Defendants' businesses.

743.    Defendants had caused irreparable harm to Swedberg, her reputation and brand by attributing to Swedberg the strip club lifestyle and activities at Polekatz.

744.    Defendants' unauthorized use of Swedberg's image, likeness and/or identity directly and proximately caused and continue to cause damage to Swedberg in an amount to be determined at trial.

    **WHEREFORE**, Swedberg respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### SWEDBERG COUNT II
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)**

745.    Swedberg re-alleges paragraphs 1 – 21, 30, 32 - 57, and 146 – 156 above, and incorporates the same by reference as though fully set forth herein.

746.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Swedberg from the conduct described herein

747.    Defendants used Swedberg's image in order to create the false impression with the public that Swedberg either worked at Defendants' strip club, or endorsed Defendants' businesses.

This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

748.   Thus, this was done in furtherance of Defendants' commercial benefit.

749.   Swedberg is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Swedberg's images in magazines and online. By virtue of Swedberg's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Swedberg's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

750.   Both Swedberg and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

751.   As such, an unauthorized use of Swedberg's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Swedberg. There is no doubt that Defendants' used Swedberg's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Swedberg's image and likeness was an existing intent to commercialize an interest in Swedberg's  image and likeness

752.   Defendants' use of Swedberg's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived

Swedberg's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Swedberg, or sponsored, approved or associated with Swedberg.

753. Despite the fact that Defendants were at all times aware that Swedberg neither worked at, nor endorsed their strip club, nevertheless, they used Swedberg's image in order to mislead potential customers as to Swedberg's employment at and/or affiliation with Polekatz.

754. Defendants knew that their use of Swedberg's image would cause consumer confusion as to Swedberg's sponsorship and/or employment at Polekatz.

755. Upon information and belief, Defendants' use of Swedberg's image did in fact cause consumer confusion as to Swedberg's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

756. As a direct and proximate result of Defendants' actions, Swedberg has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Swedberg's image, likeness and/or identity, or how Swedberg's image, likeness and/or identity is being depicted by Defendants.

757. Further, any failure, neglect or default by Defendants will reflect adversely on Swedberg as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Swedberg to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Swedberg.

758. Due to Polekatz's unauthorized use of Swedberg's image, Swedberg has been damaged in an amount to be determined at trial.

**WHEREFORE**, Swedberg respectfully requests that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost

profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SWEDBERG COUNT III
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity*)

759.     Swedberg re-alleges paragraphs 1 – 21, 30, 32 - 57, and 146 – 156 above, and incorporates the same by reference as though fully set forth herein.

760.     Swedberg has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity*.

761.     Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Swedberg without express written or oral consent to such use.

762.     As set forth herein, Defendants has violated Swedberg's right to publicity by invading Swedberg's privacy, misappropriating her likeness, and publishing on Polekatz social media outlets, the altered image as it appears in Exhibit I, likeness and/or identity of Swedberg which made it appear as though Swedberg was employed at Polekatz, or endorsed Polekatz strip club, or any Polekatz events or activities.

763.     Defendants' unauthorized use of Swedberg's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Instagram account could view, access, and even download the image from the date it was first posted until present.

764.    Despite the clear language of IRPA and at all relevant times, Defendants published, printed, displayed and/or publicly used Swedberg's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Polekatz and/or Polekatz's events and activities

765.    The respective social media outlets were designed to attract business and generate revenue for Polekatz.

766.    Upon information and belief, Defendants' use of Swedberg's image, likeness and/or identity did in fact attract clientele and generate business for Polekatz.

767.    At all relevant times and at no point, did Defendants ever receive permission or consent, be it written or otherwise, to use Swedberg's image, likeness and/or identity on the Polekatz social media outlets or for any other use or matter associated with Polekatz.

768.    Defendants took these actions without Swedberg's permission, consent or authority, be it written or otherwise. In fact, Defendants never sought permission nor authority to use Swedberg's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activities or for any other use.

769.    Swedberg never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activity.

770.    Defendants was at all relevant times aware that they never received Swedberg's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Polekatz.

771. At no point did Defendants ever compensate Swedberg for its use of her image, likeness, and/or identity.

772. No applicable privilege or authorization exists for Defendants' use of Swedberg's Image.

773. Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Swedberg's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

774. Defendants caused irreparable harm to Swedberg, her reputation and brand by attributing to Swedberg the strip club lifestyle and activities at Polekatz.

