**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | | |
|---|---|---|
| JESSICA HINTON A/K/A JESSA HINTON, CORA SKINNER, DESSIE MITCHESON, SARA UNDERWOOD, EVA PEPAJ, JESSE GOLDEN, LINA POSADA, TIFFANY TOTH GRAY, JACLYN SWEDBERG, and SARAH STAGE | ) ) ) ) ) ) ) | Case No. 1:18-cv-07221 |
| | ) | **ANSWER AND AFFIRMATIVE** |
| Plaintiffs, | ) | **DEFENSES TO COMPLAINT** |
| v. | ) ) | **Jury Trial Demanded** |
| | ) | |
| VONCH, LLC d/b/a POLEKATZ CHICAGO GENTLEMEN'S CLUB; and POLEKATZ GENTLEMEN'S CLUB, LLC d/b/a POLEKATZ CHICAGO GENTLEMEN'S CLUB | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS'**
**AMENDED COMPLAINT**

NOW COME Defendants VONCH, LLC d/b/a POLEKATZ CHICAGO GENTLEMEN'S CLUB ("Vonch") and POLEKATZ GENTLEMEN'S CLUB, LLC d/b/a POLEKATZ CHICAGO GENTLEMEN'S CLUB (collectively, "Polekatz" or the "Defendants"), by and through their attorneys Lavelle Law, Ltd., and for their Answer and Affirmative Defenses to Plaintiffs' Complaint, state as follows:

**ANSWER**

**BACKGROUND**

1.     The following is an action for damages and injunctive relief relating to Defendants' misappropriation and unauthorized publication of the image and likeness of Plaintiff Models, who are professional models, in order to promote its strip club, Polekatz Chicago Gentlemen's Club ("Polekatz" or, the "Defendants").

**ANSWER:** No answer is required in response to this Paragraph because it does not include any factual allegations and instead, is a summary of Plaintiffs' claims. To the extent an answer is required, Defendants deny the allegations of this Paragraph.

2.      As detailed below, Defendants unauthorized use of Plaintiff Models' images, photos, and likenesses (collectively, "Image") constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1)(A) and (B), which prohibits false or misleading use of a person's image for purposes of advertising; b) violation of the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity* and False Light, which protects a person's right to privacy and publicity; c) defamation, and; d) supplants various common law torts.

**ANSWER:** Defendants deny the allegations of this Paragraph.

3.      Defendants has pirated the images, likeness, and/or identity of each Plaintiff Model for purely self-serving commercial purposes – to advertise, promote, and market Defendants' own business interests on websites and social media accounts owned, operated, hosted, or controlled by Defendants.

**ANSWER:** Defendants contracted with Third Party Defendant Icon Marketing, LLC d/b/a Ultra Blue Studios, Inc. ("Icon") for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement to Defendants for advertising purposes. Defendants deny the remaining allegations of this Paragraph.

4.      Defendants is an unapologetic, chronic, and habitual infringer.

**ANSWER:** Defendants deny the allegations of this Paragraph.

5.      Defendants never sought consent or authority to use any of the Plaintiffs' images for any purpose.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not obtain the direct consent or authority of Plaintiffs as it purchased the advertisements from Icon. Defendants have insufficient knowledge as to whether Plaintiffs consented to or contracted with Icon or any other entity for use of the images.

6.      No Plaintiff ever agreed, nor would any Plaintiff have agreed, to Defendants' use of her image, likeness, and/or identity.

**ANSWER:** Defendants have insufficient information with which to respond to this Paragraph and accordingly, Defendants deny the allegations herein.

7.      Had each Plaintiff been afforded the opportunity to consider whether to consent and release rights as to the use of any image, each Plaintiff would have promptly and unequivocally declined.

**ANSWER:** Defendants have insufficient information with which to respond to this Paragraph and accordingly, Defendants deny the allegations herein.

8.      Defendants' conduct is therefore misleading and deceptive by falsely and fraudulently representing that each Plaintiff Model depicted in the misappropriated images is somehow affiliated with Defendants; has contracted to perform at and/or participate in events at Polekatz; has been hired to promote, advertise, market or endorse its events and other activities offered at Polekatz; and/or that each Plaintiff depicted in the promotional materials and social media and/or Internet posts has attended or will attend each event and has participated in or intends to participate in the activities advertised.

**ANSWER:** Defendants deny the allegations of this Paragraph.

9.       Defendants' conduct is also injurious to each Plaintiff Model.

 **ANSWER:** Defendants deny the allegations of this Paragraph.

10.      Defendants circumvented the typical arms-length negotiation process entirely and intentionally pirated the images. In doing so, Defendants has utterly deprived each Plaintiff the right and ability to say "no."

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes. Defendants deny the allegations of this Paragraph.

11.      Defendants has prevented each Plaintiff from engaging in arms-length negotiations regarding the terms and conditions of use of their images, including the term of any release, remuneration per image or use, or the ability to decline the business opportunity entirely. In short, Defendants deprived each Plaintiff the ability to protect her image, brand, and reputation.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes. Defendants deny the allegations of this Paragraph.

12.      In the end, Defendants gained an economic windfall by using the images of professional and successful models for Defendants' own commercial purposes, luring and enticing patrons worldwide to view the images and visit Polekatz, without having to compensate the models for such usage. Plaintiffs, however, sustained injury to their images, brands, and marketability by shear affiliation with Polekatz, a strip Polekatzperated by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

13.     Having operated a business in the strip club industry, Defendants is well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendants' commercial benefit.

**ANSWER:** Defendants admit that they operate a business in the strip club industry and that it has a business relationship with Icon wherein Icon created and provided the advertisements complained of by Plaintiffs to Polekatz in exchange for monetary consideration for the sole purpose of Polekatz using the images for advertising. Defendants deny any wrongdoing and Defendants deny the remaining allegations in this Paragraph.

14.     Much more than merely a misuse in connection with an innocuous brand or event, Defendants embarrassed Plaintiffs by associating their images with Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

15.     In addition to the actual, punitive, and exemplary damages set forth below, Plaintiff Models likewise seek an Order from this Court permanently enjoining Defendants from using the images, likeness, and/or identity of each Plaintiff Model to promote Polekatz, via any medium.

**ANSWER:** Defendants deny the allegations of this Paragraph and Defendants deny that Plaintiffs are entitled to the relief sought.

## JURISDICTION AND VENUE

16.     This Court has original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiffs have each individually stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1)(A)(B). This Court has supplemental jurisdiction over the Illinois state law claims alleged herein pursuant to 28 U.S.C. § 1367.

**ANSWER:** Defendants admit that this Court has jurisdiction over the claims in this action, and deny any liability under the statutes cited in this Paragraph.

17.     The Court has personal jurisdiction over Defendants based on its contact with the State of Illinois, including but not limited to Defendants registration to conduct business in Illinois, its physical location and principal place of business in Illinois, and upon information and belief, committed, facilitated, assisted, encouraged or conspired to commit the actions giving rise to the harm and damages alleged herein in the State of Illinois.

**ANSWER:** Defendants admit this Court has jurisdiction over them, that they are registered to conduct business in Illinois and that their physical location and principal place of business is located in Illinois. Defendants deny the remaining allegations in this Paragraph.

18.     According to publicly available records, Defendants VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC are both Limited Liability Companies organized and existing pursuant to the laws of the State of Illinois doing business as a strip club under the name "Polekatz Chicago Gentlemen's Club" in Bridgeview, Illinois.

**ANSWER:** Defendants admit the allegations of this Paragraph.

19.     Venue is proper in the United States District Court for the Northern District of Illinois because Cook County is the principal place of business for Defendants. Venue is also proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims occurred in the Northern District of Illinois.

**ANSWER:** Defendants admit the allegations of this Paragraph.

20.     All parties have minimum contacts with Cook County, a significant portion of the alleged causes of action arose and accrued in Cook County, Illinois, and the center of gravity for

a significant portion of all relevant events alleged in this Complaint is predominately located in Cook County.

**ANSWER:** Defendants admit the allegations of this Paragraph.

## PARTIES

**A. Plaintiffs**

21.    Given the multitude of violations harming the Plaintiff models, in the interest of judicial economy, Plaintiffs, through counsel, respectfully consolidate all actionable violations presently known into this single collective action (with distinct claims per each model) on behalf of the following models.

**ANSWER:** This Paragraph does not contain any factual allegations, and accordingly, no answer is required in response. To the extent an answer is required, Defendants deny the allegations in this Paragraph.

22.    Plaintiff JESSICA HINTON a/k/a JESSA HINTON ("Hinton") is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, California.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

23.    Plaintiff CORA SKINNER ("Skinner") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles County, California.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

24.    Plaintiff DESSIE MITCHESON ("Mitcheson") is, and at all times relevant to this action was, a professional model and a resident of Orange County, California.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

25.     Plaintiff SARA UNDERWOOD ("Underwood") is, and at all times relevant to this action was, a professional model and a resident of Multnomah County, Oregon.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

26.     Plaintiff EVA PEPAJ ("Pepaj") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles County, California.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

27.     Plaintiff JESSE GOLDEN ("Golden") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles County, California.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

28.     Plaintiff LINA POSADA ("Posada") is, and at all times relevant to this action was, a professional model and a resident of San Bernardino County, California.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

29.     Plaintiff TIFFANY TOTH GRAY ("Gray") is, and at all times relevant to this action was, a professional model and a resident of Orange County, California.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

30. Plaintiff JACLYN SWEDBERG ("Swedberg") is, and at all times relevant to this action was, a professional model and a resident of San Bernardino County, California.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

31. Plaintiff SARAH STAGE ("Stage") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles County, California.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

**B. Defendants**

32. According to publicly available records, Defendants VONCH, LLC d/b/a Polekatz Chicago Gentlemen's Club; and POLEKATZ GENTLEMEN'S CLUB, LLC d/b/a Polekatz Chicago Gentlemen's Club, are both Limited Liability Companies organized under the laws of the State of Illinois, and owns and operates a strip club under the name Polekatz located at 7337 W. 100th Pl, Bridgeview, Illinois 60455.

**ANSWER:** Defendants admit the allegations of this Paragraph.

33. Polekatz holds, and at all times relevant has held, itself out as an operator of a strip club that engages in the business of entertaining its patrons with alcohol, fully nude dancing, and full friction.

**ANSWER:** Defendants object because this Paragraph contains ambiguous language and accordingly, no response is required. To the extent a response is required, Defendants admit that they operate a strip club and serve alcohol.

34. Polekatz jointly owns and/or operates http://www.polekatzchicago.net, as well as other social media accounts and websites, such as https://www.facebook.com/polekatzchicago/,

Instagram with username "@polekatzchicago", and Twitter with username "@Polekatz" through which they advertise their business, events, and parties. For many of these events, images of one or more of the models were used to market and promote the events.

**ANSWER:** Defendants admit the allegations of this Paragraph.

35.     Upon information and belief, Polekatz coordinated their promotional, Internet, and social media activities through active and dynamic use of their Facebook and Instagram accounts and website.

**ANSWER:** Defendants admit that they use the Internet and social media, including Facebook and Instagram to promote their business. For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

## FACTUAL ALLEGATIONS

36.     As set forth immediately below, Plaintiff Models were extremely well-known professional models who earned a livelihood modeling and selling images to companies, magazines, and individuals for the purpose of advertising, endorsing, or promoting products and services.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

37.     Plaintiff Models' careers in the modeling industry placed a high degree of value on good will and reputation, which was critical in order to maximize earning potential, book modeling contracts, and establish individual brands. In furtherance of establishing, and maintaining their

brands, Plaintiff Models were necessarily selective concerning the companies, and brands, for which they chose to model.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

38.    Being vigilant and proactive about protecting one's reputation is therefore of paramount importance.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

39.    Plaintiff Models are professional models who earn a living by promoting their image and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on reputation and brand for modeling, acting, hosting, and other opportunities.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

40.    Plaintiff Models careers in the modeling, acting, and/or private enterprise has value stemming from the goodwill and reputation each has built, all of which is critical to establishing an individual brand, being selected for modeling contracts, and maximizing earnings.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

41.    Each Plaintiff Model has worked to establish herself as reliable, reputable, and professional.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

42.     Each Plaintiff Model must necessarily be vigilant in protecting her "brand" from harm, taint, or other diminution. In furtherance of establishing, and maintaining her brands, each Plaintiff Model was necessarily selective concerning the companies and brands for which she chose to model.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

43.     Any improper or unauthorized use of an image, likeness, or identity could substantially injure the career and career opportunities of each Plaintiff Model.

**ANSWER:** Defendants deny the allegations of this Paragraph.

44.     In the modeling industry, models such as the Plaintiffs typically do not have a single employer, but rather work on an independent contractor basis for different agents or entities. Each Plaintiff Model is a responsible professional in the ordinary course. Each Plaintiff Model seeks to control the use and dissemination of her image and, thus, actively participates in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

45.     A model's vetting and selection of a professional engagement involves a multitiered assessment, requiring the model to:

a.      determine whether the individual or entity seeking a license and release of a model's image, likeness, or identity is reputable, has reputable products or services, and, through affiliation, would enhance or harm a model's stature or reputation;

b.    use this reputational information in negotiating compensation which typically turns on the work a model is hired to do, the time involved, travel, and how her image is going to be used (among other variables);

c.    protect her reputation and livelihood by carefully and expressly defining the terms and conditions of use; and

d.    reduce and memorialize the negotiated deal into an integrated, written agreement which defines the parties' relationship. Endorsing, promoting, advertising, or marketing the "wrong" product, service, or corporate venture, or working in or being affiliated with a disreputable industry can severely impact a model's career by limiting or foreclosing future modeling or brand endorsement opportunities. Conversely, association with high-end companies, products, or magazines can enhance and amplify a model's earning potential and career opportunities by making a model more sought after and desirable.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, including all sub-parts, and accordingly deny the same.

46.    For these reasons, *even if* a model chose to jeopardize her career for a compromising engagement – such as appearing in an advertisement for a strip club – the fee she would charge would necessarily far exceed the fee typically charged for more mainstream and reputable work.

**ANSWER:** Defendants have insufficient information with which to respond to this Paragraph and accordingly, Defendants deny the allegations herein.

47.    Both VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC operate a Chicago-based strip Club under the name Polekatz where it engages in the business of selling

alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

**ANSWER:** Defendants admit the allegations of this Paragraph.

48.     Polekatz does this for its own commercial and financial benefit.

**ANSWER:** Defendants admit the allegations of this Paragraph.

49.     As set forth below, each Plaintiff Model's image, likeness, and/or identity has been misappropriated by or at the direction of Defendants. Defendants' conduct creates the false and misleading appearance and impression that each Plaintiff either works for Defendants, has appeared and participated, or will appear and participate in activities or events at Polekatz, and/or has agreed and consented to advertise, promote, market, or endorse Polekatz or Polekatz's events or activities.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes. Defendants deny the remaining allegations of this Paragraph.

