**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | | |
|---|---|---|
| JESSICA HINTON A/K/A JESSA HINTON, CORA SKINNER, DESSIE MITCHESON, SARA UNDERWOOD, EVA PEPAJ, JESSE GOLDEN, LINA POSADA, TIFFANY TOTH GRAY, JACLYN SWEDBERG, and SARAH STAGE | ) ) ) ) ) ) ) | Case No. 1:18-cv-07221<br><br>Judge Manish S. Shah Presiding |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| VONCH, LLC d/b/a POLEKATZ CHICAGO GENTLEMEN'S CLUB; and POLEKATZ GENTLEMEN'S CLUB, LLC d/b/a POLEKATZ CHICAGO GENTLEMEN'S CLUB | ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS COUNTS III-V OF PLAINTIFFS' AMENDED COMPLAINT**

NOW COME Defendants VONCH, LLC d/b/a POLEKATZ CHICAGO GENTLEMEN'S CLUB ("Vonch") and POLEKATZ GENTLEMEN'S CLUB, LLC d/b/a POLEKATZ CHICAGO GENTLEMEN'S CLUB ("Polekatz") (collectively, the "Defendants"), by and through their attorneys Lavelle Law, Ltd., and for this Memorandum in support of their Motion to Dismiss Counts III-V of Plaintiffs JESSICA HINTON, CORA SKINNER, DESSIE MITCHESON, SARA UNDERWOOD, EVA PEPAJ, JESSE GOLDEN, LINA POSADA, TIFFANY TOTH GRAY, JACLYN SWEDBERG, and SARAH STAGE's (collectively, "the Plaintiffs") Amended Complaint (the "Amended Complaint"), state as follows:

**INTRODUCTION**

This Court should dismiss Counts III-V of Plaintiff's Amended Complaint with prejudice. Plaintiffs failed to file their initial Complaint in a timely manner and their claims under the Illinois

Right of Publicity Act are barred by the applicable statute of limitations. Moreover, Plaintiffs failed to properly allege causes of action for negligence and specifically failed to allege, nor can they, the existence of a duty from Defendant to Plaintiffs, which is fatal to their negligence claim.

On October 29, 2018, the Plaintiffs filed their initial Complaint with this Court. All individual Plaintiffs make the same allegations and claims except for differences in each individual's background and the date Defendants allegedly published her image. All Plaintiffs allege that Defendants used their images without consent or compensation, and that Defendants did so for a commercial purpose. Similarly, each of the ten Plaintiffs alleges five counts: Counts I and II allege violations of the Lanham Act, 15 U.S.C. § 1125(a), Counts III and IV allege violations of the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et. seq.* (the "Publicity Act"), and Count V alleges a cause of action seemingly sounding in negligence and respondeat superior. However, with respect to Counts III, IV and V, all Plaintiffs fail to state a cause of action for which they are entitled to legal relief, and this Court should dismiss those counts.

Defendants first raised these arguments in their original Motion to Dismiss, which was filed on December 14, 2018. Plaintiffs have sought to avoid dismissal by adding additional allegations to Counts III-V. However, these new allegations fall far short of addressing the defects in their initial Complaint.

Counts III and IV of the Amended Complaint are purportedly based on the Publicity Act. However, both claims fail with respect to all Plaintiffs due to their failure to meet the applicable statute of limitations. Specifically, the Publicity Act and all related Illinois common-law privacy torts have a one-year statute of limitations. This applies to Count III, which claims a cause of action under the Publicity Act for alleged unauthorized use of Plaintiffs' images. It also applies to Count IV, which claims a cause of action for misleading use of those images. Plaintiffs incorrectly present

Count IV as a Publicity Act claim, rather than an Illinois common-law "false light" privacy tort. However, under either scenario Count IV is subject to the same one-year statute of limitations.

None of the Plaintiffs have met that statute of limitations. The most recently alleged violation of the Publicity Act as pled in the Amended Complaint is October 11, 2017, when Defendants allegedly published Sarah Stage's image without her consent. This is over a year before Plaintiffs filed their initial Complaint, and accordingly, Ms. Stage is barred from relief under either the Publicity Act or Illinois common law. All other Plaintiffs alleged publications over a year before their initial Complaint was filed, so they are also barred from pursuing their claims. Further, the Amended Complaint does nothing to resolve these defects because Plaintiffs make only legal conclusions that quote case law in a misguided attempt to avoid clear Illinois precedent. Consequently, this Court should dismiss Counts III and IV from the Amended Complaint with respect to all Plaintiffs.

In addition, Plaintiffs fail to state a cause of action under Count V. This claim purportedly sounds in negligence and respondeat superior, but instead is an attempt to re-plead Plaintiffs' other counts under a different heading. This claim fails as Plaintiffs fail to allege the elements of a negligence claim - for example, inventing a fictitious "duty" that matches the obligations prescribed by the Lanham Act. Plaintiffs' conclusory claim of this duty has no support under Illinois law, and they undermine their own argument by alleging throughout the Amended Complaint that they had no business relationship with Defendants. Because Plaintiffs fail to allege more than conclusory recitations of the elements of a negligence cause of action, they fail to state a claim to which they are entitled legal relief under Count V, and this Court should dismiss those claims for all Plaintiffs.

Accordingly, this Court should dismiss with prejudice Counts III, IV and V from the Amended Complaint with respect to all Plaintiffs, given that they have already made one attempt to fix the deficiencies in these counts, and will clearly be unable to adequately plead these claims.

## RELEVANT LAW

Under the Federal Rules of Civil Procedure, a plaintiff is required to include in her complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." _See_ Fed. R. Civ. P. 8(a). If this requirement is not met, the defendant may move to dismiss a claim against it by asserting as a defense that the plaintiff has failed "to state a claim upon which relief can be granted." _See_ Fed. R. Civ. P. 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" _See Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009), quoting _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 570 (2007). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level," and a court does not need to accept as true legal conclusions couched as a factual allegations. _See Twombly_, 550 U.S. at 555 (citation omitted). Additionally, formulaic recitations of the elements of a cause of action do not suffice. _Id._ Instead, a plaintiff must assert "specific facts to ground [her] legal claims." _See Brooks v. Ross_, 578 F.3d 574, 581 (7th Cir. 2009). Pleadings that do not allege facts to support each element of a claim must be dismissed for failure to make the "showing" required by Federal Rule of Civil Procedure 8. _Id._

## ARGUMENT

**I.    Counts III and IV should be dismissed with prejudice with respect to all Plaintiffs because they failed to meet the statute of limitations on these claims.**

Plaintiffs' state-law claims as alleged in Counts III and IV fail to state a cause of action because even assuming the factual allegations in those counts are true, none of the Plaintiffs are

entitled to legal relief. Illinois law is clear that these claims are subject to a one-year statute of limitations. While the initial Complaint was filed on October 29, 2018, the most recently alleged publication of Plaintiffs' images was October 11, 2017, over a year before Plaintiffs initiated this lawsuit. Plaintiffs' own allegations show they do not have a viable claim under Counts III and IV, and the Court should dismiss those counts for all Plaintiffs.