775. Defendants has also damaged Swedberg as a direct and proximate result of their unauthorized use of Swedberg's image, likeness and/or identity without compensating Swedberg.

776. Due to Defendants' violation of Swedberg's rights of privacy and publicity under IRPA, Swedberg has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

777. In addition, Swedberg hereby requests an Order permanently enjoining Defendants from violating Swedberg's right to privacy and publicity.

778. In addition, Swedberg hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Swedberg respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited

to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## SWEDBERG COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

779. Swedberg re-alleges paragraphs 1 – 21, 30, 32 - 57, and 146 – 156 above, and incorporates the same by reference as though fully set forth herein.

780. Defendants published Swedberg's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Polekatz and Polekatz's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Polekatz, or endorsed Polekatz strip club before the public as a result of that publication.

781. Defendants' unauthorized use of Swedberg's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visting Defendants' Instagram account could view, access, and even download the image from the date it was first posted until present.

782. Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Swedberg in a false light Defendants did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

783. Defendants published Swedberg's image, likeness and/or identity on Polekatz social media outlets in order to create the false impression that Swedberg was either a stripper working at Polekatz, or endorsed Polekatz strip club.

784. As such, Defendants' intent in publishing Swedberg's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with

Polekatz.

785.   Defendants was at all times aware, Swedberg never worked at any Polekatz strip club, never endorsed Polekatz, and never had any affiliation with Polekatz or any Polekatz events or activities.

786.   Defendants never sought permission or authority to use Swedberg image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz events or activities.

787.   Swedberg never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz event or activity.

788.   As a result of Defendants' unauthorized and misleading publication of Swedberg's Image, Defendants has caused irreparable harm to Swedberg, her reputation and brand by attributing to Swedberg the strip club lifestyle and activities at Polekatz.

789.   Defendants has also damaged Swedberg as result of their unauthorized use of Swedberg's image, likeness or identity without compensating Swedberg.  Defendants' conduct has been despicable and taken in conscious disregard of Swedberg's rights.

790.   As a result of Defendants' unauthorized and misleading use of Swedberg's image, likeness or identity, Swedberg has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**WHEREFORE**, Swedberg respectfully requests that the Court issue a judgment against Defendants for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including

Defendants' profits and other relief deemed just and proper by this Court

## **SWEDBERG COUNT V**
### **(Negligence and *Respondeat Superior*)**

791.   Swedberg re-alleges paragraphs 1 – 21, 30, 32 - 57, and 146 – 156 above, and incorporates the same by reference as though fully set forth herein.

792.   Upon information and belief, Defendants was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Polekatz Website and social media accounts

793.   Said failure was the proximate cause of the harm Swedberg suffered when her Image was published without her authorization.

794.   In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

795.   In addition, Defendants had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

796.   Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

797.   As a result of Defendants' negligence, Swedberg has suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

***Plaintiff Sarah Stage's Causes of Action against Defendants***
***VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz***

### STAGE COUNT I
### Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

798.    Stage re-alleges paragraphs 1 – 21, 31, 32 - 57, and 157 – 167 above, and incorporates the same by reference as though fully set forth herein.

799.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Stage from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

800.    Defendants used Stage's image, likeness and/or identity as described herein without authority in order to create the perception that Stage worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

801.    Defendants' use of Stage's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

802.    Defendants' unauthorized use of Stage's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Stage worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's

events and activities and/or that Stage would participate in or appear at the specific events promoted in the advertisements.

803. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Stage worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

804. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Stage worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

805. Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

806. Defendants' unauthorized use of Stage's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

807. Defendants knew or should have known that their unauthorized use of Stage's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

808. Defendants' unauthorized use of Stage's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

809. Defendants' wrongful conduct as described herein was willful.

810. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

811. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Stage of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Stage.

812. The method and manner in which Defendants used the image of Stage further evinces that Defendants were aware of or consciously disregarded the fact that Stage did not consent to Defendants' use of the image to advertise Defendants' businesses.

813. Defendants had caused irreparable harm to Stage, her reputation and brand by attributing to Stage the strip club lifestyle and activities at Polekatz.

814. Defendants' unauthorized use of Stage's image, likeness and/or identity directly and proximately caused and continue to cause damage to Stage in an amount to be determined at trial.