50.     Plaintiff Models have personal and proprietary interest in their right to privacy and publicity arising out of their persona and likeness contained within their images. Plaintiff Models' interest is separate and apart from any copyright claim that may or may not exist to the photographs that encompass Plaintiff Models' images. Plaintiff Models' persona, in the form of their likeness, is not copyrightable and their rights of publicity are independent of any copyright. *See e.g. Downing v. Abercrombie Fitch*, 265 F. 3d 994, 1005 (9th Cir. 2001).

**ANSWER:** To the extent this Paragraph calls for a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations of this Paragraph.

51.     To the extent any copyright (or some other "right" for that matter) may exist for photograph depicting Plaintiff Models' images, Plaintiff Models allege that Defendants has totally and completely destroyed any such copyright by morphing, editing, or otherwise altering the original photographs.

**ANSWER:** To the extent this Paragraph calls for a legal conclusion, no response is required. To the extent a response is required, Defendants deny the allegations of this Paragraph.

52.     The manner in which Defendants used Plaintiff Models' images suggests to the public that Plaintiff Models are promoting or otherwise endorsing Defendants' establishment with the goal of increasing Polekatz's visibility, driving clientele to attend the advertised events, and to otherwise increase revenue and drive profits.

**ANSWER:** Defendants deny the allegations of this Paragraph.

53.     Polekatz has used, advertised, created, printed, and distributed the image of Plaintiff, as further described and identified above, to create the false impression with potential clientele that Plaintiff Models either worked at or endorsed Polekatz.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes. Defendants deny the remaining allegations of this Paragraph.

54.     Polekatz used Plaintiff Models' image, and created the false impression that they worked at or endorsed Polekatz in order to receive certain benefits, including but not limited to: monetary payments; increased promotional opportunities, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

**ANSWER:** Defendants deny the allegations of this Paragraph.

55.     As Polekatz was at all times aware, at no point have Plaintiff Models ever been affiliated with or employed by Polekatz, and at no point have Plaintiff Models ever endorsed Polekatz.

**ANSWER:** Defendants have insufficient knowledge as to whether Plaintiffs ever "endorsed" Polekatz or whether Plaintiffs have ever been "affiliated" with Polekatz. Defendants admit that Plaintiffs have never been employed by Polekatz.

56.     All of Polekatz's activities, including its misappropriation of Plaintiff Models' images, and publication of them, were done without the knowledge or consent of Plaintiff Models, and Polekatz did not compensate Plaintiff Models for its use of their images. As such, Plaintiff Models have never received any benefit for Polekatz's use of their images. Defendants used Plaintiff Models' images without their consent, and without providing remuneration, in order to permanently deprive the Plaintiff Models of their right to determine the use their images.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images which are attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold Exhibits A-J to Defendants for advertising purposes. Defendants have insufficient knowledge with which to respond to the remaining allegations as they relate to whether Plaintiffs received compensation, whether Plaintiffs received any benefit or whether Plaintiffs provided their consent to Icon or any other third party to use the images. Defendants deny the remaining allegations of this Paragraph.

57.     Upon information and belief, Defendants has taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiff Models.

**ANSWER:** Defendants deny the allegations of this Paragraph.

### *Plaintiff Jessica Hinton a/k/a Jessa Hinton*

58.    Hinton is, and at all times relevant to this action was, a model, actress, and host.
Hinton was first introduced to the entertainment industry at age 14 when she was discovered by a
talent manager at a wedding. She immediately booked three national TV commercials and guest
appeared on *Baywatch* and *7th Heaven* by the age of 16. At the age of 18, Hinton began working
runway shows and doing print campaigns. In 2010, she became the face of the Palm's Hotel and
Casino's 2010 ad campaign. Hinton then expanded to TV personality roles having hosted for
*Victory Poker*, and as an interview personality for the *Top Ranking Boxing* interviewing the likes
of Manny Pacquiao and Shane Mosley. In 2011, Hinton was selected as the *Playboy* Playmate of
the Month for July 2011, becoming one of the most popular Playmates of that year. Hinton then
became the centerpiece of an advertisement campaign for Milwaukee's Best Beer in conjunction
with *Playboy* Enterprises.

   **ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this
Paragraph, and accordingly deny the same.

59.    In all instances of commercial marketing and promotion of her image, likeness, or
identity by third parties, Hinton negotiated and expressly granted authority for such use pursuant
to agreed-upon terms and conditions and for agreed-upon compensation.

   **ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this
Paragraph, and accordingly deny the same.

60.    Hinton's image, likeness, and/or identity are depicted in at least one photograph,
enclosed as **Exhibit A** to the Complaint, which was posted on social media on at least two
occasions (and has remained publically posted since those initial posting, constituting a continuous
and ongoing harm) to the create the false perception that Hinton has consented or agreed to

promote, advertise, market, and/or endorse Polekatz. Specifically, on or about November 20, 2016, Hinton's image (posed far left with a red and black lingerie piece) was uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club. The Image of Hinton was used to advertise Polekatz's "WINTER WONDERLAND VIP EVENT". On or about December 2, 2016, the same image of Hinton was uploaded to Polekatz's Facebook page again. The use of the image falsely implied that Hinton represents Polekatz's strip club and that she authorized Polekatz to use her image for promotional and marketing purposes. The image was used without the consent of Hinton and was manipulated to intentionally give the impression that Hinton is a spokesperson for Polekatz, working at Polekatz, and/or that she endores Polekatz.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit A. Icon created and sold Exhibit A to Defendants for advertising purposes. Defendants admit that the image of Hinton described in this Paragraph was posted on Polekatz's Facebook page. Defendants deny the remaining allegations in this Paragraph. Answering further, Exhibit A speaks for itself.

61. Hinton's image, likeness, and/or identity in **Exhibit A** is being used as advertising, and on social media.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit A. Icon created and sold Exhibit A to Defendants for advertising purposes. Further stating, Exhibit A speaks for itself. Defendants have insufficient knowledge with which to respond to the allegations in this Paragraph to the extent that they reference any other image besides Exhibit A or any other posting besides the above-referenced Facebook posting.

62.     Defendants' unauthorized use of Hinton's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present. During the entire timeframe that Defendants' used Hinton's image and likeness, they did so unlawfully, without authorization, and consent, and Hinton suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit A. Icon created and sold Exhibit A to Defendants for advertising purposes. Defendants admit that they posted the image described above on their Facebook page. Defendants deny the remaining allegations of this Paragraph.

63.     Hinton has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz or any Polekatz event.

**ANSWER:** Defendants admit that they did not directly hire or enter into a contract with Hinton for advertising. However, Defendants have insufficient information with which to respond to the allegations relating to whether Hinton has ever been hired or entered into a contract with Icon or any other entity to use the images.

64.     Defendants never sought permission or authority to use Hinton's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit A. Icon created and

sold Exhibit A to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Hinton to use the images. However, Defendants have insufficient information with which to respond to the allegations relating to whether Hinton gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

65.     Hinton never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit A. Icon created and sold Exhibit A to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Hinton to use the image. However, Defendants have insufficient information with which to respond to the allegations relating to whether Hinton gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

66.     Defendants neither offered nor paid any remuneration to Hinton for the unauthorized use of her image, likeness, or identity.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit A. Icon created and sold Exhibit A to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly compensate or offer to compensate Plaintiffs and that Defendants compensated Icon for the images. Defendants have insufficient information with which to respond to the allegations

relating to whether Plaintiffs were compensated for the use of said image. Defendants deny the remaining allegations of this Paragraph.

67.     Defendants' use of Hinton's image, likeness, and/or identity in connection with Polekatz impugns Hinton's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to Hinton's feelings about the advertisements and Defendants deny the remaining allegations of this Paragraph.

68.     Defendants' improper use of Hinton's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Hinton's image in their market activities and business. In doing so, Defendants have further damaged Hinton.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to the utilization or misappropriation of Hinton's images by other persons or entities and accordingly, Defendants deny the same. Defendants further deny that it improperly used Hinton's images and that instead, Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit A. Icon created and sold Exhibit A to Defendants for advertising purposes. Defendants further deny that Hinton has suffered further damage related thereto.

### *Plaintiff Cora Skinner*

69.     Skinner is, and at all times relevant to this action was, a model, and actress. Her TV show appearances include "The Tonight Show with Jay Leno", "Rules of Engagement", "QVC", "Shark", "Las Vegas 'White Christmas'", and "CSI: Miami". Skinner has modeled for name brands such as, Skechers, Norstrom, Fredricks of Hollywood, Tecate, Skky Vodka, and Muscle &

Fitness to name a few. She has even appeared on music videos such as Def Leppard's "Nine Lives".

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

70.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Skinner negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

71.     Skinner's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit B** to the Complaint, which was posted on social media on at least two occasions (and has remained publically posted since those initial posting, constituting a continuous and ongoing harm) to the create the false perception that Skinner has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about November 20, 2016, Skinner's image (posed far right with a red lingerie piece) was uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club. The Image of Skinner was used to advertise Polekatz's "WINTER WONDERLAND VIP EVENT". On or about December 2, 2016, the same image of Skinner was uploaded to Polekatz's Facebook page again. The use of the image falsely implied that Skinner represents Polekatz's strip club and that she authorized Polekatz to use her image for promotional and marketing purposes. The image was used without the consent of Skinner and was manipulated to intentionally give the impression that Skinner is a spokesperson for Polekatz, working at Polekatz, and/or that she endores Polekatz.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit B. Icon created and sold Exhibit B to Defendants for advertising purposes. Defendants admit that the image of Skinner described in this Paragraph was posted on Polekatz's Facebook page. Defendants deny the remaining allegations in this Paragraph. Answering further, Exhibit B speaks for itself.

72. Skinner's image, likeness, and/or identity in **Exhibit B** is being used as advertising, and on social media.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit B. Icon created and sold Exhibit B to Defendants for advertising purposes. Further stating, Exhibit B speaks for itself. Defendants have insufficient knowledge with which to respond to the allegations in this Paragraph to the extent that they reference any other image besides Exhibit B or any other posting besides the above-referenced Facebook posting.

73. Defendants' unauthorized use of Skinner's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present. During the entire timeframe that Defendants' used Skinner's image and likeness, they did so unlawfully, without authorization, and consent, and Skinner suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit B. Icon created and sold Exhibit B to Defendants for advertising purposes. Defendants admit that they posted the image

described above on their Facebook page. Defendants deny the remaining allegations of this Paragraph.

74.     Skinner has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz or any Polekatz event.

**ANSWER:** Defendants admit that they did not directly hire or enter into a contract with Skinner for advertising. However, Defendants have insufficient information with which to respond to the allegations relating to whether Skinner has ever been hired or entered into a contract with Icon or any other entity to use the images.

75.     Defendants never sought permission or authority to use Skinner's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit B. Icon created and sold Exhibit B to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Skinner to use the images. However, Defendants have insufficient information with which to respond to the allegations relating to whether Skinner gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

76.     Skinner never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit B. Icon created and

sold Exhibit B to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Skinner to use the image. However, Defendants have insufficient information with which to respond to the allegations relating to whether Skinner gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

77.     Defendants neither offered nor paid any remuneration to Skinner for the unauthorized use of her image, likeness, or identity.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit B. Icon created and sold Exhibit B to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly compensate or offer to compensate Plaintiffs and that Defendants compensated Icon for the images. Defendants have insufficient information with which to respond to the allegations relating to whether Plaintiffs were compensated for the use of said image. Defendants deny the remaining allegations of this Paragraph.

78.     Defendants' use of Skinner's image, likeness, and/or identity in connection with Polekatz impugns Skinner's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to Skinner's feelings about the advertisements and Defendants deny the remaining allegations of this Paragraph.

79.     Defendants' improper use of Skinner's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Skinner's image in their market activities and business. In doing so, Defendants have further damaged Skinner.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to the utilization or misappropriation of Skinner's images by other persons or entities and accordingly, Defendants deny the same. Defendants further deny that it improperly used Skinner's images and that instead, Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit B. Icon created and sold Exhibit B to Defendants for advertising purposes. Defendants further deny that Skinner has suffered further damage related thereto.

### *Plaintiff Dessie Mitcheson*

80. Mitcheson is, and at all times relevant to this action was, a professional model, and actress. Mitcheson competed in Miss Pennsylvania USA at age 18 and placed in the Top 10. Mitcheson soon became the face of Playboy Intimates, and then became the face of MGM Grand Las Vegas and Miss Pennsylvania Intercontinental. Mitcheson was also named *Maxim* magazine's "Hometown Hottie". That same year, Mitcheson was #100 on *Maxim's* Hot 100 List. Mitcheson has graced the pages of multiple issues of *Maxim*, including a three page spread, two center folds, and landed the cover for the May 2014 *Navy* issue. Mitcheson was featured as the main Tecate Beer ring girl in the biggest Pay-Per-View event in history, the Mayweather v. Pacquiao fight, which gave her the worldwide visibility with over 100 million viewers. This triggered a huge demand for her services and increased her daily quote substantially. Mitcheson has also been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes, and J. Valentine. Mitcheson was also the face of an International video game.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

81.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Mitcheson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

82.     Mitcheson's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit C** to the Complaint, which was posted on social media on at least one occasion (and has remained publically posted since those initial posting, constituting a continuous and ongoing harm) to the create the false perception that Mitcheson has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about October 29, 2015, Mitcheson's image (posed center in a sexy, devil's costume) was uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club. The Image of Mitcheson was used to advertise Polekatz's "HALLOWEEN PARTY". The use of the image falsely implied that Mitcheson represents Polekatz's strip club and that she authorized Polekatz to use her image for promotional and marketing purposes. The image was used without the consent of Mitcheson and was manipulated to intentionally give the impression that Mitcheson is a spokesperson for Polekatz, working at Polekatz, and/or that she endores Polekatz.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit C. Icon created and sold Exhibit C to Defendants for advertising purposes. Defendants admit that the image of Mitcheson described in this Paragraph was posted on Polekatz's Facebook page. Defendants deny the remaining allegations in this Paragraph. Answering further, Exhibit C speaks for itself.

83.     Mitcheson's image, likeness, and/or identity in **Exhibit C** is being used as advertising, and on social media.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit C. Icon created and sold Exhibit C to Defendants for advertising purposes. Further stating, Exhibit C speaks for itself. Defendants have insufficient knowledge with which to respond to the allegations in this Paragraph to the extent that they reference any other image besides Exhibit C or any other posting besides the above-referenced Facebook posting.

84.     Defendants' unauthorized use of Mitcheson's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present. During the entire timeframe that Defendants' used Mitcheson's image and likeness, they did so unlawfully, without authorization, and consent, and Mitcheson suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit C. Icon created and sold Exhibit C to Defendants for advertising purposes. Defendants admit that they posted the image described above on their Facebook page. Defendants deny the remaining allegations of this Paragraph.