"When the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *See Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). Under Illinois law, "privacy torts," including misappropriation of one's likeness and publicly placing another in a false light, are subject to a one-year statute of limitations. *See* 735 ILCS 5/13-201 (saying that "actions for slander, libel, or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued"). The Publicity Act is also subject to this statute of limitations because in enacting it, the legislation codified one of the common-law privacy torts: appropriation of one's likeness. *See Blair v. Nev. Landing P'ship*, 369 Ill. App. 3d 318, 323 (2nd Dist. 2006) (finding that the one-year statute of limitations that pertained to common-law privacy torts also applied to the Publicity Act).

Here, Count III alleges that Defendants used Plaintiffs' images for a commercial benefit without their consent, and Count IV alleges that Defendants' use of Plaintiffs' images casts them in a "false light." Plaintiffs invoke the Publicity Act for both claims.

However, Plaintiffs have mispled Count IV in labelling it as an action under the Publicity Act. Count IV alleges that Defendants' use of Plaintiffs' images cast them in a "false light" in that consumers may believe Plaintiffs either work for Defendants or endorse their business. *See, e.g.,* Amended Complaint at ¶ 223. This falls under the rubric of a common-law false light claim. *See*

*Lovgren v. Citizens First Nat'l Bank*, 126 Ill. 2d 411, 418 (1989) (saying this cause of action requires a plaintiff to show the defendant placed her in a false light before the public and that this false light would be highly offensive to a reasonable person).

This specific privacy tort is not covered by the Publicity Act. *See Blair*, 369 Ill. App. 3d at 322-23. In *Blair*, the court noted there were historically four common-law privacy torts, including "an appropriation of another's name or likeness" and "publicity that reasonably places another in a false light before the public." *Id.* at 322. However, the Publicity Act only replaced "the common-law tort of appropriation of likeness" and "did not affect the other three common-law privacy torts." *Id.* at 323; *see also* 765 ILCS 1075/60 (saying the Publicity Act does not affect any common-law rights that existed before its enactment). In any case, Count IV fails under either scenario, as it is subject to a one-year statute of limitations regardless of whether it is a Publicity Act claim or a common-law false light claim. *See Blair*, 369 Ill. App. 3d at 322-23.

Here, none of the Plaintiffs have met the one-year statute of limitations. Each Plaintiff alleges that Defendants published her image without consent, but the most recently alleged publication of each Plaintiff's image occurred over a year before they filed the initial Complaint:

| **Plaintiff** | **Most Recently Alleged Publication of Plaintiff's Image** | **Paragraph of Amended Complaint** |
|---|---|---|
| Jessica Hinton | December 2, 2016 | 60 |
| Cora Skinner | December 2, 2016 | 71 |
| Dessie Mitcheson | October 29, 2015 | 82 |
| Sara Underwood | October 29, 2015 | 93 |
| Eva Pepaj | March 16, 2017 | 104 |
| Jesse Golden | October 24, 2016 | 115 |

| Lina Posada | March 8, 2016 | 126 |
|---|---|---|
| Tiffany Toth Gray | December 17, 2015 | 137 |
| Jaclyn Swedberg | June 2, 2016 | 148 |
| Sarah Stage | October 11, 2017 | 159 |

As shown above, October 11, 2017 (Sarah Stage) is the most recent publication of any of Plaintiffs' images as alleged in the Amended Complaint. *See* Amended Complaint at ¶ 159. However, the initial Complaint was filed on October 29, 2018, over a year after this instance. All other Plaintiffs have a most recently alleged publication date before October 11, 2017, and similarly fail to meet the statute of limitations. Accordingly, none of the Plaintiffs are entitled to legal relief under Counts III or IV.

Plaintiffs appear to recognize this obstacle, and attempt to circumvent it by labelling Defendants' alleged publication of their images as "continuous or ongoing." Unfortunately, Illinois law directly contradicts their position.

Under Illinois law, a statute of limitations generally begins to run "when facts exist that authorize one party to maintain an action against another." *See Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 (2003). In some circumstances "where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Id.* (quotation omitted). However, "a continuing violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Id.* When there is a "single overt act from which subsequent damages may flow," the statute of limitations begins when the defendant first created an injury, even when that injury is continuous in nature. *Id.* at 279; *see also Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 615-16 (7th Cir.

2013) (saying that this rule applies to internet postings, and is particularly important in that context due to the greater potential for "endless retriggering of the statute of limitations").

Illinois courts have applied this rule to bar Publicity Act claims when the first publication of an offending image occurred over a year before the plaintiff filed suit, even when the defendant reused that image in various mediums over a length of time, including within a year of the suit. *See Blair*, Ill. App. 3d at 323-24. In *Blair*, the court noted the applicable one-year statute of limitations for Illinois common-law privacy torts, as well as claims under the Publicity Act. *Id.* at 322-23. The court proceeded to find that the plaintiff had failed to meet the statute of limitations, and entered summary judgment against him. *Id.* at 327-28. Specifically, his cause of action accrued when "the objectionable material was first published." *Id.* at 323. Because the material at issue was first published in 1995, the statute of limitations expired in 1996, well over a year before the plaintiff brought suit. *Id.* at 327.

More importantly, the *Blair* court rejected the plaintiff's argument that the tort at issue was a "continuing or repeated injury." The plaintiff had not suffered harm from "continuing unlawful acts or conduct," but rather "continual ill effects from an initial violation." *Id.* at 323-24. Despite the fact that the defendant had displayed the same picture of the plaintiff in various locations in its casino at different times, including a year before the suit began, the defendant had only made one "overt act" in using the picture to advertise its business. *Id.* at 324; *see also Martin v. Living Essentials*, 160 F. Supp. 3d 1042, 1051 n.4 (N.D. Ill. 2016) (saying that the repeated airing of a commercial is a "single overt act"). The court noted that if it held otherwise, it would cause an endless tolling of the statute of limitations. *See Blair*, Ill. App. 3d at 324.