WHEREFORE, Stage respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement

of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## STAGE COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

815.    Stage re-alleges paragraphs 1 – 21, 31, 32 - 57, and 157 – 167 above, and incorporates the same by reference as though fully set forth herein.

816.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Stage from the conduct described herein

817.    Defendants used Stage's image in order to create the false impression with the public that Stage either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

818.    Thus, this was done in furtherance of Defendants' commercial benefit.

819.    Stage is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Stage's images in magazines and online. By virtue of Stage's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Stage's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

820.    Both Stage and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

821. As such, an unauthorized use of Stage's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Stage. There is no doubt that Defendants' used Stage's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Stage's image and likeness was an existing intent to commercialize an interest in Stage's image and likeness

822. Defendants' use of Stage's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Stage's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Stage, or sponsored, approved or associated with Stage.

823. Despite the fact that Defendants were at all times aware that Stage neither worked at, nor endorsed their strip club, nevertheless, they used Stage's image in order to mislead potential customers as to Stage's employment at and/or affiliation with Polekatz.

824. Defendants knew that their use of Stage's image would cause consumer confusion as to Stage's sponsorship and/or employment at Polekatz.

825. Upon information and belief, Defendants' use of Stage's image did in fact cause consumer confusion as to Stage's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

826. As a direct and proximate result of Defendants' actions, Stage has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Stage's image, likeness and/or identity, or how Stage's image, likeness and/or identity is being depicted by Defendants.

827. Further, any failure, neglect or default by Defendants will reflect adversely on Stage as the believed source of origin, sponsorship, approval or association thereof, hampering efforts

by Stage to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Stage.

828.   Due to Polekatz's unauthorized use of Stage's image, Stage has been damaged in an amount to be determined at trial.

**WHEREFORE**, Stage respectfully requests that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**STAGE COUNT III**</u>
(**Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10** *et seq. Right to Publicity*)

829.   Stage re-alleges paragraphs 1 – 21, 31, 32 - 57, and 157 – 167 above, and incorporates the same by reference as though fully set forth herein.

830.   Stage has a right of publicity under IRPA, 765 ILCS 1075/10 *et seq. Right to Publicity.*

831.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Stage without express written or oral consent to such use.

832.   As set forth herein, Defendants has violated Stage's right to publicity by invading Stage's privacy, misappropriating her likeness, and publishing on Polekatz social media outlets, the altered image as it appears in Exhibit J, likeness and/or identity of Stage which made it appear

as though Stage was employed at Polekatz, or endorsed Polekatz strip club, or any Polekatz events or activities.

833.    Defendants' unauthorized use of Stage's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Instagram account could view, access, and even download the image from the date it was first posted until present.

834.    Despite the clear language of IRPA and at all relevant times, Defendants published, printed, displayed and/or publicly used Stage's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing Polekatz and/or Polekatz's events and activities

835.    The respective social media outlets were designed to attract business and generate revenue for Polekatz.

836.    Upon information and belief, Defendants' use of Stage's image, likeness and/or identity did in fact attract clientele and generate business for Polekatz.

837.    At all relevant times and at no point, did Defendants ever receive permission or consent, be it written or otherwise, to use Stage's image, likeness and/or identity on the Polekatz social media outlets or for any other use or matter associated with Polekatz.

838.    Defendants took these actions without Stage's permission, consent or authority, be it written or otherwise. In fact, Defendants never sought permission nor authority to use Stage's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activities or for any other use.

839.  Stage never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz's event or activity.

840.  Defendants was at all relevant times aware that they never received Stage's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Polekatz.

841.  At no point did Defendants ever compensate Stage for its use of her image, likeness, and/or identity.

842.  No applicable privilege or authorization exists for Defendants' use of Stage's Image.

843.  Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Stage's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

844.  Defendants caused irreparable harm to Stage, her reputation and brand by attributing to Stage the strip club lifestyle and activities at Polekatz.

845.  Defendants has also damaged Stage as a direct and proximate result of their unauthorized use of Stage's image, likeness and/or identity without compensating Stage.

846.  Due to Defendants' violation of Stage's rights of privacy and publicity under IRPA, Stage has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

847.  In addition, Stage hereby requests an Order permanently enjoining Defendants from violating Stage's right to privacy and publicity.

848.   In addition, Stage hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of her statutory rights to privacy and publicity.