85.     Mitcheson has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz or any Polekatz event.

**ANSWER:** Defendants admit that they did not directly hire or enter into a contract with Mitcheson for advertising. However, Defendants have insufficient information with which to respond to the allegations relating to whether Mitcheson has ever been hired or entered into a contract with Icon or any other entity to use the images.

86.    Defendants never sought permission or authority to use Mitcheson's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit C. Icon created and sold Exhibit C to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Mitcheson to use the images. However, Defendants have insufficient information with which to respond to the allegations relating to whether Mitcheson gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

87.    Mitcheson never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit C. Icon created and sold Exhibit C to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Mitcheson to use the image. However, Defendants have insufficient information with which to respond to the allegations relating to whether Mitcheson gave

permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

88.     Defendants neither offered nor paid any remuneration to Mitcheson for the unauthorized use of her image, likeness, or identity.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit C. Icon created and sold Exhibit C to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly compensate or offer to compensate Plaintiffs and that Defendants compensated Icon for the images. Defendants have insufficient information with which to respond to the allegations relating to whether Plaintiffs were compensated for the use of said image. Defendants deny the remaining allegations of this Paragraph.

89.     Defendants' use of Mitcheson's image, likeness, and/or identity in connection with Polekatz impugns Mitcheson's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to Mitcheson's feelings about the advertisements and Defendants deny the remaining allegations of this Paragraph.

90.     Defendants' improper use of Mitcheson's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Mitcheson's image in their market activities and business. In doing so, Defendants have further damaged Mitcheson.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to the utilization or misappropriation of Mitcheson's images by other persons

or entities and accordingly, Defendants deny the same. Defendants further deny that it improperly used Mitcheson's images and that instead, Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit C. Icon created and sold Exhibit C to Defendants for advertising purposes. Defendants further deny that Mitcheson has suffered further damage related theretoo use the image. Defendant further deny that Mitcheson has suffered further damage related thereto.

### *Plaintiff Sara Underwood*

91.     Underwood is, and at all times relevant to this action was, a professional model, and actress. Underwood first appeared in *Playboy* in the pictorial "The Girls of the Pac 10" in the October 2005 issue (she also graced the cover). Underwood was the Playmate of the Month in the July, 2006 issue of the famous men's magazine. She was named Playmate of the Year in 2007. She has been featured in many *Playboy* videos, and not only has appeared as herself in the films *The House Bunny* (2008) and *Miss March* (2009), but also on episodes of such reality TV series as Kendra (2009), *The Girls Next Door* (2005) and *Bridget's Sexiest Beaches* (2009). Ms. Underwood has also worked on television as a continuity announcer for the Blackbelt TV cable network and co-hosted hundreds of episodes of G4's "Attack of the Show" for a couple of years. She has over 5 million social media followers.[1]

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, including the footnote, and accordingly deny the same.

92.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Underwood negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

---

[1] In the world of modeling, the number of online "followers" or "likes" is a strong factor in determining the earning capacity of a model.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

93. Underwood's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit D** to the Complaint, which was posted on social media on at least one occasion (and has remained publically posted since those initial posting, constituting a continuous and ongoing harm) to the create the false perception that Underwood has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about October 29, 2015, Underwood's image (posed far right in a sexy, camoflauge costume) was uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club. The Image of Underwood was used to advertise Polekatz's "HALLOWEEN PARTY". The use of the image falsely implied that Underwood represents Polekatz's strip club and that she authorized Polekatz to use her image for promotional and marketing purposes. The image was used without the consent of Underwood and was manipulated to intentionally give the impression that Underwood is a spokesperson for Polekatz, working at Polekatz, and/or that she endores Polekatz.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit D. Icon created and sold Exhibit D to Defendants for advertising purposes. Defendants admit that the image of Underwood described in this Paragraph was posted on Polekatz's Facebook page. Defendants deny the remaining allegations in this Paragraph. Answering further, Exhibit D speaks for itself.

94. Underwood's image, likeness, and/or identity in **Exhibit D** is being used as advertising, and on social media.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit D. Icon created and

sold Exhibit D to Defendants for advertising purposes. Further stating, Exhibit D speaks for itself. Defendants have insufficient knowledge with which to respond to the allegations in this Paragraph to the extent that they reference any other image besides Exhibit D or any other posting besides the above-referenced Facebook posting.

95.     Defendants' unauthorized use of Underwood's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present. During the entire timeframe that Defendants' used Underwood's image and likeness, they did so unlawfully, without authorization, and consent, and Underwood suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit D. Icon created and sold Exhibit D to Defendants for advertising purposes. Defendants admit that they posted the image described above on their Facebook page. Defendants deny the remaining allegations of this Paragraph.

96.     Underwood has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz or any Polekatz event.

**ANSWER:** Defendants admit that they did not directly hire or enter into a contract with Underwood for advertising. However, Defendants have insufficient information with which to respond to the allegations relating to whether Underwood has ever been hired or entered into a contract with Icon or any other entity to use the images.

97.     Defendants never sought permission or authority to use Underwood's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit D. Icon created and sold Exhibit D to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Underwood to use the images. However, Defendants have insufficient information with which to respond to the allegations relating to whether Underwood gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

98.     Underwood never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit D. Icon created and sold Exhibit D to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Underwood to use the image. However, Defendants have insufficient information with which to respond to the allegations relating to whether Underwood gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

99.     Defendants neither offered nor paid any remuneration to Underwood for the unauthorized use of her image, likeness, or identity.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit D. Icon created and sold Exhibit D to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly compensate or offer to compensate Plaintiffs and that Defendants compensated Icon for the images. Defendants have insufficient information with which to respond to the allegations relating to whether Plaintiffs were compensated for the use of said image. Defendants deny the remaining allegations of this Paragraph.

100. Defendants' use of Underwood's image, likeness, and/or identity in connection with Polekatz impugns Underwood's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to Underwood's feelings about the advertisements and Defendants deny the remaining allegations of this Paragraph.

101. Defendants' improper use of Underwood's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Underwood's image in their market activities and business. In doing so, Defendants have further damaged Underwood.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to the utilization or misappropriation of Underwood's images by other persons or entities and accordingly, Defendants deny the same. Defendants further deny that it improperly used Underwood's images and that instead, Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit D. Icon

created and sold Exhibit D to Defendants for advertising purposes. Defendants further deny that Underwood has suffered further damage related thereto.

### *Plaintiff Eva Pepaj*

102.    Pepaj is, and at all times relevant to this action was, a professional model, and actress. Pepaj moved to Hollywood in 2004 to pursue her acting and modeling career. She is known for her roles in the movies: The Hand Off (2009), Interior, Leather Bar, (2013) and The Romp (2011). Pepaj was a feature in a national Diet Coke TV commercial. Pepaj is a professional model working model and actress and her work includes from runways to high fashion, to print and film. Pepaj has over 50,500 followers on Instagram.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

103.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Pepaj negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

104.    Pepaj's image, likeness, and/or identity are depicted in at least two photographs, enclosed as **Exhibit E** to the Complaint, which were posted on social media on at least one occasion (and have remained publically posted since those initial posting, constituting a continuous and ongoing harm) to the create the false perception that Pepaj has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about March 16, 2017, Pepaj's image was uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club. The Facebook caption on the image of Posada mentioned "Already 25 Sexy kittens in the

house! $10 dances $5 Jameson Irish Whiskey shots $5 Guinness until 3 am". Additionally, on or about October 18, 2016, another Image of Pepaj (posed center wearing a sexy, devil's costume) was also uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club. The second Image of Pepaj was used to advertise Polekatz's "Monsters Ball VIP Party". The same Image of Ms. Pepaj was used on Polekatz's Instagram page on or about October 24, 2016. The use of the images falsely implied that Pepaj represents Polekatz's strip club and that she authorized Polekatz to use her images for promotional and marketing purposes. The images were used without the consent of Pepaj and were manipulated to intentionally give the impression that Pepaj is a spokesperson for Polekatz, working at Polekatz, and/or that she endores Polekatz.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit E. Icon created and sold Exhibit E to Defendants for advertising purposes. Defendants admit that the image of Pepaj described in this Paragraph was posted on Polekatz's Facebook page. Defendants deny the remaining allegations in this Paragraph. Answering further, Exhibit E speaks for itself.

105.    Pepaj's image, likeness, and/or identity in **Exhibit E** is being used as advertising, and on social media.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit E. Icon created and sold Exhibit E to Defendants for advertising purposes. Further stating, Exhibit E speaks for itself. Defendants have insufficient knowledge with which to respond to the allegations in this Paragraph to the extent that they reference any other image besides Exhibit E or any other posting besides the above-referenced Facebook posting.

106.    Defendants' unauthorized use of Pepaj's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present. During the entire timeframe that Defendants' used Pepaj's image and likeness, they did so unlawfully, without authorization, and consent, and Pepaj suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit E. Icon created and sold Exhibit E to Defendants for advertising purposes. Defendants admit that they posted the image described above on their Facebook page. Defendants deny the remaining allegations of this Paragraph.

107.    Pepaj has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz or any Polekatz event.

**ANSWER:** Defendants admit that they did not directly hire or enter into a contract with Pepaj for advertising. However, Defendants have insufficient information with which to respond to the allegations relating to whether Pepaj has ever been hired or entered into a contract with Icon or any other entity to use the images.

108.    Defendants never sought permission or authority to use Pepaj's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit E. Icon created and

sold Exhibit E to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Pepaj to use the images. However, Defendants have insufficient information with which to respond to the allegations relating to whether Pepaj gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

109.    Pepaj never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit E. Icon created and sold Exhibit E to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Pepaj to use the image. However, Defendants have insufficient information with which to respond to the allegations relating to whether Pepaj gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

110.    Defendants neither offered nor paid any remuneration to Pepaj for the unauthorized use of her image, likeness, or identity.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit E. Icon created and sold Exhibit E to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly compensate or offer to compensate Plaintiffs and that Defendants compensated Icon for the images. Defendants have insufficient information with which to respond to the allegations

relating to whether Plaintiffs were compensated for the use of said image. Defendants deny the remaining allegations of this Paragraph.

111.    Defendants' use of Pepaj's image, likeness, and/or identity in connection with Polekatz impugns Pepaj's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to Pepaj's feelings about the advertisements and Defendants deny the remaining allegations of this Paragraph.

112.    Defendants' improper use of Pepaj's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Pepaj's image in their market activities and business. In doing so, Defendants have further damaged Pepaj.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to the utilization or misappropriation of Pepaj's images by other persons or entities and accordingly, Defendants deny the same. Defendants further deny that it improperly used Pepaj's images and that instead, Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit E. Icon created and sold Exhibit E to Defendants for advertising purposes. Defendants further deny that Pepaj has suffered further damage related thereto.

### *Plaintiff Jesse Golden*

113.    Golden is, and at all times relevant to this action was, a model, and business woman. She became a supermodel with high profile clients that included Abercrombie & Fitch, Victoria Secret, Lucy Sport, Coca-Cola, GAP, and Nike. She has graced the covers of magazines like *New York Times, Fitness, New Port Beach, Yoga International*, and many others. Golden shares her

secrets on her own blog and also writes for many other magazines and sites. She's currently becoming a Holistic Health Practitioner and is a certified Hatha yoga teacher. She has her own fitness and yoga brand and products. Working for many notable fashion brands, dozens of commercials, television and film; Golden continues to expand her career through life experiences.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

114.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Golden negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

115.    Golden's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit F** to the Complaint, which was posted on social media on at least one occasion (and has remained publically posted since those initial posting, constituting a continuous and ongoing harm) to the create the false perception that Golden has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about October 18, 2016, Golden's image (posed far left in a sexy, witch's costume) was uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club. The Image of Golden was used to advertise Polekatz's "Monsters Ball VIP Party". The same Image of Ms. Golden was used on Polekatz's Instagram page on or about October 24, 2016. The use of the image falsely implied that Golden represents Polekatz's strip club and that she authorized Polekatz to use her image for promotional and marketing purposes. The image was used without the consent of Golden and was manipulated

to intentionally give the impression that Golden is a spokesperson for Polekatz, working at Polekatz, and/or that she endorses Polekatz.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit F. Icon created and sold Exhibit F to Defendants for advertising purposes. Defendants admit that the image of Golden described in this Paragraph was posted on Polekatz's Facebook page. Defendants deny the remaining allegations in this Paragraph. Answering further, Exhibit F speaks for itself.

116.    Golden's image, likeness, and/or identity in **Exhibit F** is being used as advertising, and on social media.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit F. Icon created and sold Exhibit F to Defendants for advertising purposes. Further stating, Exhibit F speaks for itself. Defendants have insufficient knowledge with which to respond to the allegations in this Paragraph to the extent that they reference any other image besides Exhibit F or any other posting besides the above-referenced Facebook posting.

117.    Defendants' unauthorized use of Golden's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present. During the entire timeframe that Defendants' used Golden's image and likeness, they did so unlawfully, without authorization, and consent, and Golden suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit F. Icon created and sold Exhibit F to Defendants for advertising purposes. Defendants admit that they posted the image described above on their Facebook page. Defendants deny the remaining allegations of this Paragraph.

118. Golden has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz or any Polekatz event.

**ANSWER:** Defendants admit that they did not directly hire or enter into a contract with Golden for advertising. However, Defendants have insufficient information with which to respond to the allegations relating to whether Golden has ever been hired or entered into a contract with Icon or any other entity to use the images.

119. Defendants never sought permission or authority to use Golden's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit F. Icon created and sold Exhibit F to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Golden to use the images. However, Defendants have insufficient information with which to respond to the allegations relating to whether Golden gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

120.    Golden never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit F. Icon created and sold Exhibit F to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Golden to use the image. However, Defendants have insufficient information with which to respond to the allegations relating to whether Golden gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

121.    Defendants neither offered nor paid any remuneration to Golden for the unauthorized use of her image, likeness, or identity.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit F. Icon created and sold Exhibit F to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly compensate or offer to compensate Plaintiffs and that Defendants compensated Icon for the images. Defendants have insufficient information with which to respond to the allegations relating to whether Plaintiffs were compensated for the use of said image. Defendants deny the remaining allegations of this Paragraph.

122.    Defendants' use of Golden's image, likeness, and/or identity in connection with Polekatz impugns Golden's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to Golden's feelings about the advertisements and Defendants deny the remaining allegations of this Paragraph.

123. Defendants' improper use of Golden's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Golden's image in their market activities and business. In doing so, Defendants have further damaged Golden.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to the utilization or misappropriation of Golden's images by other persons or entities and accordingly, Defendants deny the same. Defendants further deny that it improperly used Golden's images and that instead, Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit F. Icon created and sold Exhibit F to Defendants for advertising purposes. Defendants further deny that Golden has suffered further damage related thereto.