Here, Defendants' alleged liability under Counts III and IV stem from a publication of Plaintiffs' images on social media, and Plaintiffs advance precisely the same argument rejected by

the *Blair* court. The statute of limitations for Plaintiffs tolled on the date their images were first published. Any injuries Plaintiffs suffered are "continual ill effects" resulting from single overt acts of publication, rather than continuous violations. Indeed, Plaintiffs' argument is even weaker than the plaintiff's in *Blair*, because the "continuous and ongoing harm" they allege is merely that consumers can still access the publications at issue, while the plaintiff's image in *Blair* was physically displayed in different locations at different times.

Finally, Plaintiffs' Amended Complaint does nothing to address those defects. In a blatant attempt to circumvent *Blair*'s effect of barring them from legal relief, Plaintiffs advance new allegations parroting the situations the *Blair* court stated could allow a claim to proceed: if a publication is "hidden, inherently undiscoverable, or inherently unknowable," or is "altered so as to reach a new audience or promote a different product." *See Blair*, 369 Ill. App. 3d at 325-26. Plaintiffs merely recite *Blair*'s language, and provide no factual allegations, only bare legal conclusions that the statute of limitations should not apply to them. *See, e.g.* Amended Complaint at ¶¶ 204-06.

To the extent Plaintiffs allege Defendants reposted the same material, the Northern District has already rejected the proposition that a later repost of the same material is a "republication," and said it does not toll the statute of limitations. *See Kiebala v. Boris*, No. 1:16 CV 7478, 2017 WL 590287, at *4 (N.D. Ill. 2017). In *Kiebala*, the plaintiff unsuccessfully argued that an "updated" internet posting was a republication because it was more accessible to potential customers. *Id.* The court flatly disagreed with this proposition and dismissed the plaintiff's claim: because the newer post contained identical information to the older one, it was aimed at the same audience, and had no effect on the statute of limitations. *Id.* Accordingly, any reposts of the same material alleged by Plaintiffs fail to toll the statute of limitations.

Insofar as Plaintiffs allege Defendants' postings at issue were "altered" in a way to reach a new audience or promote a different product, their claim is patently implausible. Each post attached as an exhibit to the Amended Complaint is for a specific event at a specific date. *See, e.g.* Amended Complaint, Ex. A. The audience and product at issue is the same for all postings: current and prospective clients for Defendants' establishment. Plaintiffs make no attempt to explain how an ad for a specific event could be altered to reach a new audience or market a different product.

Instead, Plaintiffs appear to allege their images were re-used in ads for different events held by Defendants, meaning those allegations collapse into their claim that there *may* be other social media posts by Defendant that satisfy the statute of limitations. However, Plaintiffs again fail to make a plausible claim as required by the Federal Rules of Civil Procedure. Indeed, their own Complaint undermines this argument by presenting social media posts from as early as 2015. Plaintiffs cannot argue it is plausible to present evidence of social media posts from 2015 and then assert that posts from after October 29, 2017 are "inherently undiscoverable." In fact, it is nonsensical to suggest these alleged newer posts, available to the public, are being "pushed down in time from immediate visibility" to a greater extent than posts from 2015. *See, e.g.* Amended Complaint at ¶ 204.

Simply stated, Plaintiffs cannot credibly argue their statute of limitations continually tolls each day the same posting persists on Defendants' social media. Nor do they make any other plausible claim that the statute of limitations should not apply to them. Plaintiffs failed to file Counts III and IV of their initial Complaint before the statute of limitations expired on those claims, and they are barred from seeking relief on those causes of action. Accordingly, this Court should dismiss those claims with prejudice.

II.     **This Court should dismiss Count V with respect to all Plaintiffs because it fails to state a prima facie case for negligence or respondeat superior.**

In the Amended Complaint, each Plaintiff lists Count V in what appears to be a final attempt to obtain legal relief. However, this claim fails for all Plaintiffs because they make only conclusory statements reciting the elements of negligence, as well as unsupported claims that Defendants owe a duty towards Plaintiffs and "consumers at large." *See, e.g.* Amended Complaint at ¶¶ 240-41. Plaintiffs' only allegation of the duty Defendants owe towards them is that they should ensure their advertising does not infringe upon their rights. Plaintiffs fall far short of pleading an actual negligence claim, and instead re-plead their prior claims under a different heading. Accordingly, this Court should dismiss Count V with respect to all Plaintiffs.

To plead a cause of action for negligence, a plaintiff must plead that (1) "the defendant owed a duty of care to the plaintiff," (2) "the defendant breached that duty," (3) that the breach of that duty was the "proximate cause of the plaintiff's injury" and (4) that the plaintiff suffered an injury. *See Cowper v. Nyberg*, 2015 IL 117811, at 13 (2015).

A negligence claim should be dismissed if it fails to "fit within the contours" of that legal theory. *See Boykin Anchor Co., Inc. v. AT&T Corp.*, 825 F. Supp. 2d 706, 712 (E.D. N.C. 2011). In *Boykin*, the plaintiff filed a libel claim but also attempted to argue the defendants were negligent in making false statements and failing to retract them. *Id.* at 711-12. The court found that the complaint failed to allege a negligence claim, and noted that the cause of action at issue fit within the confines of defamation. *Id.* Further, there was no distinct duty to avoid making false statements. *Id.* at 712. The court rejected the plaintiff's effort to "recast" his action as a negligence claim, and dismissed that count. *Id; see also Edmondson v. Caliente Resorts, LLC,* No. 8:15 CV 2672-T-23TBM, 2016 WL 1756070, at *2 (M.D. Fla. 2016) (dismissing a negligence claim when plaintiffs

failed to show a duty, and only repeated their Lanham Act allegations that defendants unlawfully used their image).

Here, Plaintiffs have committed that exact error: they re-allege Defendants' conduct that relates to their Lanham Act claims, recite the elements of negligence, but wholly fail to make factual allegations meeting those elements. This is particularly clear where Plaintiffs claim Defendants owe a duty both to them and the broader public. *See, e.g.* Amended Complaint at ¶¶ 240-41. Insofar as Plaintiffs argue Defendants have a duty towards "consumers at large," they make no explanation as to how they have standing to make a negligence claim on the public's behalf. Instead, Plaintiffs only highlight how they have conflated this count with their prior claims, and have failed to present a genuine negligence claim.