WHEREFORE, Stage respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## STAGE COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

849.   Stage re-alleges paragraphs 1 – 21, 31, 32 - 57, and 157 – 167 above, and incorporates the same by reference as though fully set forth herein.

850.   Defendants published Stage's image, likeness and/or identity on social media outlets, among others, in order to promote, advertise and market Polekatz and Polekatz's events and activities, causing her to be placed in a false light as a stripper or as someone who was affiliated with Polekatz, or endorsed Polekatz strip club before the public as a result of that publication.

851.   Defendants' unauthorized use of Stage's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visting Defendants' Instagram account could view, access, and even download the image from the date it was first posted until present.

852.   Without question, this "false light would be highly offensive to a reasonable person" and, by portraying Stage in a false light Defendants did so with actual malice, with knowledge of or reckless disregard for the falsity of the statements.

144

853. Defendants published Stage's image, likeness and/or identity on Polekatz social media outlets in order to create the false impression that Stage was either a stripper working at Polekatz, or endorsed Polekatz strip club.

854. As such, Defendants' intent in publishing Stage's image, likeness and/or identity was to mislead the public and cast her in a false light with respect to her affiliation with Polekatz.

855. Defendants was at all times aware, Stage never worked at any Polekatz strip club, never endorsed Polekatz, and never had any affiliation with Polekatz or any Polekatz events or activities.

856. Defendants never sought permission or authority to use Stage image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz events or activities.

857. Stage never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz event or activity.

858. As a result of Defendants' unauthorized and misleading publication of Stage's Image, Defendants has caused irreparable harm to Stage, her reputation and brand by attributing to Stage the strip club lifestyle and activities at Polekatz.

859. Defendants has also damaged Stage as result of their unauthorized use of Stage's image, likeness or identity without compensating Stage. Defendants' conduct has been despicable and taken in conscious disregard of Stage's rights.

860. As a result of Defendants' unauthorized and misleading use of Stage's image, likeness or identity, Stage has been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and

exemplary damages.

**WHEREFORE**, Stage respectfully requests that the Court issue a judgment against Defendants for all remedies available under law, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court

**STAGE COUNT V**
**(Negligence and *Respondeat Superior*)**

861. Stage re-alleges paragraphs 1 – 21, 31, 32 - 57, and 157 – 167 above, and incorporates the same by reference as though fully set forth herein.

862. Upon information and belief, Defendants was negligent in its failure to promulgate policies and procedures concerning the misappropriation of the Image of models that were used on the Polekatz Website and social media accounts

863. Said failure was the proximate cause of the harm Stage suffered when her Image was published without her authorization.

864. In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.

865. In addition, Defendants had a duty to refrain from appropriating the Image of those with whom it had not contracted, and had not paid.

866. Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

867. As a result of Defendants' negligence, Stage has suffered damages in an amount to

be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## DEMAND FOR JURY TRIAL

868.    Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, each Plaintiff individually respectfully prays that this Court grant Judgment to each Plaintiff, respectively, and against Defendants, jointly and severally, in an amount to be determined at trial aggregated across all Plaintiffs and as follows:

1.    For damages as provided in 15 U.S.C. § 1125(a);

2.    For attorneys' fees and costs of suit, as provided for in 15 U.S.C. § 1125(a);

3.    For an order permanently enjoining Defendants from using Plaintiff's Images to promote the Club;

4.    For actual damages according to proof;

5.    For general damages according to proof;

6.    For special damages according to proof;

7.    For consequential damages according to proof;

8.    For reasonable attorneys' fees and costs as permitted by law;

9.    For prejudgment interest and royalties at the legal rate;

6.    For such other relief as this Court deems just and proper; and

7.    For punitive damages, in an amount to be determined at trial.

Cook County, Illinois
Dated:  October 29, 2018

Respectfully Submitted,

**THE CASAS LAW FIRM, P.C.**

By: */s/Joseph N. Casas*
Illinois Bar No. 6274674
California Bar No. 225800
401 North Michigan Avenue
Suite 1200
Chicago, Illinois 60611
Email:joseph@casaslawfirm.com

- and -

John V. Golaszewski, Esq.
(*pro hac vice forthcoming*)
THE CASAS LAW FIRM, P.C.
1740 Broadway, 15th Floor
New York, New York 10019
Email: john@casaslawfirm.com

*Attorneys for Plaintiffs*