### *Plaintiff Lina Posada*

124. Posada is, and at all times relevant to this action was, a fashion model and designer. A native of Barranquilla, Colombia, Posada best known as a model for the *Besame* and *Espiral* lingerie collections. Posada has also modeled *for* Paradizia *Swimwear, Babalú Swimwear, Irgus Swimwear, Ujeans*, as well as many others. She has over 500,000 YouTube views, over 5,700 Twitter followers, over 8,100 Facebook followers, and over 94,400 Instagram followers.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

125.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Posada negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

126.    Posada's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit G** to the Complaint, which has been used at least one time (and has remained publically posted since the initial posting, constituting a continuous and ongoing harm) to create the false perception that Posada has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about March 8, 2016, Posada's image was uploaded to Polekatz's Facebook page with intent to promote and market Polekatz strip club. The Image of Posada was used to advertise Polekatz's "St. Patty's Day". The use of this image falsely implied that Posada represents Polekatz strip club and that she authorized Polekatz to use her image for promotional and marketing purposes. The image was used without the consent of Posada and was manipulated to intentionally give the impression that Posada is a spokesperson for Polekatz, working at Polekatz, and/or that she endorses Polekatz.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit G. Icon created and sold Exhibit G to Defendants for advertising purposes. Defendants admit that the image of Posada described in this Paragraph was posted on Polekatz's Facebook page. Defendants deny the remaining allegations in this Paragraph. Answering further, Exhibit G speaks for itself.

127.    Posada's image, likeness, and/or identity in **Exhibit G** are being used as advertising and on social media.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit G. Icon created and sold Exhibit G to Defendants for advertising purposes. Further stating, Exhibit G speaks for itself. Defendants have insufficient knowledge with which to respond to the allegations in this Paragraph to the extent that they reference any other image besides Exhibit G or any other posting besides the above-referenced Facebook posting.

128.    Defendants' unauthorized use of Posada's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present. During the entire timeframe that Defendants' used Posada's image and likeness, they did so unlawfully, without authorization, and consent, and Posada suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit G. Icon created and sold Exhibit G to Defendants for advertising purposes. Defendants admit that they posted the image described above on their Facebook page. Defendants deny the remaining allegations of this Paragraph.

129.    Posada has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants admit that they did not directly hire or enter into a contract with Posada for advertising. However, Defendants have insufficient information with which to respond

to the allegations relating to whether Posada has ever been hired or entered into a contract with Icon or any other entity to use the images.

130.    Defendants never sought permission or authority to use Posada's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:**    Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit G. Icon created and sold Exhibit G to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Posada to use the images. However, Defendants have insufficient information with which to respond to the allegations relating to whether Posada gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

131.    Posada never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market or endorse Defendants' businesses, Polekatz or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit G. Icon created and sold Exhibit G to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Posada to use the image. However, Defendants have insufficient information with which to respond to the allegations relating to whether Posada gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

132.    Defendants neither offered nor paid any remuneration to Posada for the unauthorized use of her image, likeness, or identity.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit G. Icon created and sold Exhibit G to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly compensate or offer to compensate Plaintiffs and that Defendants compensated Icon for the images. Defendants have insufficient information with which to respond to the allegations relating to whether Plaintiffs were compensated for the use of said image. Defendants deny the remaining allegations of this Paragraph.

133.    Defendants' use of Posada's image, likeness, and/or identity in connection with Polekatz's impugns Posada' character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to Posada's feelings about the advertisements and Defendants deny the remaining allegations of this Paragraph.

134.    Defendants' improper use of Posada's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Posada' image in their market activities and business. In doing so, Defendants has further damaged Posada.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to the utilization or misappropriation of Posada's images by other persons or entities and accordingly, Defendants deny the same. Defendants further deny that it improperly used Posada's images and that instead, Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit G. Icon created

and sold Exhibit G to Defendants for advertising purposes. Defendants further deny that Posada has suffered further damage related thereto.

### *Plaintiff Tiffany Toth Gray*

135.     Gray is, and at all times relevant to this action was, a model. Gray takes great pride in holding the prestigious title of a *Playboy* Playmate. Gray was the *Playboy* "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under *Playboy's* Fresh Faces. Moreover, she has not only been featured in such magazines as *Super Street Bike*, *Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, but has also posed for various catalogs. Gray has over 3.8 million Facebook followers, over 1.2 million Instagram followers, and over 223,300 Twitter followers.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

136.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Gray negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

137.     Gray's image, likeness, and/or identity are depicted in at least two photographs, enclosed as **Exhibit H** to the Complaint, which were posted on social media on at least four occasions (and have remained publically posted since those initial posting, constituting a continuous and ongoing harm) to the create the false perception that Gray has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about October 29, 2015, Gray's image (posed far left in a sexy, cat costume) was uploaded to Polekatz's Facebook page

with intent to promote and market Polekatz strip club. The Image of Gray was used to advertise Polekatz's "HALLOWEEN PARTY". Additionally, on or about December 17, 2015, another Image of Gray (posed center wearing red lingerie) was also uploaded to Polekatz's Facebook page with intent to advertise Polekatz's "Winter Wonderland VIP Event". That same Image of Gray was also used on Polekatz' website, and again on their Facebook page as Polekatz' Facebook profile picture. The use of the images falsely implied that Gray represents Polekatz's strip club and that she authorized Polekatz to use her images for promotional and marketing purposes. The image was used without the consent of Gray and was manipulated to intentionally give the impression that Gray is a spokesperson for Polekatz, working at Polekatz, and/or that she endores Polekatz.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit H. Icon created and sold Exhibit H to Defendants for advertising purposes. Defendants admit that the image of Gray described in this Paragraph was posted on Polekatz's Facebook page. Defendants deny the remaining allegations in this Paragraph. Answering further, Exhibit H speaks for itself.

138.    Gray's image, likeness, and/or identity in **Exhibit H** is being used as advertising, and on social media.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit H. Icon created and sold Exhibit H to Defendants for advertising purposes. Further stating, Exhibit H speaks for itself. Defendants have insufficient knowledge with which to respond to the allegations in this Paragraph to the extent that they reference any other image besides Exhibit H or any other posting besides the above-referenced Facebook posting.

139.     Defendants' unauthorized use of Gray's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account or website could view, access, and even download the image from the date it was first posted until present. During the entire timeframe that Defendants' used Gray's image and likeness, they did so unlawfully, without authorization, and consent, and Gray suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit H. Icon created and sold Exhibit H to Defendants for advertising purposes. Defendants admit that they posted the image described above on their Facebook page. Defendants deny the remaining allegations of this Paragraph.

140.     Gray has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz or any Polekatz event.

**ANSWER:** Defendants admit that they did not directly hire or enter into a contract with Gray for advertising. However, Defendants have insufficient information with which to respond to the allegations relating to whether Gray has ever been hired or entered into a contract with Icon or any other entity to use the images.

141.     Defendants never sought permission or authority to use Gray's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit H. Icon created and sold Exhibit H to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Gray to use the images. However, Defendants have insufficient information with which to respond to the allegations relating to whether Gray gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

142. Gray never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit H. Icon created and sold Exhibit H to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Gray to use the image. However, Defendants have insufficient information with which to respond to the allegations relating to whether Gray gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

143. Defendants neither offered nor paid any remuneration to Gray for the unauthorized use of her image, likeness, or identity.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit H. Icon created and sold Exhibit H to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly compensate or offer to compensate Plaintiffs and that Defendants compensated Icon

for the images. Defendants have insufficient information with which to respond to the allegations relating to whether Plaintiffs were compensated for the use of said image. Defendants deny the remaining allegations of this Paragraph.

144.     Defendants' use of Gray's image, likeness, and/or identity in connection with Polekatz impugns Gray's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to Gray's feelings about the advertisements and Defendants deny the remaining allegations of this Paragraph.

145.     Defendants' improper use of Gray's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Gray's image in their market activities and business. In doing so, Defendants have further damaged Gray.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to the utilization or misappropriation of Gray's images by other persons or entities and accordingly, Defendants deny the same. Defendants further deny that it improperly used Gray's images and that instead, Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit H. Icon created and sold Exhibit H to Defendants for advertising purposes. Defendants further deny that Gray has suffered further damage related thereto.

### *Plaintiff Jaclyn Swedberg*

146.     Swedberg is, and at all times relevant to this action was, a model, and actress. Swedberg has appeared in a number of TV series including, Badass, Playboy's Beach House, Pauly Shore's Paulytic's, Snake and Mongoose and a series called Muck, in which she has a starring

recurring role. Swedberg was *Playboy's* Playmate of the month April 2011 and went on to win Playmate of the Year 2012/ 2013. Swedberg has over 1 million Instagram followers, and over 210,100 Twitter followers.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

147.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Swedberg negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

148.    Swedberg's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit I** to the Complaint, which was posted on social media on at least one occasion (and has remained publically posted since those initial posting, constituting a continuous and ongoing harm) to the create the false perception that Swedberg has consented or agreed to promote, advertise, market, and/or endorse Polekatz. Specifically, on or about June 2, 2016, Swedberg's image (posed center laying down) was uploaded to Polekatz's Instagram page with intent to promote and market Polekatz strip club. The Image of Swedberg was used to advertise Polekatz's "CIRQUE DU NOIR VIP EVENT". The use of the image falsely implied that Swedberg represents Polekatz's strip club and that she authorized Polekatz to use her image for promotional and marketing purposes. The image was used without the consent of Swedberg and was manipulated to intentionally give the impression that Swedberg is a spokesperson for Polekatz, working at Polekatz, and/or that she endores Polekatz.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit I. Icon created and sold Exhibit I to Defendants for advertising purposes. Defendants admit that the image of Swedberg described in this Paragraph was posted on Polekatz's Facebook page. Defendants deny the remaining allegations in this Paragraph. Answering further, Exhibit I speaks for itself.

149.    Swedberg's image, likeness, and/or identity in **Exhibit I** is being used as advertising, and on social media.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit I. Icon created and sold Exhibit I to Defendants for advertising purposes. Further stating, Exhibit I speaks for itself. Defendants have insufficient knowledge with which to respond to the allegations in this Paragraph to the extent that they reference any other image besides Exhibit I or any other posting besides the above-referenced Facebook posting.

150.    Defendants' unauthorized use of Swedberg's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Instagram account could view, access, and even download the image from the date it was first posted until present. During the entire timeframe that Defendants' used Swedberg's image and likeness, they did so unlawfully, without authorization, and consent, and Swedberg suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit I. Icon created and sold Exhibit I to Defendants for advertising purposes. Defendants admit that they posted the image

described above on their Facebook page. Defendants deny the remaining allegations of this Paragraph.

151.    Swedberg has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz or any Polekatz event.

**ANSWER:** Defendants admit that they did not directly hire or enter into a contract with Swedberg for advertising. However, Defendants have insufficient information with which to respond to the allegations relating to whether Swedberg has ever been hired or entered into a contract with Icon or any other entity to use the images.

152.    Defendants never sought permission or authority to use Swedberg's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:**    Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit I. Icon created and sold Exhibit I to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Swedberg to use the images. However, Defendants have insufficient information with which to respond to the allegations relating to whether Swedberg gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

153.    Swedberg never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit I. Icon created and

sold Exhibit I to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Swedberg to use the image. However, Defendants have insufficient information with which to respond to the allegations relating to whether Swedberg gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

154.    Defendants neither offered nor paid any remuneration to Underwood for the unauthorized use of her image, likeness, or identity.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit I. Icon created and sold Exhibit I to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly compensate or offer to compensate Plaintiffs and that Defendants compensated Icon for the images. Defendants have insufficient information with which to respond to the allegations relating to whether Plaintiffs were compensated for the use of said image. Defendants deny the remaining allegations of this Paragraph.

155.    Defendants' use of Swedberg's image, likeness, and/or identity in connection with Polekatz impugns Swedberg's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to Swedberg's feelings about the advertisements and Defendants deny the remaining allegations of this Paragraph.

156.    Defendants' improper use of Swedberg's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Swedberg's image in their market activities and business. In doing so, Defendants have further damaged Swedberg.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to the utilization or misappropriation of Swedberg's images by other persons or entities and accordingly, Defendants deny the same. Defendants further deny that it improperly used Swedberg's images and that instead, Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit I. Icon created and sold Exhibit I to Defendants for advertising purposes. Defendants further deny that Skinner has suffered further damage related thereto.

### Plaintiff Sarah Stage

157.     Stage is, and at all times relevant to this action was, a glamour model, and actress. Stage has worked for brands such as Fredericks of Hollywood, Jafra Cosmetics, Buffalo Jeans, Sky Clothing, and Beach Bunny Swimwear. Ms. Stage has also done commercials for Kia, Budweiser, Samsung and she has appeared in magazines such as *Maxim*, *Shape*, and *Allure*. Stage is a social media influencer with 2.2 million followers on Instagram, 23,000 followers on Twitter, more than 50,000 views on Snapchat, and more than 114,780 likes on Facebook.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

158.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Stage negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

159.     Stage's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit J** to the Complaint, which has been used at least one time (and has remained

publically posted since the initial posting, constituting a continuous and ongoing harm) to create the false perception that Stage has consented or agreed to promote, advertise, market and/or endorse Polekatz. Specifically, on October 2, 2017, Stage's image (posed far left with a black costume) was uploaded to Polekatz's Instagram page with intent to promote and market Polekatz strip club. The Image of Stage was used to advertise Polekatz's "MONSTERS BALL A VIP EVENT". The same Image of Ms. Stage was used on Polekatz's Instagram page on or about October 11, 2017. The use of this image falsely implied that Stage represents Polekatz strip club and that she authorized Polekatz to use her image for promotional and marketing purposes. The image was used without the consent of Stage and was manipulated to intentionally give the impression that Stage is a spokesperson for Polekatz, working at Polekatz, and/or that she endorses Polekatz.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit J. Icon created and sold Exhibit J to Defendants for advertising purposes. Defendants admit that the image of Stage described in this Paragraph was posted on Polekatz's Facebook page. Defendants deny the remaining allegations in this Paragraph. Answering further, Exhibit J speaks for itself.

160.    Stage's image, likeness, and/or identity in **Exhibit J** are being used as advertising, on social media, and for branding purposes.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit J. Icon created and sold Exhibit J to Defendants for advertising purposes. Further stating, Exhibit J speaks for itself. Defendants have insufficient knowledge with which to respond to the allegations in this Paragraph

to the extent that they reference any other image besides Exhibit J or any other posting besides the above-referenced Facebook posting.

161.    Defendants' unauthorized use of Stage's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants Instagram account could view, access, and even download the image from the date it was first posted until present. During the entire timeframe that Defendants' used Stage's image and likeness, they did so unlawfully, without authorization, and consent, and Stage suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit J. Icon created and sold Exhibit J to Defendants for advertising purposes. Defendants admit that they posted the image described above on their Facebook page. Defendants deny the remaining allegations of this Paragraph.

162.    Stage has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants admit that they did not directly hire or enter into a contract with Stage for advertising. However, Defendants have insufficient information with which to respond to the allegations relating to whether Stage has ever been hired or entered into a contract with Icon or any other entity to use the images.