Additionally, Plaintiffs do not state any specific duty Defendants owe them, much less allege facts establishing that duty. Nor could they – throughout the Amended Complaint, Plaintiffs insist there was never any business relationship between them and Defendants. Count V does not attempt to plead any such relationship. Rather, the only duty it states is that Defendants should have "ensure[d] that their advertising and promotional materials and practices did not infringe on [Plaintiffs'] property and publicity rights." *See, e.g.* Amended Complaint, ¶ 240. Put another way, Plaintiffs allege Defendants were negligent because they are allegedly liable under the Lanham Act. This does not come close to meeting the pleading standard required for Count V to survive Defendants' Motion to Dismiss.

To survive a motion to dismiss, a plaintiff "must proffer some legal basis to support his cause of action." *See County of McHenry v. Insurance Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006). Plaintiffs offer no authority for the proposition that Defendants owe a duty of care that

matches their obligation to comply with the Lanham Act. Simply stated, Plaintiffs' negligence claim is their earlier Lanham Act claim in disguise, and this Court should dismiss it.

Indeed, a similar claim involving one of the same Plaintiffs and litigated by Plaintiffs' counsel failed at this stage. *See Gibson v. Resort at Paradise Lakes, LLC*, No. 8:16 CV 791-T-36AAS, 2017 WL 3421532, at *7 (M.D. Fla. 2018). In *Gibson*, the plaintiffs alleged that the defendants misappropriated their images and created a false impression that they endorsed the defendant's business. *Id.* at *1-2. The court dismissed the plaintiffs' counts for negligence and respondeat superior. *Id.* at *1. In fact, the plaintiffs conceded that the court should dismiss those counts. *See* Response to Motion to Dismiss in *Gibson*, attached hereto as **Exhibit 1**, Pg. 3. The basic elements of negligence are the same under Florida and Illinois law, and the pleading standard under Federal Rule of Civil Procedure 8 has certainly not changed. Because Plaintiffs fail to plead any duty owed by Defendants towards them, and also fail to sufficiently plead the other elements of a negligence claim, this Court should dismiss Count V of the Amended Complaint with respect to all Plaintiffs with prejudice.

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Court dismiss with prejudice Counts III, IV and V of the Amended Complaint with respect to all Plaintiffs pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully Submitted,
VONCH, LLC and POLEKATZ GENTLEMEN'S CLUB, LLC

/s/ Matthew J. Sheahin
By:    One of their Attorneys

Matthew Sheahin (ARDC # 6243872)
Jennifer B. Tee (ARDC # 6292487)
Tom Fox (ARDC # 6326911)
Lavelle Law, Ltd.
141 W. Jackson Suite 2800
Chicago, IL 60604
Tele: (312) 888-4111
Facsimile: (312) 658-1430
msheahin@lavellelaw.com
jtee@lavellelaw.com
tfox@lavellelaw.com

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CIELO JEAN GIBSON, DESSIE
MITCHESON, IRINA VORONINA, JOHN
COULTER, and MAYSA QUY,

                    Plaintiffs,

               - against -

RESORT AT PARADISE LAKES, LLC d/b/a
PARADISE LAKES RESORT d/b/a
PARADISE LAKES and JERRY L.
BUCHANAN,

                    Defendants.

Case No. 8:16-cv-00791-CEH-UAM

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs Cielo Jean Gibson ("Gibson"), Dessie Mitcheson ("Mitcheson"), Irina

Voronina ("Voronina"), John Coulter ("Coulter"), and Maysa Quy ("Quy") (collectively,

the "Plaintiffs" or "Models") file this Response in Opposition to Motion to Dismiss First

Amended Complaint filed by Defendants Resort at Paradise Lakes, LLC doing business as

Paradise Lakes Resort also doing business as Paradise Lakes ("Paradise Lakes") and Jerry

L. Buchanan ("Buchanan") (collectively "Defendants"). In support, Plaintiffs state:

## INTRODUCTION

Defendants move to dismiss as to Counts IV (Florida's Deceptive and Unfair Trade

Practices Act), IX (Fraudulent Misrepresentation), X (Negligence), XI (*Respondeat*

*Superior*), and XII (Lanhma Act- False Endorsement) for failure to state a cause of action

and standing and to dismiss Counts II (Fla. Stat. 540.08- Unauthorized Publication of Name

of Likeness), VII (Unlawful Conversion), VIII (Unfair Competition), and X (Negligence)

1

for Plaintiffs' reservation of right to seek punitive damages.

Defendants' Motion to Dismiss is entirely without merit. The Court need only examine the four corners of the First Amended Complaint, along with any Exhibits appended thereto, in order to conclude that each and every claim asserted by each and every Plaintiff survives Defendants' Motion to Dismiss. As a preview:

**Defendant Jerry Buchanan:** Defendants moves to dismiss Plaintiffs' First Amended Complaint against Defendant Buchanan in his individual capacity. However, Plaintiffs' First Amended Complaint clearly establishes that Defendant Buchanan is individually liable for false advertising, misappropriation of Plaintiffs' images and theft of Plaintiffs' images for personal and commercial financial gain.

**Punitive Damages (Counts II, VII, VIII and X of the First Amended Complaint):** Defendants jump the gun and challenge Plaintiffs' reservation of rights to seek punitive damages as if Plaintiffs were already asserting punitive damages claims. Plaintiffs' Prayer for Relief specifically provides, "16. Plaintiffs reserve the right to amend the pleadings to include punitive damages pursuant to Fla. Stat. § 768.72." (Doc. 31, p. 132.)