163.    Defendants never sought permission or authority to use Stage's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit J. Icon created and sold Exhibit J to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Stage to use the images. However, Defendants have insufficient information with which to respond to the allegations relating to whether Stage gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

164. Stage never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Polekatz, or any Polekatz event.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit J. Icon created and sold Exhibit J to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly seek permission from Stage to use the image. However, Defendants have insufficient information with which to respond to the allegations relating to whether Stage gave permission to Icon or any other entity to use the images. Defendants deny the remaining allegations of this Paragraph.

165. Defendants neither offered nor paid any remuneration to Stage for the unauthorized use of her image, likeness or identity.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit J. Icon created and sold Exhibit J to Defendants for advertising purposes. Accordingly, Polekatz admits that it did not directly compensate or offer to compensate Plaintiffs and that Defendants compensated Icon for

the images. Defendants have insufficient information with which to respond to the allegations relating to whether Plaintiffs were compensated for the use of said image. Defendants deny the remaining allegations of this Paragraph.

166.    Defendants' use of Stage's image, likeness, and/or identity in connection with Polekatz impugns Stage's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to Stage's feelings about the advertisements and Defendants deny the remaining allegations of this Paragraph.

167.    Defendants' improper use of Stage's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Stage's image in their market activities and business. In doing so, Defendants has further damaged Stage.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations in this Paragraph relating to the utilization or misappropriation of Stage's images by other persons or entities and accordingly, Defendants deny the same. Defendants further deny that it improperly used Stage's images and that instead, Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images contained in Exhibit J. Icon created and sold Exhibit J to Defendants for advertising purposes. Defendants further deny that Stage has suffered further damage related thereto.

## CAUSES OF ACTION

***Plaintiff Jessica Hinton a/k/a Jessa Hinton's Causes of Action against Defendants VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz***

## HINTON COUNT I
### Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

168.    Hinton re-alleges paragraphs 1-21, 22, 32-57, and 58-68 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

169.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq*. applies to Defendants and protects Hinton from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

**ANSWER:** Defendants deny the allegations of this Paragraph. Answering further, the statute speaks for itself.

170.    Defendants used Hinton's image, likeness and/or identity as described herein without authority in order to create the perception that Hinton worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

171.    Defendants' use of Hinton's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

**ANSWER:** Defendants deny the allegations of this Paragraph.

172.    Defendants' unauthorized use of Hinton's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other

things, that Hinton worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities and/or that Hinton would participate in or appear at the specific events promoted in the advertisements.

**ANSWER:** Defendants deny the allegations of this Paragraph.

173. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Hinton worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

174. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Hinton worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

175.     Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

**ANSWER:** Defendants admit that they use the Internet and social media to advertise, market and promote their business. Defendants deny the remaining allegations of this Paragraph.

176.     Defendants' unauthorized use of Hinton's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes. Defendants admit that they used Exhibits A-J for advertising purposes to promote their business, but deny that it was unauthorized. Defendants deny all remaining allegations of this Paragraph.

177.     Defendants knew or should have known that their unauthorized use of Hinton's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

**ANSWER:** Defendants deny the allegations of this Paragraph.

178.     Defendants' unauthorized use of Hinton's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

179.    Defendants' wrongful conduct as described herein was willful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

180.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**ANSWER:** Defendants deny the allegations of this Paragraph.

181.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Hinton of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Hinton.

**ANSWER:** Defendants deny the allegations of this Paragraph.

182.    The method and manner in which Defendants used the image of Hinton further evinces that Defendants were aware of or consciously disregarded the fact that Hinton did not consent to Defendants' use of the image to advertise Defendants' businesses.

**ANSWER:** Defendants deny the allegations of this Paragraph.

183.    Defendants had caused irreparable harm to Hinton, her reputation and brand by attributing to Hinton the strip club lifestyle and activities at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

184.    Defendants' unauthorized use of Hinton's image, likeness and/or identity directly and proximately caused and continue to cause damage to Hinton in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

**HINTON COUNT II**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)**

185.    Hinton re-alleges paragraphs 1-21, 22, 32-57, and 58-68 above above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

186.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Hinton from the conduct described herein.

**ANSWER:** Defendants deny the allegations of this Paragraph.

187.    Defendants used Hinton's image in order to create the false impression with the public that Hinton either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

188.    Thus, this was done in furtherance of Defendants' commercial benefit.

**ANSWER:** Defendants admit that they utilize advertisements for commercial benefit; however, Defendants deny that they used the advertisements complained of by Plaintiffs in order to create a false impression with the public or that said use was improper. For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

189.    Hinton is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Hinton's images in magazines and online. By virtue of Hinton's use of her image and

identify to build her brand, she has acquired a distinctiveness through secondary meaning. Hinton's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

190.     Both Hinton and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

**ANSWER:** Defendants admit that they compete in the entertainment industry. Defendants lack sufficient knowledge to admit or deny the remaining allegations of this Paragraph and accordingly, deny the same.

191.     As such, an unauthorized use of Hinton's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Hinton. There is no doubt that Defendants' used Hinton's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Hinton's image and likeness was an existing intent to commercialize an interest in Hinton's image and likeness.

**ANSWER:** For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who

created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

192.    Defendants' use of Hinton's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Hinton's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Hinton, or sponsored, approved or associated with Hinton.

**ANSWER:** Defendants deny the allegations of this Paragraph.

193.    Despite the fact that Defendants were at all times aware that Hinton neither worked at, nor endorsed their strip club, nevertheless, they used Hinton's image in order to mislead potential customers as to Hinton's employment at and/or affiliation with Polekatz.

**ANSWER:** Defendants admit that Hinton has never been employed by Defendants. Defendants have insufficient information to respond to the allegation as to whether Plaintiffs "endorsed" Polekatz.  Defendants deny all remaining allegations in this Paragraph.

194.    Defendants knew that their use of Hinton's image would cause consumer confusion as to Hinton's sponsorship and/or employment at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

195.    Upon information and belief, Defendants' use of Hinton's image did in fact cause consumer confusion as to Hinton's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

196.    As a direct and proximate result of Defendants' actions, Hinton has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the

advertisements depicting Hinton's image, likeness and/or identity, or how Hinton's image, likeness and/or identity is being depicted by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

197.    Further, any failure, neglect or default by Defendants will reflect adversely on Hinton as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Hinton to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Hinton.

**ANSWER:** Defendants deny the allegations of this Paragraph.

198.    Due to Polekatz's unauthorized use of Hinton's image, Hinton has been damaged in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

### HINTON COUNT III
#### (Violation of Illinois Right of Publicity Act ("IRPA"),
#### 765 ILCS 1075/10 *et seq. Right to Publicity*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time

### HINTON COUNT IV
#### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

### HINTON COUNT V
#### (Negligence and *Respondeat Superior*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

*Plaintiff Cora Skinner's Causes of Action against Defendants*
*VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz*

## SKINNER COUNT I
### Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

246.     Skinner re-alleges paragraphs 1-21, 23, 32-57 and 69–79 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

247.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Skinner from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

**ANSWER:** Defendants deny the allegations of this Paragraph. Answering further, the statute speaks for itself.

248.     Defendants used Skinner's image, likeness and/or identity as described herein without authority in order to create the perception that Skinner worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

249.   Defendants' use of Skinner's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

**ANSWER:** Defendants deny the allegations of this Paragraph.

250.   Defendants' unauthorized use of Skinner's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Skinner worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities and/or that Skinner would participate in or appear at the specific events promoted in the advertisements.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes. Defendants admit that they used Exhibits A-J for advertising purposes to promote their business, but deny that it was unauthorized. Defendants deny all remaining allegations of this Paragraph.

251.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Skinner worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

252.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Skinner worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

253.    Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

**ANSWER:** Defendants admit that they use the Internet and social media to advertise, market and promote their business. Defendants deny the remaining allegations of this Paragraph.

254.    Defendants' unauthorized use of Skinner's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

**ANSWER:** Defendants admit that they use images for advertising purposes to promote their business, but deny that it was unauthorized as they were purchased from Icon. Defendants deny all remaining allegations of this Paragraph.

255.    Defendants knew or should have known that their unauthorized use of Skinner's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

**ANSWER:** Defendants deny the allegations of this Paragraph.

256.    Defendants' unauthorized use of Skinner's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

257.    Defendants' wrongful conduct as described herein was willful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

258.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**ANSWER:** Defendants deny the allegations of this Paragraph.

259.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Skinner of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Skinner.

**ANSWER:** Defendants deny the allegations of this Paragraph.

260.    The method and manner in which Defendants used the image of Skinner further evinces that Defendants were aware of or consciously disregarded the fact that Skinner did not consent to Defendants' use of the image to advertise Defendants' businesses.

**ANSWER:** Defendants deny the allegations of this Paragraph.

261.     Defendants had caused irreparable harm to Skinner, her reputation and brand by attributing to Skinner the strip club lifestyle and activities at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

262.     Defendants' unauthorized use of Skinner's image, likeness and/or identity directly and proximately caused and continue to cause damage to Skinner in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

## <u>SKINNER COUNT II</u>
### (**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement**)

263.     Skinner re-alleges paragraphs 1-21, 23, 32-57 and 69–79 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

264.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Skinner from the conduct described herein

**ANSWER:** Defendants deny the allegations of this Paragraph.

265.     Defendants used Skinner's image in order to create the false impression with the public that Skinner either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

266.     Thus, this was done in furtherance of Defendants' commercial benefit.

**ANSWER:** Defendants admit that they utilize advertisements for commercial benefit; however, Defendants deny that they used the advertisements complained of by Plaintiffs in order to create a false impression with the public or that said use was improper. For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

267.    Skinner is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Skinner's images in magazines and online. By virtue of Skinner's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Skinner's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

268.    Both Skinner and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

**ANSWER:** Defendants admit they compete in the entertainment industry. Defendants lack sufficient knowledge to admit or deny the remaining allegations of this Paragraph, and accordingly deny the same.

269.    As such, an unauthorized use of Skinner's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Skinner. There is no doubt that Defendants' used Skinner's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Skinner's image and likeness was an existing intent to commercialize an interest in Skinner's image and likeness

**ANSWER:** For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

270.    Defendants' use of Skinner's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Skinner's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Skinner, or sponsored, approved or associated with Skinner.

**ANSWER:** Defendants deny the allegations of this Paragraph.

271.    Despite the fact that Defendants were at all times aware that Skinner neither worked at, nor endorsed their strip club, nevertheless, they used Skinner's image in order to mislead potential customers as to Skinner's employment at and/or affiliation with Polekatz.

**ANSWER:** Defendants admit that Skinner has never been employed by Defendants. Defendants have insufficient information to respond to the allegation as to whether Plaintiffs "endorsed" Polekatz.  Defendants deny all remaining allegations in this Paragraph.

272.    Defendants knew that their use of Skinner's image would cause consumer confusion as to Skinner's sponsorship and/or employment at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

273.     Upon information and belief, Defendants' use of Skinner's image did in fact cause consumer confusion as to Skinner's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

274.     As a direct and proximate result of Defendants' actions, Skinner has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Skinner's image, likeness and/or identity, or how Skinner's image, likeness and/or identity is being depicted by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

275.     Further, any failure, neglect or default by Defendants will reflect adversely on Skinner as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Skinner to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Skinner.

**ANSWER:** Defendants deny the allegations of this Paragraph.

276.     Due to Polekatz's unauthorized use of Skinner's image, Skinner has been damaged in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

<u>**SKINNER COUNT III**</u>
**(Violation of Illinois Right of Publicity Act ("IRPA"),**
**765 ILCS 1075/10** *et seq. Right to Publicity*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## SKINNER COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## SKINNER COUNT V
### (Negligence and *Respondeat Superior*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

### *Plaintiff Dessie Mitcheson's Causes of Action against Defendants*
### *VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz*

## MITCHESON COUNT I
### Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

324.    Mitcheson re-alleges paragraphs 1-21, 24, 32-57, and 80–90 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

325.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Mitcheson from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

**ANSWER:** Defendants deny the allegations of this Paragraph. Answering further, the statute speaks for itself.

326.    Defendants used Mitcheson's image, likeness and/or identity as described herein without authority in order to create the perception that Mitcheson worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

327.    Defendants' use of Mitcheson's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

**ANSWER:** Defendants deny the allegations of this Paragraph.

328.    Defendants' unauthorized use of Mitcheson's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Mitcheson worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities and/or that Mitcheson would participate in or appear at the specific events promoted in the advertisements.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes. Defendants admit that they used Exhibits A-J for advertising purposes to promote their business, but deny that it was unauthorized. Defendants deny all remaining allegations of this Paragraph.

329.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Mitcheson worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

330.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Mitcheson worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

331.    Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web,

social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

**ANSWER:** Defendants admit that they use the Internet and social media to advertise, market and promote their business. Defendants deny the remaining allegations of this Paragraph.

332. Defendants' unauthorized use of Mitcheson's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

**ANSWER:** Defendants admit that they use images for advertising purposes to promote their business, but deny that it was unauthorized as they were purchased from Icon. Defendants deny all remaining allegations of this Paragraph.

333. Defendants knew or should have known that their unauthorized use of Mitcheson's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

**ANSWER:** Defendants deny the allegations of this Paragraph.

334. Defendants' unauthorized use of Mitcheson's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

335. Defendants' wrongful conduct as described herein was willful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

336. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**ANSWER:** Defendants deny the allegations of this Paragraph.

337. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Mitcheson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Mitcheson.

**ANSWER:** Defendants deny the allegations of this Paragraph.

338. The method and manner in which Defendants used the image of Mitcheson further evinces that Defendants were aware of or consciously disregarded the fact that Mitcheson did not consent to Defendants' use of the image to advertise Defendants' businesses.

**ANSWER:** Defendants deny the allegations of this Paragraph.

339. Defendants had caused irreparable harm to Mitcheson, her reputation and brand by attributing to Mitcheson the strip club lifestyle and activities at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

340. Defendants' unauthorized use of Mitcheson's image, likeness and/or identity directly and proximately caused and continue to cause damage to Mitcheson in an amount to be determined at trial.

**ANSWER:** Defendants admit that they use images for advertising purposes to promote their business, but deny that it was unauthorized as they were purchased from Icon. Defendants deny all remaining allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

## MITCHESON COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

341. Mitcheson re-alleges paragraphs 1-21, 24, 32-57, and 80–90 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

342.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Mitcheson from the conduct described herein

**ANSWER:** Defendants deny the allegations of this Paragraph.

343.    Defendants used Mitcheson's image in order to create the false impression with the public that Mitcheson either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

344.    Thus, this was done in furtherance of Defendants' commercial benefit.

**ANSWER:** Defendants admit that they utilize advertisements for commercial benefit; however, Defendants deny that they used the advertisements complained of by Plaintiffs in order to create a false impression with the public or that said use was improper. For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

345.    Mitcheson is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Mitcheson's images in magazines and online. By virtue of Mitcheson's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Mitcheson's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service

that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

346.    Both Mitcheson and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

**ANSWER:** Defendants admit that they compete in the entertainment industry. Defendants lack sufficient knowledge to admit or deny the remaining allegations of this Paragraph and accordingly, deny the same.