**Count IV of the First Amended Complaint:** Defendants challenge Count IV (Florida's Deceptive and Unfair Trade Practices Act violation) of Plaintiffs' First Amended Complaint on grounds that Plaintiffs are not "consumers" that FDUTPA was designed to protect (Doc. 34, pp. 5-6), a plain misreading of relevant case law. Defendants further argue that only actual damages are permitted to be asserted under FDUPTA but Plaintiffs also impermissibly asserted consequential damages as well as damages to their professional reputation. (*Id.* at p. 7.) However, Florida legislature's amendment of section 501.211 of

2

Florida Statutes in 2001 and replacement of the word "consumer" allowed for an action to brought by a "person" suffering a loss. Thus, non-consumers now have an undeniable statutory right to seek monetary damages for violation of the Act and the Plaintiffs in this action have standing to pursue a FDUPTA claim. In addition, "[i]t appears that the legislature's choice of the word "anyone" in § 501.211(1), instead of the word "consumer" … seems deliberate and implies that the scope of the injunctive remedy is greater than the actual damage remedy." *Kliger v. Weekly World News, Inc.*, 747 F.Supp. 1477, 1480 (S.D. Fla. 1990). As a result, Defendants' Motion to Dismiss fails as to Count IV.

**Count IX of the First Amended Complaint:** Upon further discovery and review of the Fraudulent Misrepresentation count alleged by Plaintiffs in their First Amended Complaint, Plaintiffs concede Defendants' arguments regarding this claim and do not object to dismissing this claim.

**Counts X and XI of the First Amended Complaint:** Upon further discovery and review of the Negligence and Violation of *Respondeat Superior* Doctrine counts alleged by Plaintiffs in their First Amended Complaint, Plaintiffs concede Defendants' arguments regarding these two claims and do not object to dismissing said claims.

**Count XII of the First Amended Complaint:** Defendants move to dismiss Count XII (violation of Lanham Act, Subsection 1125 (a)(1)(A)- False Endorsement) because Florida law does not recognize an independent cause of action for false endorsement. (Doc. 34, p. 2.) Defendants have completely mischaracterized the law and failed to comprehend that a violation of the Lanham Act is a violation of a federal statute not a state claim.

3

## FACTS

This case arises from Defendants' unauthorized use and theft of Plaintiffs' images and likenesses for the purpose of advertising, solicitation, and promotion of their swingers club and resort, Paradise Lakes. (Doc. 31, at ¶¶ 1, 7, 40, 43 (Gibson), 54 (Mitcheson), 65-66 (Voronina), 79 (Coulter), 90 (Quy).) Plaintiffs are all highly successful and professional models who make a living by promoting their images and likenesses to various clients and take great pride in their reputation in the modeling industry. At no time did Plaintiffs give Defendants permission to use their images for any marketing and promotional materials, nor did they consent to being associated with Defendants' swingers club and resort. *Id*. at ¶ 4. Further, at no time did Defendants contact Plaintiffs either directly or indirectly, to request permission to use Plaintiffs' images. Plaintiffs have never had any relation or contract with Defendants or Defendants' employees or representatives. *Id*. at ¶ 5. Plaintiffs' images were removed from their original photographs and plastered all over Defendants' sexually explicit flyers and promotional material. (*See e.g.,* Doc. 31 at ¶ 43 (Gibson).)[1]

Defendants' promotional material attached to the First Amended Complaint as Exhibits A-E contains lewd, sexually explicit, and lascivious language **implying** that Plaintiffs are swingers, employees, or endorsers of Defendants' swingers club and resort. *Id*. As a direct and proximate result of Defendants' unauthorized publication of Plaintiffs' images, Defendants received benefits, including but not limited to monetary payments, increased promotional, advertising, marketing, and other public relations benefits, notoriety, and publicity, as well as an increase in business revenue, profits, proceeds, and income, and accepted those benefits while the Plaintiffs failed to receive benefits for the

---

[1]   Each Plaintiff pleads the same allegation and the cited section is an example of similar allegations for each of the other Plaintiffs for purposes of expediency and to comport with the page limitation.

use of their images to which they are entitled to. *Id.* at ¶ 11.

Defendants knew that Plaintiffs' images were not pictures of any of their employees, as neither Defendants not any agent acting under Defendants' direction sought consent from Plaintiffs to use their images; and none of the Plaintiffs gave Defendants permission to use the images. Defendants knows full well who their employees and/or contractors are and were aware that Plaintiffs were not their employees and/or contractors. (*See e.g.,* Doc. 31 at ¶ 241 (Gibson).)

## ARGUMENT

### A. Standard of Review

A complaint is only required to contain "a short statement of the claim showing that the pleader is entitled to relief." *ADT LLC v. Vision Security, LLC*, No. 13-81197-CV, 2014 WL 3764152, at * 3 (S.D. Fla. July 30, 2014). Accordingly, to survive a motion to dismiss under *Fed. Rule Civ. Pro.* 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). A claim is facially plausible where the claimant pleads sufficient factual content to permit the court to reasonably infer that a defendant is liable for the conduct alleged. *Id.* Therefore, a motion to dismiss should be denied "where the pleading asserts non-conclusory, factual allegations that, if true, would push the claim 'across the line from conceivable to plausible.'" *Id.* As such, a court can only consider what is contained within the four corners of the complaint – it must "limit its consideration to the pleadings and exhibits attached to the pleadings, *Gulfstream Media Group, Inc. v. PD Strategic Media, Inc.*, No. 12-62056-CIV, 2013 WL 1891281, at * 3 (S.D. Fla. May 6, 2013)", and "accept the plaintiff's allegations as true and evaluate all plausible inferences from those facts in favor of the plaintiff." *Id.*

**B. Defendant Buchanan is individually liable for false advertising, misappropriation of Plaintiffs' images and theft of Plaintiffs' images for personal and commercial financial gain.**

Defendants move to dismiss Buchanan from the suit because they believe he was named only because he had "operational and managerial control over Paradise Lakes." (Doc. 34, p. 4.) On the contrary, and as alleged in Plaintiffs' First Amended Complaint, Defendant Buchanan "has, and during all times relevant to the allegations raised [in the First Amended Complaint] had, operational and managerial control and responsibility over the business operations of, and decision-making authority for, Paradise Lakes, *including decisions relating to Paradise Lakes's promotional, advertising, marketing and endorsement activities such as those detailed in [the] First Amended Complaint*." (Doc. 31, ¶ 26) (emphasis added). In other words, Plaintiffs sued Defendant Buchanan in his personal capacity based on his independent actions.