347.    As such, an unauthorized use of Mitcheson's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Mitcheson. There is no doubt that Defendants' used Mitcheson's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Mitcheson's image and likeness was an existing intent to commercialize an interest in Mitcheson's image and likeness.

**ANSWER:** For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

348.    Defendants' use of Mitcheson's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived

Mitcheson's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Mitcheson, or sponsored, approved or associated with Mitcheson.

**ANSWER:** Defendants deny the allegations of this Paragraph.

349.    Despite the fact that Defendants were at all times aware that Mitcheson neither worked at, nor endorsed their strip club, nevertheless, they used Mitcheson's image in order to mislead potential customers as to Mitcheson's employment at and/or affiliation with Polekatz.

**ANSWER:** Defendants admit that Mitcheson has never been employed by Defendants. Defendants have insufficient information to respond to the allegation as to whether Plaintiffs ever "endorsed" Polekatz. Defendants deny all remaining allegations in this Paragraph.

350.    Defendants knew that their use of Mitcheson's image would cause consumer confusion as to Mitcheson's sponsorship and/or employment at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

351.    Upon information and belief, Defendants' use of Mitcheson's image did in fact cause consumer confusion as to Mitcheson's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

352.    As a direct and proximate result of Defendants' actions, Mitcheson has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Mitcheson's image, likeness and/or identity, or how Mitcheson's image, likeness and/or identity is being depicted by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

353.    Further, any failure, neglect or default by Defendants will reflect adversely on Mitcheson as the believed source of origin, sponsorship, approval or association thereof,

hampering efforts by Mitcheson to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Mitcheson.

**ANSWER:** Defendants deny the allegations of this Paragraph.

354. Due to Polekatz's unauthorized use of Mitcheson's image, Mitcheson has been damaged in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

## MITCHESON COUNT III
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## MITCHESON COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## MITCHESON COUNT V
### (Negligence and *Respondeat Superior*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

### *Plaintiff Sara Underwood's Causes of Action against Defendants VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz*

## UNDERWOOD COUNT I

**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising**)

402.   Underwood re-alleges paragraphs 1-21, 25, 32-57, and 91–101 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

403.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Underwood from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

**ANSWER:** Defendants deny the allegations of this Paragraph. Answering further, the statute speaks for itself.

404.   Defendants used Underwood's image, likeness and/or identity as described herein without authority in order to create the perception that Underwood worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

405.   Defendants' use of Underwood's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

**ANSWER:** Defendants deny the allegations of this Paragraph.

406.    Defendants' unauthorized use of Underwood's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Underwood worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities and/or that Underwood would participate in or appear at the specific events promoted in the advertisements.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes. Defendants admit that they used Exhibits A-J for advertising purposes to promote their business, but deny that it was unauthorized. Defendants deny all remaining allegations of this Paragraph.

407.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Underwood worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

408.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Underwood worked at or was

otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

409. Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

**ANSWER:** Defendants admit that they use the Internet and social media to advertise, market and promote their business. Defendants deny the remaining allegations of this Paragraph.

410. Defendants' unauthorized use of Underwood's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

**ANSWER:** Defendants admit that they use images for advertising purposes to promote their business, but deny that it was unauthorized as they were purchased from Icon. Defendants deny all remaining allegations of this Paragraph.

411.    Defendants knew or should have known that their unauthorized use of Underwood's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

**ANSWER:** Defendants deny the allegations of this Paragraph.

412.    Defendants' unauthorized use of Underwood's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

413.    Defendants' wrongful conduct as described herein was willful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

414.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**ANSWER:** Defendants deny the allegations of this Paragraph.

415.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Underwood of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Underwood.

**ANSWER:** Defendants deny the allegations of this Paragraph.

416.    The method and manner in which Defendants used the image of Underwood further evinces that Defendants were aware of or consciously disregarded the fact that Underwood did not consent to Defendants' use of the image to advertise Defendants' businesses.

**ANSWER:** Defendants deny the allegations of this Paragraph.

417.    Defendants had caused irreparable harm to Underwood, her reputation and brand by attributing to Underwood the strip club lifestyle and activities at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

418.   Defendants' unauthorized use of Underwood's image, likeness and/or identity directly and proximately caused and continue to cause damage to Underwood in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

## UNDERWOOD COUNT II
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)**

419.   Underwood re-alleges paragraphs 1-21, 25, 32-57, and 91–101 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

420.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Underwood from the conduct described herein

**ANSWER:** Defendants deny the allegations of this Paragraph.

421.   Defendants used Underwood's image in order to create the false impression with the public that Underwood either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

422.   Thus, this was done in furtherance of Defendants' commercial benefit.

**ANSWER:** Defendants admit that they utilize advertisements for commercial benefit; however, Defendants deny that they used the advertisements complained of by Plaintiffs in order

to create a false impression with the public or that said use was improper. For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

423.   Underwood is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Underwood's images in magazines and online. By virtue of Underwood's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Underwood's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

424.   Both Underwood and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

**ANSWER:** Defendants admit that they compete in the entertainment industry. Defendants lack sufficient knowledge to admit or deny the remaining allegations of this Paragraph and accordingly, deny the same.

425.   As such, an unauthorized use of Underwood's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to

Underwood. There is no doubt that Defendants' used Underwood's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Underwood's image and likeness was an existing intent to commercialize an interest in Underwood's image and likeness

**ANSWER:** For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

426.    Defendants' use of Underwood's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Underwood's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Underwood, or sponsored, approved or associated with Underwood.

**ANSWER:** Defendants deny the allegations of this Paragraph.

427.    Despite the fact that Defendants were at all times aware that Underwood neither worked at, nor endorsed their strip club, nevertheless, they used Underwood's image in order to mislead potential customers as to Underwood's employment at and/or affiliation with Polekatz.

**ANSWER:** Defendants admit that Underwood has never been employed by Defendants. Defendants have insufficient information to respond to the allegation as to whether Plaintiffs "endorsed" Polekatz.  Defendants deny all remaining allegations in this Paragraph.

428.    Defendants knew that their use of Underwood's image would cause consumer confusion as to Underwood's sponsorship and/or employment at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

429.   Upon information and belief, Defendants' use of Underwood's image did in fact cause consumer confusion as to Underwood's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

430.   As a direct and proximate result of Defendants' actions, Underwood has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Underwood's image, likeness and/or identity, or how Underwood's image, likeness and/or identity is being depicted by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

431.   Further, any failure, neglect or default by Defendants will reflect adversely on Underwood as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Underwood to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Underwood.

**ANSWER:** Defendants deny the allegations of this Paragraph.

432.   Due to Polekatz's unauthorized use of Underwood's image, Underwood has been damaged in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

**<u>UNDERWOOD COUNT III</u>**
**(Violation of Illinois Right of Publicity Act ("IRPA"),**
**765 ILCS 1075/10 *et seq. Right to Publicity*)**

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## UNDERWOOD COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## UNDERWOOD COUNT V
### (Negligence and *Respondeat Superior*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

### *Plaintiff Eva Pepaj's Causes of Action against Defendants*
### *VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz*

## PEPAJ COUNT I
### Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

478.     Pepaj re-alleges paragraphs 1-21, 26, 32-57, and 102–112 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

479.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Pepaj from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

**ANSWER:** Defendants deny the allegations of this Paragraph. Answering further, the statute speaks for itself.

480.     Defendants used Pepaj's image, likeness and/or identity as described herein without authority in order to create the perception that Pepaj worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

481.     Defendants' use of Pepaj's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

**ANSWER:** Defendants deny the allegations of this Paragraph.

482.     Defendants' unauthorized use of Pepaj's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Pepaj worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities and/or that Pepaj would participate in or appear at the specific events promoted in the advertisements.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes. Defendants admit that they used Exhibits A-J for advertising purposes to promote their business, but deny that it was unauthorized. Defendants deny all remaining allegations of this Paragraph.

483.     Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Pepaj worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

484.     Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Pepaj worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

485.     Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

**ANSWER:** Defendants admit that they use the Internet and social media to advertise, market and promote their business. Defendants deny the remaining allegations of this Paragraph.

486. Defendants' unauthorized use of Pepaj's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

**ANSWER:** Defendants admit that they use images for advertising purposes to promote their business, but deny that it was unauthorized as they were purchased from Icon. Defendants deny all remaining allegations of this Paragraph.

487. Defendants knew or should have known that their unauthorized use of Pepaj's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

**ANSWER:** Defendants deny the allegations of this Paragraph.

488. Defendants' unauthorized use of Pepaj's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

489. Defendants' wrongful conduct as described herein was willful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

490. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**ANSWER:** Defendants deny the allegations of this Paragraph.

491. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Pepaj of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pepaj.

**ANSWER:** Defendants deny the allegations of this Paragraph.

492.     The method and manner in which Defendants used the image of Pepaj further evinces that Defendants were aware of or consciously disregarded the fact that Pepaj did not consent to Defendants' use of the image to advertise Defendants' businesses.

**ANSWER:** Defendants deny the allegations of this Paragraph.

493.     Defendants had caused irreparable harm to Pepaj, her reputation and brand by attributing to Pepaj the strip club lifestyle and activities at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

494.     Defendants' unauthorized use of Pepaj's image, likeness and/or identity directly and proximately caused and continue to cause damage to Pepaj in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

### PEPAJ COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

495.     Pepaj re-alleges paragraphs 1-21, 26, 32-57, and 102–112 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

496.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Pepaj from the conduct described herein

**ANSWER:** Defendants deny the allegations of this Paragraph.

497.    Defendants used Pepaj's image in order to create the false impression with the public that Pepaj either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

498.    Thus, this was done in furtherance of Defendants' commercial benefit.

**ANSWER:** Defendants admit that they utilize advertisements for commercial benefit; however, Defendants deny that they used the advertisements complained of by Plaintiffs in order to create a false impression with the public or that said use was improper. For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

499.    Pepaj is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Pepaj's images in magazines and online. By virtue of Pepaj's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Pepaj's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

500.    Both Pepaj and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

**ANSWER:** Defendants admit that they compete in the entertainment industry. Defendants lack sufficient knowledge to admit or deny the remaining allegations of this Paragraph and accordingly, deny the same.

501.    As such, an unauthorized use of Pepaj's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Pepaj. There is no doubt that Defendants' used Pepaj's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Pepaj's image and likeness was an existing intent to commercialize an interest in Pepaj's image and likeness

**ANSWER:** For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

502.    Defendants' use of Pepaj's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Pepaj's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Pepaj, or sponsored, approved or associated with Pepaj.

**ANSWER:** Defendants deny the allegations of this Paragraph.

503.    Despite the fact that Defendants were at all times aware that Pepaj neither worked at, nor endorsed their strip club, nevertheless, they used Pepaj's image in order to mislead potential customers as to Pepaj's employment at and/or affiliation with Polekatz.

**ANSWER:** Defendants admit that Pepaj has never been employed by Defendants. Defendants have insufficient information to respond to the allegation as to whether Plaintiffs "endorsed" Polekatz. Defendants deny all remaining allegations in this Paragraph.

504. Defendants knew that their use of Pepaj's image would cause consumer confusion as to Pepaj's sponsorship and/or employment at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

505. Upon information and belief, Defendants' use of Pepaj's image did in fact cause consumer confusion as to Pepaj's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

506. As a direct and proximate result of Defendants' actions, Pepaj has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Pepaj's image, likeness and/or identity, or how Pepaj's image, likeness and/or identity is being depicted by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

507. Further, any failure, neglect or default by Defendants will reflect adversely on Pepaj as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Pepaj to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Pepaj.

**ANSWER:** Defendants deny the allegations of this Paragraph.

508. Due to Polekatz's unauthorized use of Pepaj's image, Pepaj has been damaged in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

### PEPAJ COUNT III
**(Violation of Illinois Right of Publicity Act ("IRPA"),
765 ILCS 1075/10 *et seq. Right to Publicity*)**

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

### PEPAJ COUNT IV
**(Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)**

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

### PEPAJ COUNT V
**(Negligence and *Respondeat Superior*)**

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

*Plaintiff Jesse Golden's Causes of Action against Defendants
VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz*

### GOLDEN COUNT I
**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

556.     Golden re-alleges paragraphs 1-21, 27, 32-57, and 113–123 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

557.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Golden from the conduct described herein. Specifically, the Lanham Act prohibits a party

in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

**ANSWER:** Defendants deny the allegations of this Paragraph. Answering further, the statute speaks for itself.

558.    Defendants used Golden's image, likeness and/or identity as described herein without authority in order to create the perception that Golden worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

559.    Defendants' use of Golden's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

**ANSWER:** Defendants deny the allegations of this Paragraph.

560.    Defendants' unauthorized use of Golden's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Golden worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities and/or that Golden would participate in or appear at the specific events promoted in the advertisements.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes. Defendants admit that they used Exhibits A-J for advertising purposes to promote their business, but deny that it was unauthorized. Defendants deny all remaining allegations of this Paragraph.

561.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Golden worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

562.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Golden worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

563.    Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

**ANSWER:** Defendants admit that they use the Internet and social media to advertise, market and promote their business. Defendants deny the remaining allegations of this Paragraph.

564.    Defendants' unauthorized use of Golden's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

**ANSWER:** Defendants admit that they use images for advertising purposes to promote their business, but deny that it was unauthorized as they were purchased from Icon. Defendants deny all remaining allegations of this Paragraph.

565.    Defendants knew or should have known that their unauthorized use of Golden's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

**ANSWER:** Defendants deny the allegations of this Paragraph.

566.    Defendants' unauthorized use of Golden's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

567.    Defendants' wrongful conduct as described herein was willful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

568.     As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**ANSWER:** Defendants deny the allegations of this Paragraph.

569.     Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Golden of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Golden.

**ANSWER:** Defendants deny the allegations of this Paragraph.

570.     The method and manner in which Defendants used the image of Golden further evinces that Defendants were aware of or consciously disregarded the fact that Golden did not consent to Defendants' use of the image to advertise Defendants' businesses.

**ANSWER:** Defendants deny the allegations of this Paragraph.

571.     Defendants had caused irreparable harm to Golden, her reputation and brand by attributing to Golden the strip club lifestyle and activities at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

572.     Defendants' unauthorized use of Golden's image, likeness and/or identity directly and proximately caused and continue to cause damage to Golden in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

## GOLDEN COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

573.     Golden re-alleges paragraphs 1-21, 27, 32-57, and 113–123 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

574.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Golden from the conduct described herein

**ANSWER:** Defendants deny the allegations of this Paragraph.

575.    Defendants used Golden's image in order to create the false impression with the public that Golden either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

576.    Thus, this was done in furtherance of Defendants' commercial benefit.

**ANSWER:** Defendants admit that they utilize advertisements for commercial benefit; however, Defendants deny that they used the advertisements complained of by Plaintiffs in order to create a false impression with the public or that said use was improper. For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

577.    Golden is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Golden's images in magazines and online. By virtue of Golden's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Golden's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service

that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

578. Both Golden and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

**ANSWER:** Defendants admit that they compete in the entertainment industry. Defendants lack sufficient knowledge to admit or deny the remaining allegations of this Paragraph and accordingly, deny the same.