Further, "[w]hile it is true that a director or an officer is not personally liable for any act or failure to act regarding corporate management or policy, it does not follow that the officer or individual is shielded from accountability for tortious conduct. In fact, the opposite is true. Florida courts uniformly hold that if an officer, director, or agent commits or participates in a tort, whether or not his actions are by authority of the corporation or in furtherance of the corporate business, that individual will be liable to third persons injured by his actions, regardless of whether liability attaches to the corporation for the tort. *See First Fin. USA, Inc. v. Steinger,* 760 So.2d 996, 997–98 (Fla. 4th DCA 2000) *\*1105* (holding that president of corporation was not shielded from liability for fraudulent conduct); *Scutieri v. Miller,* 605 So.2d 972, 973 (Fla. 3d DCA 1992) (holding that corporate officers could be liable for defamation even though claim against corporation had been settled). That is, officers, directors, and agents of

a corporation can be personally liable for committing torts when the tort is committed within the scope of their corporate employment." *Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co.,* 125 F.Supp.2d 1093, 1104-05 (S.D. Fla. 2000). Thus, it is clear from the four corners of the First Amended Complaint that Defendant Buchanan was responsible for the advertising and marketing practices of Paradise Lakes which caused injury to Plaintiffs. Defendant Buchanan was personally liable for participating and in the decision making of the advertisements that went out to the public.

More importantly, "the individual liability standard does not ask whether the individual participated or engaged in some infringing act; instead, it asks whether he actively participated as a moving force in the *decision* to engage in the infringing acts, or otherwise caused the infringement as a whole to occur." *Chanel, Inc. v. Italian Activewear of Fla., Inc.,* 931 F.2d 1472, 1478 n. 8 (11th Cir.1991) (emphasis in original). Specifically, a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement." *Babbit Electronics, Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1184 (11th Cir.1994). In sum, Defendant Buchanan was the moving, active and conscious force behind Defendant Paradise Lakes' infringement. Because the First Amended Complaint alleges that Defendant Buchanan authorized the acts of false advertising, which are the basis of the corporation's liability, it is sufficient to subject him to personal liability. For those reasons, Defendant Buchanan is a proper party to the suit.

### C. Plaintiffs' reservation of rights to seek punitive damages after a proffer of evidence does not violate Fla. Stat. § 768.72.

In their Motion to Dismiss Defendants are asking this Court to dismiss Counts II, VII, VIII, and X due to Plaintiffs' claims for punitive damage. (Doc. 34, p. 2.) However,

in their First Amended Complaint for Damages, Plaintiffs only made ***a reservation of***

***rights*** to seek punitive damages and put Defendants on notice that Plaintiffs will ask for a

leave of Court to amend their First Amended Complaint to specifically ask for punitive

damages after making a proffer of evidence. (Doc. 31, p. 132.) Nothing in Plaintiffs'

Amended Complaint indicates that Plaintiffs are currently making a request for punitive

damages without any proffer of evidence. As such, Plaintiffs' reservation of rights does not

violate Fla. Stat. § 768.72.

Even so, and as Defendants correctly noted in their Motion to Dismiss, under

Florida Statute section 768.72, a punitive damages claims can be supported by a proffer of

evidence, but "(a) formal evidentiary hearing is not mandated by the statute." *Solis v.*

*Calvo*, 689 So.2d 366 (Fla. App. 3 Dist. 1997). However, conclusory allegations in the

complaint are insufficient to entitle a claimant to recover punitive damages. Instead, a

plaintiff must plead specific acts committed by a defendant. *See T.W.M. v. American*

*Medical Sys., Inc.*, 886 F.Supp. 842, 845 (N.D.Fla.1995); *Bankest Imports, Inc. v. ISCA*

*Corp.*, 717 F.Supp. 1537, 1542-43 (S.D.Fla.1989).  Plaintiffs most certainly applied these

legal standards, when they pleaded specific acts committed by the Defendants that provided

a reasonable basis to support their ***intent*** to seek punitive damages.

Specifically, each Plaintiff alleged the following in their First Amended Complaint:

 "Defendants intentionally or, at a minimum, recklessly published, printed,
displayed, or otherwise publicly disseminated or used [Plaintiff's] image,
likeness and/or identity without her express written or oral consent, for
purposes of trade or for other commercial or advertising purposes as
detailed in this First Amended Complaint." (*See e.g.,* Doc. 31 at ¶ 130
(Gibson)) (Count II) and

"…[Plaintiff] is informed and believes and thereon alleges that in engaging
in the conduct described above, Defendants acted with oppression, fraud,
and/or malice. Defendants' conduct has been despicable and taken in

8

conscious disregard of [Plaintiff's] rights." (*See e.g.,* Doc. 31 at ¶ 190 (Gibson) (Count VII); 204 (Gibson) (Count VIII); and 221 (Gibson) (Count X).)

Lastly, Plaintiffs more that sufficiently identified and specified where and when each image was used (Doc. 31, at ¶¶ 43 (Gibson), 54 (Mitcheson), 65-66 (Voronina), 79 (Coulter), 90 (Quy)) and that each Plaintiff was the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendants for Defendants' benefit. (*Id.*, at ¶¶ 184, 192 (Gibson); 326, 334 (Mitcheson); 468, 476 (Voronina); 610, 618 (Coulter); 752, 760 (Quy).) For those reasons, Defendants' Motion to Dismiss Counts II, VII, VIII, and First Amended Complaint should be denied.

### D. Plaintiffs have stated a valid claim for Florida Deceptive and Unfair Trade Practices Act violation - Count IV of the First Amended Complaint

Defendants challenge Count IV (Violation of FDUTPA) as to each Plaintiff principally on grounds that Plaintiffs are not "consumers" that FDUTPA was designed to protect. (Doc. 34, p. 5.) Defendants' tortured reading is not in line with relevant precedent from Florida courts and others.

First, each Plaintiff has standing to bring a claim under FDUTPA. FDUTPA plainly confers standing for an action seeking declaratory or injunctive relief for "*anyone aggrieved* by a violation" of FDUTPA and confers standing for an action seeking damages or other relief to any "*person who has suffered a loss* as a result of a violation of" FDUTPA. Fla. Stat. § 501.211(1), (2) (emphasis added). As Plaintiffs' First Amended Complaint alleges, each Plaintiff is a person who has been aggrieved by a FDUTPA violation, and sustained a loss caused by Defendants' deceptive and unfair practices. (*See e.g.,* Doc. 31, at ¶¶ 162-163 (Gibson);) *see also Gritzke v. M.R.A. Holding, LLC*, No. 4:01CV495-RH, 2002 WL 32107540, at *4 (N.D. Fla. Mar. 15, 2002) (ruling that the legislature's

amendment to FDUTPA "was a deliberate legislative decision to make damages available *not just to consumers but to others injured by violations of DUTPA*") (emphasis added); *Niles Audio Corp. v. OEM Sys. Co.*, 174 F. Supp. 2d 1315, 1320 (S.D. Fla. 2001).