579. As such, an unauthorized use of Golden's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Golden. There is no doubt that Defendants' used Golden's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Golden's image and likeness was an existing intent to commercialize an interest in Golden's image and likeness

**ANSWER:** For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

580. Defendants' use of Golden's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived

Golden's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Golden, or sponsored, approved or associated with Golden.

**ANSWER:** Defendants deny the allegations of this Paragraph.

581.     Despite the fact that Defendants were at all times aware that Golden neither worked at, nor endorsed their strip club, nevertheless, they used Golden's image in order to mislead potential customers as to Golden's employment at and/or affiliation with Polekatz.

**ANSWER:** Defendants admit that Golden has never been employed by Defendants. Defendants have insufficient information to respond to the allegation as to whether Plaintiffs "endorsed" Polekatz.  Defendants deny all remaining allegations in this Paragraph.

582.     Defendants knew that their use of Golden's image would cause consumer confusion as to Golden's sponsorship and/or employment at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

583.     Upon information and belief, Defendants' use of Golden's image did in fact cause consumer confusion as to Golden's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

584.     As a direct and proximate result of Defendants' actions, Golden has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Golden's image, likeness and/or identity, or how Golden's image, likeness and/or identity is being depicted by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

585.     Further, any failure, neglect or default by Defendants will reflect adversely on Golden as the believed source of origin, sponsorship, approval or association thereof, hampering

efforts by Golden to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Golden.

**ANSWER:** Defendants deny the allegations of this Paragraph.

586.    Due to Polekatz's unauthorized use of Golden's image, Golden has been damaged in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

## GOLDEN COUNT III
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## GOLDEN COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## GOLDEN COUNT V
### (Negligence and *Respondeat Superior*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

### *Plaintiff Lina Posada's Causes of Action against Defendants VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz*

## POSADA COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

634.    Posada re-alleges paragraphs 1-21, 28, 25-50, and 124–134 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

635.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Posada from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

**ANSWER:** Defendants deny the allegations of this Paragraph. Answering further, the statute speaks for itself.

636.    Defendants used Posada's image, likeness and/or identity as described herein without authority in order to create the perception that Posada worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

637.    Defendants' use of Posada's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

**ANSWER:** Defendants deny the allegations of this Paragraph.

638.    Defendants' unauthorized use of Posada's image, likeness and/or identity as

described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Posada worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities and/or that Posada would participate in or appear at the specific events promoted in the advertisements.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes. Defendants admit that they used Exhibits A-J for advertising purposes to promote their business, but deny that it was unauthorized. Defendants deny all remaining allegations of this Paragraph.

639. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Posada worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or

Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

640. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Posada worked at or was otherwise

affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

641.    Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

**ANSWER:** Defendants admit that they use the Internet and social media to advertise, market and promote their business. Defendants deny the remaining allegations of this Paragraph.

642.    Defendants' unauthorized use of Posada's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

**ANSWER:** Defendants admit that they use images for advertising purposes to promote their business, but deny that it was unauthorized as they were purchased from Icon. Defendants deny all remaining allegations of this Paragraph.

643.    Defendants knew or should have known that their unauthorized use of Posada's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

**ANSWER:** Defendants deny the allegations of this Paragraph.

644.    Defendants' unauthorized use of Posada's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

645.    Defendants' wrongful conduct as described herein was willful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

646.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**ANSWER:** Defendants deny the allegations of this Paragraph.

647.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Posada of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada.

**ANSWER:** Defendants deny the allegations of this Paragraph.

648.    The method and manner in which Defendants used the image of Posada further evinces that Defendants were aware of or consciously disregarded the fact that Posada did not consent to Defendants' use of the image to advertise Defendants' businesses.

**ANSWER:** Defendants deny the allegations of this Paragraph.

649.    Defendants had caused irreparable harm to Posada, her reputation and brand by attributing to Posada the strip club lifestyle and activities at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

650.     Defendants' unauthorized use of Posada's image, likeness and/or identity directly and proximately caused and continue to cause damage to Posada in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

## POSADA COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

651.     Posada re-alleges paragraphs 1-21, 28, 25-50, and 124–134 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

652.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Posada from the conduct described herein.

**ANSWER:** Defendants deny the allegations of this Paragraph.

653.     Defendants used Posada's image in order to create the false impression with the public that Posada either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

654.     Thus, this was done in furtherance of Defendants' commercial benefit.

**ANSWER:** Defendants admit that they utilize advertisements for commercial benefit; however, Defendants deny that they used the advertisements complained of by Plaintiffs in order to create a false impression with the public or that said use was improper. For all of the

advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

655.    Posada is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Posada's images in magazines and online. By virtue of Posada's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Posada's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

656.    Both Posada and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

**ANSWER:** Defendants admit that they compete in the entertainment industry. Defendants lack sufficient knowledge to admit or deny the remaining allegations of this Paragraph and accordingly, deny the same.

657.    As such, an unauthorized use of Posada's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Posada. There is no doubt that Defendants' used Posada's image for advertising purposes, that is

to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Posada's image and likeness was an existing intent to commercialize an interest in Posada's image and likeness

**ANSWER:** For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

658. Defendants' use of Posada's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Posada's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Posada, or sponsored, approved or associated with Posada.

**ANSWER:** Defendants deny the allegations of this Paragraph.

659. Despite the fact that Defendants were at all times aware that Posada neither worked at, nor endorsed their strip club, nevertheless, they used Posada's image in order to mislead potential customers as to Posada's employment at and/or affiliation with Polekatz.

**ANSWER:** Defendants admit that Posada has never been employed by Defendants. Defendants have insufficient information to respond to the allegation as to whether Plaintiffs "endorsed" Polekatz. Defendants deny all remaining allegations in this Paragraph.

660. Defendants knew that their use of Posada's image would cause consumer confusion as to Posada's sponsorship and/or employment at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

661.    Upon information and belief, Defendants' use of Posada's image did in fact cause consumer confusion as to Posada's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

662.    As a direct and proximate result of Defendants' actions, Posada has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Posada's image, likeness and/or identity, or how Posada's image, likeness and/or identity is being depicted by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

663.    Further, any failure, neglect or default by Defendants will reflect adversely on Posada as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Posada to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Posada.

**ANSWER:** Defendants deny the allegations of this Paragraph.

664.    Due to Polekatz's unauthorized use of Posada's image, Posada has been damaged in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

## POSADA COUNT III
### (Violation of Illinois Right of Publicity Act ("IRPA"),
### 765 ILCS 1075/10 *et seq. Right to Publicity*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## POSADA COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light)*

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## POSADA COUNT V
### (Negligence and *Respondeat Superior*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

### *Plaintiff Tiffany Toth Gray's Causes of Action against Defendants*
### *VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz*

## GRAY COUNT I
### Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

712.    Gray re-alleges paragraphs 1-21, 29, 32-57, and 135–145 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

713.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Gray from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or activities . . .". 15 U.S.C. §1125(a)(1)(B).

**ANSWER:** Defendants deny the allegations of this Paragraph. Answering further, the statute speaks for itself.

714. Defendants used Gray's image, likeness and/or identity as described herein without authority in order to create the perception that Gray worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

715. Defendants' use of Gray's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

**ANSWER:** Defendants deny the allegations of this Paragraph.

716. Defendants' unauthorized use of Gray's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Gray worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities and/or that Gray would participate in or appear at the specific events promoted in the advertisements.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes. Defendants admit that they used Exhibits A-J for advertising purposes to promote their business, but deny that it was unauthorized. Defendants deny all remaining allegations of this Paragraph.

717.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Gray worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

718.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Gray worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

719.    Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

**ANSWER:** Defendants admit that they use the Internet and social media to advertise, market and promote their business. Defendants deny the remaining allegations of this Paragraph.

720.    Defendants' unauthorized use of Gray's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

**ANSWER:** Defendants admit that they use images for advertising purposes to promote their business, but deny that it was unauthorized as they were purchased from Icon. Defendants deny all remaining allegations of this Paragraph.

721.    Defendants knew or should have known that their unauthorized use of Gray's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

**ANSWER:** Defendants deny the allegations of this Paragraph.

722.    Defendants' unauthorized use of Gray's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

723.    Defendants' wrongful conduct as described herein was willful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

724.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**ANSWER:** Defendants deny the allegations of this Paragraph.

725.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Gray of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gray.

**ANSWER:** Defendants deny the allegations of this Paragraph.

726. The method and manner in which Defendants used the image of Gray further evinces that Defendants were aware of or consciously disregarded the fact that Gray did not consent to Defendants' use of the image to advertise Defendants' businesses.

**ANSWER:** Defendants deny the allegations of this Paragraph.

727. Defendants had caused irreparable harm to Gray, her reputation and brand by attributing to Gray the strip club lifestyle and activities at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

728. Defendants' unauthorized use of Gray's image, likeness and/or identity directly and proximately caused and continue to cause damage to Gray in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

## GRAY COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

729. Gray re-alleges paragraphs 1-21, 29, 32-57, and 135–145 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and re-allege their answers to Paragraphs 1-21, 29, 32-57 and 135-145, and incorporate them by reference as though fully set forth herein.

730. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Gray from the conduct described herein

**ANSWER:** Defendants deny the allegations of this Paragraph.

731. Defendants used Gray's image in order to create the false impression with the public that Gray either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

732.    Thus, this was done in furtherance of Defendants' commercial benefit.

**ANSWER:** Defendants admit that they utilize advertisements for commercial benefit; however, Defendants deny that they used the advertisements complained of by Plaintiffs in order to create a false impression with the public or that said use was improper. For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

733.    Gray is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Gray's images in magazines and online. By virtue of Gray's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Gray's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

734.    Both Gray and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

**ANSWER:** Defendants admit that they compete in the entertainment industry. Defendants lack sufficient knowledge to admit or deny the remaining allegations of this Paragraph and accordingly, deny the same.

735. As such, an unauthorized use of Gray's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Gray. There is no doubt that Defendants' used Gray's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Gray's image and likeness was an existing intent to commercialize an interest in Gray's image and likeness

**ANSWER:** For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

736. Defendants' use of Gray's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Gray's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Gray, or sponsored, approved or associated with Gray.

**ANSWER:** Defendants deny the allegations of this Paragraph.

737. Despite the fact that Defendants were at all times aware that Gray neither worked at, nor endorsed their strip club, nevertheless, they used Gray's image in order to mislead potential customers as to Gray's employment at and/or affiliation with Polekatz.

**ANSWER:** Defendants admit that Gray has never been employed by Defendants. Defendants have insufficient information to respond to the allegation as to whether Plaintiffs "endorsed" Polekatz. Defendants deny all remaining allegations in this Paragraph.

738.    Defendants knew that their use of Gray's image would cause consumer confusion as to Gray's sponsorship and/or employment at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

739.    Upon information and belief, Defendants' use of Gray's image did in fact cause consumer confusion as to Gray's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

740.    As a direct and proximate result of Defendants' actions, Gray has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Gray's image, likeness and/or identity, or how Gray's image, likeness and/or identity is being depicted by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

741.    Further, any failure, neglect or default by Defendants will reflect adversely on Gray as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Gray to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Gray.

**ANSWER:** Defendants deny the allegations of this Paragraph.

742.    Due to Polekatz's unauthorized use of Gray's image, Gray has been damaged in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

## GRAY COUNT III
### (Violation of Illinois Right of Publicity Act ("IRPA"),
### 765 ILCS 1075/10 *et seq. Right to Publicity*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## GRAY COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light)*

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## GRAY COUNT V
### (Negligence and *Respondeat Superior*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

*Plaintiff Jaclyn Swedberg's Causes of Action against Defendants*
*VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz*

## SWEDBERG COUNT I
### Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

790.    Swedberg re-alleges paragraphs 1-21, 30, 32-57, and 146–156 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

791.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Swedberg from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

**ANSWER:** Defendants deny the allegations of this Paragraph. Answering further, the statute speaks for itself.

792.    Defendants used Swedberg's image, likeness and/or identity as described herein without authority in order to create the perception that Swedberg worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

793.    Defendants' use of Swedberg's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

**ANSWER:** Defendants deny the allegations of this Paragraph.

794.    Defendants' unauthorized use of Swedberg's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Swedberg worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities and/or that Swedberg would participate in or appear at the specific events promoted in the advertisements.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes. Defendants admit that they used Exhibits A-J for advertising purposes to

promote their business, but deny that it was unauthorized. Defendants deny all remaining allegations of this Paragraph.

795.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Swedberg worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

796.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Swedberg worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

797.    Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from

different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

**ANSWER:** Defendants admit that they use the Internet and social media to advertise, market and promote their business. Defendants deny the remaining allegations of this Paragraph

798.  Defendants' unauthorized use of Swedberg's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

**ANSWER:** Defendants admit that they use images for advertising purposes to promote their business, but deny that it was unauthorized as they were purchased from Icon. Defendants deny all remaining allegations of this Paragraph.

799.  Defendants knew or should have known that their unauthorized use of Swedberg's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

**ANSWER:** Defendants deny the allegations of this Paragraph.

800.  Defendants' unauthorized use of Swedberg's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

801.  Defendants' wrongful conduct as described herein was willful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

802.  As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**ANSWER:** Defendants deny the allegations of this Paragraph.

803.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Swedberg of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Swedberg.

**ANSWER:** Defendants deny the allegations of this Paragraph.

804.    The method and manner in which Defendants used the image of Swedberg further evinces that Defendants were aware of or consciously disregarded the fact that Swedberg did not consent to Defendants' use of the image to advertise Defendants' businesses.

**ANSWER:** Defendants deny the allegations of this Paragraph.

805.    Defendants had caused irreparable harm to Swedberg, her reputation and brand by attributing to Swedberg the strip club lifestyle and activities at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

806.    Defendants' unauthorized use of Swedberg's image, likeness and/or identity directly and proximately caused and continue to cause damage to Swedberg in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

## <u>SWEDBERG COUNT II</u>
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

807.    Swedberg re-alleges paragraphs 1-21, 30, 32-57, and 146–156 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

808.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Swedberg from the conduct described herein

**ANSWER:** Defendants deny the allegations of this Paragraph.

809.     Defendants used Swedberg's image in order to create the false impression with the public that Swedberg either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

810.     Thus, this was done in furtherance of Defendants' commercial benefit.

**ANSWER:** Defendants admit that they utilize advertisements for commercial benefit; however, Defendants deny that they used the advertisements complained of by Plaintiffs in order to create a false impression with the public or that said use was improper. For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

811.     Swedberg is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Swedberg's images in magazines and online. By virtue of Swedberg's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Swedberg's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive.