Specifically, in the matter of *Gritzke v. M.R.A. Holding, LLC*, the plaintiff was a Florida college student who was part of the crowd at Mardi Gras and exposed her breasts. Defendant recorded plaintiff's indiscretion and incorporated it into a videotape entitled "Girls Gone Wild," which defendant then sold for profit. Defendant used plaintiff's photograph, with her breasts exposed, on the videotape package and in widely disseminated advertisements, as well as on defendant's web site, all without plaintiff's permission. As a result, the plaintiff brought a five-count complaint, which included a claim for violation of FDUTPA. Defendant moved to dismiss. The Northern District of Florida Court denied defendant's motion to dismiss on the grounds that "Plaintiff is a "person" who, according to the complaint, has been damaged by defendant's violation of DUTPA; under § 501.211(2) as amended, plaintiff has sufficiently stated a claim." *Gritzke*, No. 4:01CV495-RH, 2002 WL 32107540, at *4.

Similarly, in the matter of *Kliger v. Weekly World News, Inc.*, 747 F.Supp. 1477 (S.D. Fla. 1990), plaintiff was a writer at Weekly World News and published his articles under the name of Ed Anger. When plaintiff left Weekly World News, Weekly World News still continued to publish various articles under Ed Anger's name. Plaintiff brought an action under FDUPTA. The Southern District Court held that the plaintiff has stated a claim for injunctive relief under the Act because the plaintiff has alleged that the defendant's publication of the essays under the name "Ed Anger" has created deception, confusion, and mistake on the part of the public and the Plaintiff himself was aggrieved

because of the defendant's deceptive use of the name and that the plaintiff has lost business opportunity—i.e., publishing opportunities.

Just like in *Gritzke* and *Kliger*, each Plaintiff in the case at bar has clearly laid out the deceptive practices of Defendants. Specifically, that Defendants falsely represented to the public that Plaintiffs endorsed their swingers club/nudist resort and that an average consumer will be deceived and confused as to the association between Plaintiffs and Defendants. (*See e.g.,* Doc. 31, at ¶¶ 154-156 (Gibson).) Defendants portrayed Plaintiffs as willing to engage and promote lewd and nudist behavior, and Plaintiffs presented Defendants' deceptive acts or unfair practice in their First Amended Complaint. Plaintiffs have also established that these deceptive acts and unfair practices caused them actual damage. (*See e.g.,* Doc. 31, at ¶ 101, 162-163 (Gibson).)

Lastly, Defendants incorrectly allege that a claim for FDUTPA requires a showing of fraud but fraud is not a requirement or an element of a FDUTPA claim. As a result, Plaintiffs will not discuss this any further. For those reasons, Plaintiffs have standing to bring a FDUTPA claim against the Defendants and Defendants' Motion to Dismiss Count IV should be denied.

### E. Plaintiffs concede Defendants' arguments regarding the Fraudulent Misrepresentation claim - Count IX of the First Amended Complaint

Upon further discovery and review of the Fraudulent Misrepresentation count alleged by Plaintiffs in their First Amended Complaint, Plaintiffs concede Defendants' arguments regarding this claim and do not object to dismissing this claim.

### F. Plaintiffs concede Defendants' arguments regarding the Negligence and *Respondeat Superior* claims - Counts X and XI of the First Amended Complaint

Upon further discovery and review of the Negligence and *Respondeat Superior* counts alleged by Plaintiffs in their First Amended Complaint, Plaintiffs concede

Defendants' arguments regarding these claims and do not object to dismissing the said claims.

### G.  Plaintiffs Have Plead Sufficient Facts To Bring A "False Association/False Endorsement" Claim Under Subsection 1125 (a)(1)(A)

To establish a claim under false endorsement Subsection (a)(1)(A) of the Lanham Act, a plaintiff must show "(1) that it had prior rights to the mark at issue and (2) that the defendant adopted a mark or name that was the same, or confusingly similar, to plaintiff's mark such that consumers would likely confuse the two." *See Suntree Tech., Inc. v. Ecosense Int'l, Inc.,* 693 F.3d 1338, 1346 (11th Cir.2012).

In the factually similar matter of *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001), the court reasoned that the term "mark" applies to the celebrity's *persona* and the level of recognition that the celebrity has among the segment of the public to whom the advertisement is directed. (citing *White v. Samsung Elec. Am., Inc.,* 971 F.2d 1395, 1400–1401 (9th Cir. 1992).)  In order to determine whether a likelihood of confusion exists, courts look at the following eight factors: (1) the strength of the plaintiff's mark; (2) the relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). Each factor is specifically enumerated because it is appropriate for consideration in determining the likelihood of confusion, but they are not necessarily of equal importance, nor do they all apply to each case.  *Downing*, 265 F.3d at 1008.

In *Downing*, five surfers depicted in a photograph of a surfing competition held *over thirty (30) years earlier* brought suit against a clothing retailer, which had used their

photograph without permission in a surf-themed catalog. The surfers asserted statutory and common law commercial misappropriation claims under the California law as well as a claim under Subsection (a)(1)(A). *Id*. The *Downing* decision is instrumental because the court applied each of the eight factors in reaching the conclusion that the plaintiffs/surfers raised a genuine issue of material fact concerning a likelihood of confusion as to their endorsement. While the court found each factor was present in favor of the plaintiffs, for purposes of this response it is noteworthy to highlight the court's determination that the similarity of likeness (the third factor) was clear because the photograph at issue was an actual photograph of the plaintiffs/surfers, and that a jury could reasonably find that Abercrombie intended to indicate to consumers that the plaintiffs were endorsing Abercrombie's merchandise. *Id*. at 1008.

In another factually similar matter of *Prudhomme v. Procter & Gamble Co.*, 800 F.Supp. 390 (E.D. La. 1992), a chef sued two companies alleging that their use of an actor bearing resemblance to the plaintiff in coffee commercials involved false and misleading advertisement *and* false endorsement claims under the Lanham Act as well as invasion of privacy and unfair competition claims under Louisiana law. In analyzing the elements of consumer confusion, the court found that the plaintiff alleged sufficient facts to satisfy all the factors of the "likelihood of confusion" test and established a false endorsement claim under the Lanham Act. Significantly, the court focused on how the "look-alike" actor used in defendants' commercial bore a "strong resemblance" to the plaintiff and that defendants were attempting to capitalize on plaintiff's image without his consent. *Id*. at 393.