As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

812.    Both Swedberg and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

**ANSWER:** Defendants admit that they compete in the entertainment industry. Defendants lack sufficient knowledge to admit or deny the remaining allegations of this Paragraph and accordingly, deny the same.

813.    As such, an unauthorized use of Swedberg's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Swedberg. There is no doubt that Defendants' used Swedberg's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Swedberg's image and likeness was an existing intent to commercialize an interest in Swedberg's image and likeness

**ANSWER:** For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

814.    Defendants' use of Swedberg's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived

Swedberg's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Swedberg, or sponsored, approved or associated with Swedberg.

**ANSWER:** Defendants deny the allegations of this Paragraph.

815.    Despite the fact that Defendants were at all times aware that Swedberg neither worked at, nor endorsed their strip club, nevertheless, they used Swedberg's image in order to mislead potential customers as to Swedberg's employment at and/or affiliation with Polekatz.

**ANSWER:** Defendants admit that Swedberg has never been employed by Defendants. Defendants have insufficient information to respond to the allegation as to whether Plaintiffs "endorsed" Polekatz.  Defendants deny all remaining allegations in this Paragraph.

816.    Defendants knew that their use of Swedberg's image would cause consumer confusion as to Swedberg's sponsorship and/or employment at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

817.    Upon information and belief, Defendants' use of Swedberg's image did in fact cause consumer confusion as to Swedberg's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

818.    As a direct and proximate result of Defendants' actions, Swedberg has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Swedberg's image, likeness and/or identity, or how Swedberg's image, likeness and/or identity is being depicted by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

819.    Further, any failure, neglect or default by Defendants will reflect adversely on Swedberg as the believed source of origin, sponsorship, approval or association thereof, hampering

efforts by Swedberg to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Swedberg.

**ANSWER:** Defendants deny the allegations of this Paragraph.

820. Due to Polekatz's unauthorized use of Swedberg's image, Swedberg has been damaged in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

## SWEDBERG COUNT III
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## SWEDBERG COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## SWEDBERG COUNT V
### (Negligence and *Respondeat Superior*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

### *Plaintiff Sarah Stage's Causes of Action against Defendants*
### *VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC both d/b/a Polekatz*

## STAGE COUNT I
### Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

868.     Stage re-alleges paragraphs 1-21, 31, 32-57, and 157–167 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

869.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Stage from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

**ANSWER:** Defendants deny the allegations of this Paragraph. Answering further, the statute speaks for itself.

870.     Defendants used Stage's image, likeness and/or identity as described herein without authority in order to create the perception that Stage worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

871.     Defendants' use of Stage's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Polekatz, and/or Polekatz's events and activities as described in this Complaint was false and misleading.

**ANSWER:** Defendants deny the allegations of this Paragraph.

872.     Defendants' unauthorized use of Stage's image, likeness and/or identity as

described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Stage worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities and/or that Stage would participate in or appear at the specific events promoted in the advertisements.

**ANSWER:** Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes. Defendants admit that they used Exhibits A-J for advertising purposes to promote their business, but deny that it was unauthorized. Defendants deny all remaining allegations of this Paragraph.

873.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Polekatz, as to the general quality of attendees and participants of Polekatz and in their events, as well as specifically whether Stage worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Polekatz's events and activities.

**ANSWER:** Defendants deny the allegations of this Paragraph.

874.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Stage worked at or was otherwise affiliated with Polekatz, endorsed Defendants' businesses, Polekatz or Polekatz's events and activities, or consented to or authorized Defendants' usage of her image in order to advertise,

promote, and market Defendants' businesses or Polekatz's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Polekatz, visit Polekatz, and participate in events at Polekatz and had a material effect and impact on the decision of members and prospective members and participants to join Polekatz, visit Polekatz and take part in the events at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

875.    Defendants' advertisements, promotions and marketing of Polekatz and events at Polekatz occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Polekatz events.

**ANSWER:** Defendants admit that they use the Internet and social media to advertise, market and promote their business. Defendants deny the remaining allegations of this Paragraph.

876.    Defendants' unauthorized use of Stage's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Polekatz and their activities and attracting clientele to Polekatz.

**ANSWER:** Defendants admit that they use images for advertising purposes to promote their business, but deny that it was unauthorized as it purchased the images from Icon. Defendants deny all remaining allegations of this Paragraph.

877.    Defendants knew or should have known that their unauthorized use of Stage's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

**ANSWER:** Defendants deny the allegations of this Paragraph.

878.    Defendants' unauthorized use of Stage's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

879.    Defendants' wrongful conduct as described herein was willful.

**ANSWER:** Defendants deny the allegations of this Paragraph.

880.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**ANSWER:** Defendants deny the allegations of this Paragraph.

881.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Stage of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Stage.

**ANSWER:** Defendants deny the allegations of this Paragraph.

882.    The method and manner in which Defendants used the image of Stage further evinces that Defendants were aware of or consciously disregarded the fact that Stage did not consent to Defendants' use of the image to advertise Defendants' businesses.

**ANSWER:** Defendants deny the allegations of this Paragraph.

883.    Defendants had caused irreparable harm to Stage, her reputation and brand by attributing to Stage the strip club lifestyle and activities at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

884.    Defendants' unauthorized use of Stage's image, likeness and/or identity directly and proximately caused and continue to cause damage to Stage in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

## STAGE COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

885.    Stage re-alleges paragraphs 1-21, 31, 32-57, and 157–167 above, and incorporates the same by reference as though fully set forth herein.

**ANSWER:** Defendants repeat and reallege their answers to the paragraphs referenced above as though fully set forth herein.

886.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Stage from the conduct described herein

**ANSWER:** Defendants deny the allegations of this Paragraph.

887.    Defendants used Stage's image in order to create the false impression with the public that Stage either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Polekatz, and thereby generate revenue for Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

888.    Thus, this was done in furtherance of Defendants' commercial benefit.

**ANSWER:** Defendants admit that they utilize advertisements for commercial benefit; however, Defendants deny that they used the advertisements complained of by Plaintiffs in order to create a false impression with the public or that said use was improper. For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

889.    Stage is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that

views Stage's images in magazines and online. By virtue of Stage's use of her image and identify to build her brand, she has acquired a distinctiveness through secondary meaning. Stage's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny the allegations of this Paragraph, and accordingly deny the same.

890.    Both Stage and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

**ANSWER:** Defendants admit that they compete in the entertainment industry. Defendants lack sufficient knowledge to admit or deny the remaining allegations of this Paragraph and accordingly, deny the same.

891.    As such, an unauthorized use of Stage's image to promote a strip club created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Stage. There is no doubt that Defendants' used Stage's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Stage's image and likeness was an existing intent to commercialize an interest in Stage's image and likeness

**ANSWER:** For all of the advertisements complained of by Plaintiffs in their Complaint and attached thereto as Exhibits A-J, Defendants contracted with Third Party Defendant Icon who

created and sold the advertisements to Defendants. Defendants deny the remaining allegations of this Paragraph.

892.    Defendants' use of Stage's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Stage's fans and present and prospective clients into believing that Polekatz's advertisements are endorsed by Stage, or sponsored, approved or associated with Stage.

**ANSWER:** Defendants deny the allegations of this Paragraph.

893.    Despite the fact that Defendants were at all times aware that Stage neither worked at, nor endorsed their strip club, nevertheless, they used Stage's image in order to mislead potential customers as to Stage's employment at and/or affiliation with Polekatz.

**ANSWER:** Defendants admit that Stage has never been employed by Defendants. Defendants have insufficient information to respond to the allegation as to whether Plaintiffs "endorsed" Polekatz.  Defendants deny all remaining allegations in this Paragraph.

894.    Defendants knew that their use of Stage's image would cause consumer confusion as to Stage's sponsorship and/or employment at Polekatz.

**ANSWER:** Defendants deny the allegations of this Paragraph.

895.    Upon information and belief, Defendants' use of Stage's image did in fact cause consumer confusion as to Stage's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

896.    As a direct and proximate result of Defendants' actions, Stage has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the

advertisements depicting Stage's image, likeness and/or identity, or how Stage's image, likeness and/or identity is being depicted by Defendants.

**ANSWER:** Defendants deny the allegations of this Paragraph.

897.    Further, any failure, neglect or default by Defendants will reflect adversely on Stage as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Stage to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Stage.

**ANSWER:** Defendants deny the allegations of this Paragraph.

898.    Due to Polekatz's unauthorized use of Stage's image, Stage has been damaged in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations of this Paragraph.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

## STAGE COUNT III
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/10 *et seq. Right to Publicity*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## STAGE COUNT IV
### (Violation of Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq. False Light*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## STAGE COUNT V
### (Negligence and *Respondeat Superior*)

Defendants filed a Motion to Dismiss this Count and accordingly, Defendants are not required to respond to this Count at this time.

## AFFIRMATIVE DEFENSES

NOW COMES Defendants VONCH, LLC d/b/a POLEKATZ CHICAGO GENTLEMEN'S CLUB ("Vonch") and POLEKATZ GENTLEMEN'S CLUB, LLC d/b/a POLEKATZ CHICAGO GENTLEMEN'S CLUB (collectively, "Polekatz" or the "Defendants"), by and through their attorneys Lavelle Law, Ltd., and for their Affirmative Defenses to Plaintiffs' Complaint, state as follows:

## FIRST AFFIRMATIVE DEFENSE

Defendants contracted with Third Party Defendant Icon Marketing, LLC d/b/a Ultra Blue Studios, Inc. ("Icon") for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes. Accordingly, any harm allegedly suffered by Plaintiffs was legally and proximately caused by Icon or by other individuals or entities beyond Defendants' control or supervision.

Defendants are not responsible or liable for the actions of any third party resulting in damage to Plaintiffs, including but not limited to Icon. From the date that Defendants purchased the images through the date that Defendants were served with the instant Complaint, Defendants had no knowledge of Plaintiffs' claims.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs are barred from pursuing their claims to the extent they released the photographs at issue for commercial use or failed to properly protect the images by placing them in the public sphere. Plaintiffs' claims are barred to the extent Plaintiffs disseminated said images for public use

without properly protecting the images. Plaintiffs' claims are barred to the extent that they voluntarily disseminated the images on social media outlets such as Facebook, Twitter and/or Instagram knowing that said images could and likely would be disseminated or used by the public. Plaintiffs' claims are barred to the extent that they contracted with or sold the images to third parties who then sold the images to Defendants resulting in Plaintiffs being barred by the doctrines of waiver and/or estoppel.

### THIRD AFFIRMATIVE DEFENSE

Defendants contracted with Third Party Defendant Icon for the advertisements, graphic designs, photographs and images attached to Plaintiffs' Complaint as Exhibits A-J. Icon created and sold each advertisement complained of by Plaintiffs to Defendants for advertising purposes in exchange for monetary consideration. Accordingly, Defendants are bona fide purchasers of the advertisements complained of in Plaintiffs' Complaint. Defendants had no knowledge of Plaintiffs' claims until they were served with the instant Complaint.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred as Defendants' use of the images in the advertisements is not likely to confuse members of the public, nor will the use create any misunderstanding as to the affiliation, connection or association of Plaintiffs with Defendants, or as to the origin or Plaintiffs' sponsorship, endorsement or approval by of Defendants' services. Plaintiffs' claims are barred as there is no deception created by the images in that it is likely to influence purchasing decisions. Plaintiffs' claims are barred because the images are unlikely to mislead, deceive or confuse the public.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs failed to mitigate their alleged damages or to take other reasonable steps to avoid or reduce their damages and therefore, Plaintiffs' damages, or a portion thereof, are the result of Plaintiffs' failure to mitigate their damages.

### SIXTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs allege damage to their reputation, marketability, profession, goodwill, character or the like or that the use of said images in the advertisements resulted in them being defamed, Plaintiffs are barred from recovering said damages to the extent that the images reflect or convey the truth.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to punitive damages, exemplary damages or attorneys' fees because Defendants did not act with malice, willfulness, bad faith or wanton disregard of Plaintiffs' rights. In fact, Defendants had no knowledge of Plaintiffs' claims until Defendants were served with the instant Complaint. Instead, Defendants purchased the advertisements attached to Plaintiffs' Complaint as Exhibit A-J from Icon who created and provided the same to Defendants in exchange for monetary consideration.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred to the extent that there is no actual evidence of injury due to Plaintiffs' failure to protect their images in the advertisements and Plaintiffs' continuous and voluntarily dissemination of the images or like images.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs lack standing to assert some or all of the claims asserted in the Complaint.

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the fair use doctrine.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs were not aggrieved by Defendants' conduct as alleged in the Complaint, nor did they suffer any damages as a result of the same as they voluntarily, continually and publicly disseminate identical or very similar images. Plaintiffs claims fail to the extent that they do not have a protectable ownership interest in the images.

## THIRTEENTH AFFIRMATIVE DEFENSE

To the extent any third party is found liable, Defendants shall be entitled to indemnification by the offending third party and shall not be responsible for any of the damages claimed in Plaintiffs' Complaint. To the extent that Defendants are held liable for any of Plaintiffs' claimed damages, said liability shall be limited to their equitable share determined in accordance with the relative culpability of each person or entity contributing to the total liability.

## FOURTEENTH AFFIRMATIVE DEFENSE

To the extent that the alleged damage was solely or partially caused by Plaintiffs or their agents, Plaintiffs and/or their agents shall be liable, in whole or in part, in an amount equal to their equitable share after determining the relative culpability of each person or entity who contributed to the damages.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred if they consented to the use of their images by gentlemen's clubs or other similar establishments.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred as Defendants' use of the images only enhances, and does not detract from the public image cultivated by Plaintiffs.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred to the extent that the public does not recognize Plaintiffs as a celebrity or otherwise and accordingly, there is no likelihood of confusion as to whether Plaintiffs endorsed or are affiliated with Defendants.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred to the extent that any statute of limitation period has passed.

WHEREFORE Defendants respectfully request that this Honorable Court enter judgment in their favor and against Plaintiffs and for any further relief that this Court deems proper and just.

## <u>DEMAND FOR JURY TRIAL</u>

Defendants demand a trial by jury.

Respectfully Submitted,
VONCH, LLC and
POLEKATZ GENTLEMEN'S CLUB, LLC

<u>/s/ Jennifer B. Tee</u>
By:    One of their Attorneys

Matthew Sheahin (ARDC#6243872)
Jennifer B. Tee (ARDC#6292487)
Tom Fox (ARDC#6326911)
Lavelle Law, Ltd.
141 W. Jackson Suite 2800
Chicago, IL 60604
Tele: (312) 888-4111
Facsimile: (312) 658-1430
msheahin@lavellelaw.com
jtee@lavellelaw.com
tfox@lavellelaw.com
\\thor.lavellelaw.local\Shared\2251-2500\2278\Hinton v. Vonch\Pleadings\Answer.ADs.Am.Compl.2.18.19.docx