In this case, Plaintiffs have alleged sufficient facts to satisfy the factors necessary to establish "consumer confusion." Thus, applying all the necessary elements of false

endorsement of the Lanham Act to the facts at hand, the first element of the strength or level of recognition of plaintiff's mark weighs in favor of Plaintiffs. The First Amended Complaint sufficiently pleads that each plaintiff is a well-known and reputable model with wide recognition and a large social media following. (*See e.g.,* Doc. 31 at ¶ 41 (Gibson).) Further, each Plaintiff is in the business of commercializing his or her identity and selling her images to reputable brands and companies who look to promote their products with beautiful models for profit. (*See e.g.,* Doc. 31 at ¶ 227 (Gibson).)

Defendants' customers also fall within a subset of the demographic that is interested in beautiful women and men. Both Plaintiffs and Defendants vie for the same dollars from the same demographic consumer group, *to wit,* those who are interested in and attracted to beautiful women and men. As such, Plaintiffs contend that an unauthorized use of their images to promote a swingers club/nudist resort creates an undeniable confusion in Defendants consumers' minds, which leads to competitive injury to Plaintiffs. (*See e.g.,* Doc. 20 at ¶¶ 238-239 (Gibson).) For this reason, the second element of relatedness of the goods or service of false endorsement also weights in favor of the Plaintiffs.

The third element, similarity of likeness, falls squarely in favor of the Plaintiffs since the images in question *are the actual images* of Plaintiffs. The fourth element of actual confusion is not required to sustain a false endorsement claim, as this is but one of eight factors. Nevertheless, the Plaintiffs believe discovery will establish actual confusion. The fifth element (marketing channels used) also weighs in Plaintiffs' favor. Specifically, the parties compete in the same markets and use similar marketing channels in those markets to sell their services, *e.g.* websites and social media such as Twitter and Facebook. *Id*.

14

The sixth element of likely degree of purchaser care also favors Plaintiffs. As stated above, Paradise Lakes is in the business of promoting beautiful women and men and it uses advertisements to entice the public to visit its swingers club/nudist resort. Any prudent consumer would be strongly influenced by an image of a beautiful woman or man on a swingers club's advertising – albeit, only to find out that the beautiful woman or man in the ad does not actually work at Defendants' establishment. (*See e.g.,* Doc. 31 at ¶ 240 (Gibson).)

The seventh element of Defendants' intent also favors Plaintiffs. Plaintiffs have alleged that Defendants intended to profit by creating confusion among consumers with respect to whether Plaintiffs had endorsed their products and services. (*See e.g.,* Doc. 31 at ¶ 234 (Gibson).) Moreover, Defendants knew full well that Plaintiffs did not work at their establishment; as such they had knowledge of the falsity of their marketing material. Plaintiffs' images are the focal point of each of Defendants' advertisement and the entire emphasis is on Plaintiffs' images.

The last element of the likelihood of expansion of product lines also favors Plaintiffs. Because Plaintiffs are reputable models who endorse prestigious brands and companies, their association with a swingers club/nudist resort will certainly prevent them from being hired by any reputable company to promote a high-end product or service. (*See e.g.,* Doc. 31 at ¶ 245 (Gibson).)

Lastly, Defendants' assertion that a False Endorsement claim under the Lanham Act adds nothing not already alleged in Plaintiffs' other claims, is without merit. As seen above, a False Endorsement claim under the Lanham Act has separate and distinct elements from those found in the other Counts plead by the Plaintiffs. And though violation Fla.

15

Stat. § 540.08 (the unauthorized misappropriation of name or likeness) is similar to a False Endorsement claim under the Lanham Act, Fla. Stat. § 540.08 does not allow for recovery of attorneys' fees. The Lanham Act provides that a successful plaintiff is entitled, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117. This recovery is cumulative, that is, the court may award plaintiff both its damages and defendants' profits. *Babbit Electronics, Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1182 (11th Cir.1994). Conversely, a successful claim for violation of right of publicity, only entitles a plaintiff to recover damages for any loss or injury sustained - an amount which would have been a reasonable licensing fee for the use made of plaintiff's image or likeness. *Weinstein v. Fielder,* 884 So.2d 990 (Fla. 4th DCA 2004). For those reasons, Defendants' Motion to Dismiss should be denied as to Count XII.

## **CONCLUSION**

For all the reasons detailed herein, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss and grant Plaintiffs such further relief as justice requires. Dated: October 12, 2016.

Respectfully submitted,

By: */s/ Ludmila Khomiak*
**Ludmila Khomiak, Esq.**
Florida Bar No.: 91757
mila@casaslawfirm.com
**Sarah M. Cabarcas-Osman, Esq.**
Florida Bar No.: 090938
sarah@casaslawfirm.com
**The Casas Law Firm, P.C.**
Brickell Bayview Center
80 S.W. 8th Street, Suite 2000
Miami, FL 33130
Telephone #: 786-671-3244

16

Facsimile #: 786-671-3243
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 12, 2016, I electronically filed the foregoing

with the Clerk of the Court by using CM/ECF system which will send a notice of electronic

filing to the following:

Eric M. Zivitz, Esq.
Butler Weihnuller Katz Craig, LLP
Brickell Bayview Center
80 S.W. 8th St., Suite 3300
Miami, Florida 33130
ezivitz@burler.legal
*Attorney for Defendants*

Sarah Melissa Cabarcas-Osman, Esq.
The Casas Law Firm, P.C.
Brickell Bayview Center
80 S.W. 8th St., Suite 2000
Miami, FL 33130
sarah@casaslawfirm.com
*Attorney for Plaintiffs*

THE CASAS LAW FIRM, P.C.

By: */s/ Ludmila Khomiak*
Ludmila Khomiak, Esq.
Florida Bar No.: 91757
mila@casaslawfirm.com
Brickell Bayview Center
80 S. W. 8th St., Suite 2000
Miami, FL 33130
Phone: (786) 671-3244
Fax: (786) 671-3243
*Attorney for Plaintiffs*